# EXHIBIT 1

Case 1:22-cv-00585-JPH-MPB    Document 1-1    Filed 03/24/22    Page 2 of 207 PageID
**49D01-2203-PL-007177**
Marion Superior Court 1

Filed: 3/4/2022 3:04 PM
Clerk
Marion County, Indiana

## INDIANA COMMERCIAL COURT

### STATE OF INDIANA
### IN THE MARION SUPERIOR COURT

| | |
|---|---|
| UNITED DENTAL CENTERS, LTD., | |
| Plaintiff, | CAUSE NO. |
| v. | |
| PACIFIC EMPLOYERS INSURANCE COMPANY | |
| Defendant. | |

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff United Dental Centers, Ltd. ("UDC"), for its complaint against Defendant Pacific Employers Insurance Company ("Pacific Employers"), states as follows:

### I.
### Introduction

1.    This is an insurance coverage action for declaratory relief and breach of contract against Pacific Employers. UDC seeks: (1) a declaration and judgment, pursuant to Indiana Rule of Trial Procedure 57 and the Indiana Declaratory Judgment Act, Indiana Code § 34-14-1 *et seq.*, confirming Pacific Employers' obligation to pay UDC's losses under a commercial property insurance policy on a claim arising from the natural disaster known as the COVID-19 pandemic; (2) actual and consequential damages arising from Pacific Employers' breach of the policy; (3)

prejudgment and post-judgment interest; and (4) any and all other relief to which it may be entitled.

## II.
## The Parties

2.    UDC is an Illinois corporation with its principal office in Dyer, Indiana. UDC operates a dental practice at the insured locations located at (a) 1332 119th Street, Whiting, Indiana 46394; (b) 5254 Hohman Avenue, Hammond, Indiana 46320; (c) 5655 Harrison Street, Merrillville, Indiana 46410; and (d) 3540 118th Street, Chicago, Illinois 60617. UDC operated at a fifth insured location located at 18511 Torrence Avenue, Lansing, Illinois 60438 until 2021. These locations are collectively referred to as the "Insured Locations."

3.    Pacific Employers is a Pennsylvania insurance company doing business in Indiana.

## III.
## Jurisdiction and Venue

4.    This Court has jurisdiction over Pacific Employers under Trial Rules 4.4(A)(1) and (6) because it does business in Indiana, is licensed to do so, and sold a policy to UDC insuring property and risks within the State of Indiana.

5.    Venue is appropriate in this Court pursuant to Rule 2 of the Commercial Court Rules because the gravamen of this lawsuit concerns disputes based on a commercial insurance contract.

2

## IV.
## Factual Circumstances

6.     UDC has operated a general and family dentistry practice at the Insured Locations. UDC offers a variety of routine, non-emergency procedures to its patients, including cleanings and prevention, cosmetic dentistry, periodontal care, restorations, orthodontic care, and oral and maxillofacial surgery.

### A.     COVID-19 and the SARS-CoV-2 virus

7.     In January 2020, the first known case of a U.S. resident infected by the novel SARS-CoV-2 coronavirus was reported in the state of Washington. SARS-CoV-2 quickly spread across the United States.

8.     On March 6, 2020, Indiana Governor Eric Holcomb issued Executive Order 20-02 declaring the COVID-19 outbreak a disaster emergency for the State of Indiana.

9.     On March 11, 2020, the World Health Organization ("WHO") declared the illness caused by SARS-CoV-2, COVID-19 (Coronavirus Disease 2019), to be a global pandemic.

10.     On March 13, 2020, the President of the United States declared a national emergency.

11.     SARS-CoV-2 has an incubation period of 2-12 days, during which time it can be transmitted even before symptoms of COVID-19 develop. Symptoms often include fever, cough, shortness of breath, and, in severe cases, pneumonia and death.

12.     SARS-CoV-2 is a coronavirus. It is a physical substance. It is visible under a microscope. It has mass.

3

13.    SARS-CoV-2 is transmitted in multiple ways. When infected persons exhale, they project live virus particles into the environment. For example, those particles physically alter the chemical makeup of the air. Just as carbon monoxide physically alters the chemical makeup of the air making the air deadly, so too does the virus. Exhaled virus particles also adhere to, and alter, water molecules suspended in the air. Virus molecules also adhere to, and alter, porous and nonporous surfaces with which they come into contact. An uninfected person can contract the virus by inhaling the altered air. They can also contract the virus by touching an altered surface and then touching their eyes, nose, or mouth.

14.    SARS-CoV-2 can survive outside the body suspended in the air and on surfaces for "much longer periods of time than generally considered possible."[1] SARS-CoV-2 physically harms real and personal property, such as indoor air and surfaces, rendering that property dangerous to patients, staff, and visitors.

15.    Scientific research concerning SARS-CoV-2 has evolved since the start of the pandemic. Originally, researchers concluded that the virus could survive on surfaces for periods ranging from hours to days, depending on the ambient environment and the type of surface.[2] More recent research shows that the virus can

---

[1] Shane Riddell, *The Effect of Temperature on Persistence of SARS-CoV-2 on Common Surfaces*, 17 VIROLOGY J. 145 (Oct. 7, 2020).

[2] N. van Doremalen, et al. *Aerosol and Surface Stability of HCoV-19 (SARS-CoV-2) Compared to SARS-CoV-1*, 382 NEW ENGL. J. MED. 1564-67 (Apr. 16, 2020); Boris Pastorino et al., *Prolonged Infectivity of SARS-CoV-2 in Fomites*, 26 EMERGING INFECTIOUS DISEASES 9 (Sept. 2020); G. Kampf et al., *Persistence of Coronaviruses on Inanimate Surfaces and Their Inactivation with Biocidal Agents*, 104 J. HOSP. INFECTION 3, 246-51 (Mar. 1, 2020).

4

survive for nearly a month at room temperature on a variety of surfaces, including glass, steel, vinyl, plastic, and paper.[3]

16.     Similarly, researchers first thought that cleaning was highly effective in eliminating the virus from hard, nonporous surfaces. More recent quantitative studies have led the Centers for Disease Control and Prevention ("CDC") to conclude, however, that "surface disinfection once- or twice-per-day had little impact on reducing estimated risks of virus transmission."[4] The SARS-CoV-2 virus "is much more resilient to cleaning than other respiratory viruses."[5] As an illustration, a 2021 study by the largest hospital network in New York State demonstrated that even after trained hospital staff disinfected treatment areas, much of the virus *still survived.*[6]

---

[3] Minghui Yang et al., *SARS-CoV-2 Detected on Environmental Fomites for Both Asymptomatic and Symptomatic Patients with COVID-19*, 203 AM. J. RESPIRATORY & CRITICAL CARE MED. 3, 374-78 (Feb. 1, 2021).

[4] *Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments*, CDC (updated Apr. 5, 2021) (citing A. K. Pitol & T. R. Julian, *Community Transmission of SARS-CoV-2 by Fomites: Risks and Risk Reduction Strategies*, ENV'T SCI. & TECH. LETTERS (2020)), https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html (last visited Sept. 3, 2021).

[5] Nevio Cimolai, *Environmental and Decontamination Issues for Human Coronaviruses and Their Potential Surrogates*, 92 J. MED. VIROLOGY 11, 2498-510 (June 12, 2020).

[6] Zarina Brune et al., *Effectiveness of SARS-CoV-2 Decontamination and Containment in a COVID-19 ICU*, 18 INT'L J. ENV'T RSCH. & PUB. HEALTH 5, 2479 (Mar. 3, 2021).

17.    Moreover, there is significantly less data about the effect of cleaning on porous surfaces or textiles. The best science available suggests that cleaning is less effective on such surfaces.[7]

18.    Because cleaning surfaces does not completely eliminate virus molecules, it can actually re-aerosolize them, or reintroduce them into the air and allow them to be inhaled and/or redeposit them onto surfaces where they reattach.

19.    The indoor air is continuously harmed when an infected person breathes. Each breath can introduce more of the virus into the indoor air.

20.    When SARS-CoV-2 travels through the air it can repeatedly land on and chemically attach to surfaces even after they have been cleaned. Such surfaces are thus continuously harmed, making that property physically unusable while SARS-CoV-2 exists on it or in the surrounding air physically altered by SARS-CoV-2.

21.    SARS-CoV-2 physically alters both the surfaces and the air it comes into contact with.

22.    The virus physically and chemically alters the composition of many common surfaces, such as dental instruments and chairs at the Insured Locations.

23.    The virus does not simply "rest" on a surface. In the language of surface chemistry, the virus "adsorbs" onto a surface through intermolecular electric

---

[7] *E.g.,* V.A. Vicente, et al., *Environmental Detection of SARS-CoV-2 Virus RNA in Health Facilities in Brazil and a Systematic Review on Contamination Sources.* 18 INT'L J. ENV'TL RES. PUBLIC HEALTH 7, 3824 (Apr. 6, 2021) (finding that virus particles persisted on clothing worn by hospital employees).

interactions between the outer layer of the virus and the surface of a solid object. Those forces are described as "van der Waals" and "hydrogen bonding" forces.

24.    The following figures illustrate these chemical bonds:



25.    The virus does not disappear when it adsorbs onto a surface. The surface is fundamentally, materially different.[8] Such a surface is infectious and can transmit the virus to those who touch a surface to which the virus has adsorbed.[9]

26.    The virus also physically and chemically alters the air within a building or structure.

27.    Indoor air is an integral component of any "building or structure." There is an entire field of engineering dedicated to studying ventilation, air filtration, and indoor air quality. The American Society of Heating, Refrigeration, and Air-

[8] *See generally* Joonaki, et al., *Surface Chemistry Can Unlock Drivers of Surface Stability of SARS-CoV-2 in a Variety of Environmental Conditions*, 6 CHEMISTRY 9, 2135-46 (Sept. 10, 2020); Kempf, et al., *Persistence of Coronaviruses on Inanimate Surfaces and their Inactivation with Biocidal Agents*, 104 J. HOSP. INFECTION 246, 251 (2020).

[9] A. Meiksin, *Dynamics of COVID-19 Transmission Including Indirect Transmission Mechanisms: A Mathematical Analysis*, 148 EPIDEMIOLOGY & INFECTION e257, 1-7 (Oct. 23, 2020).

Conditioning Engineers (ASHRAE)[10] dedicates considerable energy to establishing national standards on the subject. In Indiana, as in most states, ASHRAE standards are incorporated into state and local building codes.

28.    The SARS-CoV-2 virus transforms the material content of the air in the same way that other harmful substances (like ammonia) alter the air:





29.    Persistence of SARS-CoV-2 particles in the air is problematic for the same reasons as carbon monoxide or ammonia—it is dangerous for humans to inhale either substance.

30.    The aerosol droplets carrying the virus are highly infectious and difficult to eliminate. Once exhaled, viral particles can remain suspended in the air "for

---

[10] https://www.ashrae.org/about

indefinite periods of time unless removed by air currents or dilution ventilation."[11] The particles generally travel between 20-30 feet simply by being exhaled.[12]

31.    Standard ventilation systems will not fully capture the virus. Even if ultimately removed by advanced ventilation systems, however, virus particles can travel for dozens of meters and still remain infectious.[13]

32.    Moreover, virologists have documented instances where the ventilation system itself causes viral particles to be transmitted, still infectious, from one space to another.[14]

33.    These phenomena were poorly understood at the beginning of the pandemic. However, as "essential workers" returned to work in March/April 2020 and as some businesses were allowed to reopen, patterns emerged. People working in enclosed spaces with standard ventilation systems were infected, hospitalized, and killed by COVID-19 at a much higher rate than people in their surrounding

---

[11] Kevin P. Fennelly, *Particle Sizes of Infectious Aerosols: Implications for Infection Control*, 8 LANCET RESPIRATORY MED. 9, 914-24 (Sept. 1, 2020).

[12] *Id.*; Lydia Bourouiba, *Turbulent Gas Clouds and Respiratory Pathogen Emissions, Potential Implications for Reducing Transmission of COVID-19*, 323 JAMA 18, 1837-38 (Mar. 26, 2020).

[13] Lisa Morawska & Donald K. Milton, *It is Time to Address Airborne Transmission of Coronavirus Disease 2019 (Covid-19)*, 71 CLINICAL INFECTIOUS DISEASES 9, 2311-13 (Dec. 3, 2020).

[14] Zahra Noorimotlagh et al., *A Systematic Review of Possible Airborne Transmission of the COVID-19 Virus (SARS-CoV-2) in the Indoor Air Environment*, 193 ENV'T RSCH. 110612, 1-6 (Feb. 2021); Jianyun Lu et al., *COVID-19 Outbreak Associated with Air Conditioning in Restaurant, Guangzhou, China*, 2020, 26 EMERGING INFECTIOUS DISEASES 7 (July 2020); Keun-Sang Kwon et al., *Evidence of Long-Distance Droplet Transmission of SARS-CoV-2 by Direct Air Flow in a Restaurant in Korea*, 35 J. KOREAN MED. SCI. 46, e415 (Nov. 30, 2020).

communities not confined to such indoor spaces. For example, grocery-store workers tested positive at five times the rate as the general population, despite masking requirements.[15] Essential workers accounted for 87% of excess deaths in California and over 60% in New York City.[16] Nursing home residents and employees have accounted for at least 35% of all COVID-19 deaths in the United States.[17] Similar findings have been reported across other sectors, including correctional officials and factory workers.[18] The common element in each of these—the virus physically altered the air in buildings and structures.

34.    These discoveries prompted the CDC to warn against the risks of indoor activities in spaces with "inadequate ventilation."[19] In the CDC's view, "adequate

---

[15] Joanna Gaitens et al, *COVID-19 and Essential Workers: A Narrative Review of Health Outcomes and Moral Injury*, 18 INT'L J. ENV'T RSCH. PUB. HEALTH 4, 1446 (Feb. 4, 2021); Fan-Yun Lan et al., *Association Between SARS-CoV-2 Infection, Exposure Risk and Mental Health Among a Cohort of Essential Retail Workers in the USA*, 78 OCCUPATIONAL ENV'T MED. 237-43 (Oct. 30, 2020).

[16] Yea-Hung Chen et al., *Excess Mortality Associated with the COVID-19 Pandemic Among Californians 18-65 Years of Age, by Occupational Sector and Occupation: March Through November 2020*, 16 PLOS ONE 6 (June 4, 2021), https://pubmed.ncbi.nlm.nih.gov/34086762; *The Plight of Essential Workers During the COVID-19 Pandemic*, 395 LANCET 1587 (May 23, 2020).

[17] Artis Curiskis et al., *Federal COVID Data 101: Working with CMS Nursing Home Data*, ATLANTIC (Mar. 4, 2021).

[18] *Id.*

[19] *Scientific Brief: SARS-CoV-2 Transmission*, CDC (updated May 7, 2021), www.cdc.gov/ coronavirus/2019-ncov/science/science-briefs/sars-cov-2transmission.html?CDC_AA_refVal =https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fscience%2Fscience-briefs%2Fscientific-brief-sars-cov-2.html (last visited Sept. 3, 2021).

ventilation" is not just opening a window or flipping on the internal HVAC system.[20] Instead, it recommends substantial increases in airflow and adding air-filtration systems (such as high-efficiency particulate air, or "HEPA" systems).[21]

35.    ASHRAE, sharing those concerns, has made similar technical recommendations. First, facilities need to increase the rate at which the indoor air is expelled from the building and replaced with fresh, outdoor air. Second, although the standard HEPA systems are helpful, they capture only 15% of small viral particles and 50% of larger particles. More effective "MERV-13" filters and ionization devices—uncommon in most buildings—increase safety, but only eliminating 66% of small particles and 92% of larger particles. Plus, these systems are expensive, both in terms of their physical components and in the extra electricity needed to power them.

**B.    State and Local Responses to COVID-19.**

36.    In an attempt to mitigate the spread of COVID-19, national, state, and local civil authorities have issued various orders ordering people to stay at home and restricting entities from operating (collectively, the "Orders").

37.    On March 6, 2020, Indiana Governor Eric Holcomb issued Executive Order 20-02 declaring the COVID-19 outbreak a disaster emergency for the State of Indiana.

---

[20]    *Ventilation in Buildings*, CDC (updated June 2, 2021), www.cdc.gov/coronavirus/2019-ncov/community/ventilation.html#:~:text=HEPA%20filters%20are%20even%20more ,with%20SARS%2DCoV%2D2 (last visited Sept. 3, 2021).

[21] *Id.*

38.     On March 23, 2020, Governor Holcomb issued Executive Order 20-08 which ordered individuals living in Indiana to stay at home through at least April 6, 2020, with limited exceptions. Governor Holcomb extended the stay-home order through May 1, 2020.

39.     On March 30, 2020, Governor Holcomb issued Executive Order 20-13 which directed that all elective and non-urgent surgical and invasive procedures by dentists and dental facilities be canceled or postponed beginning April 1, 2020 to help preserve personal protective equipment ("PPE") for health care providers who are battling the COVID-19 pandemic.

40.     On April 24, 2020, Governor Holcomb issued Executive Order 20-24 which ordered that dentists and dental facilities may resume elective procedures on April 26, 2020 so long as they have adopted policies and best practices that protect patients, physicians, and staff against COVID-19 and also have sufficient quantities of PPE.

41.     On March 9, 2020, Illinois Governor J.B. Pritzker issued a Gubernatorial Disaster Proclamation declaring the COVID-19 outbreak a public health emergency and a disaster for the State of Illinois.

42.     On March 17, 2020, the Illinois Department of Public Health ("IDPH") ordered dental offices to postpone elective procedures, surgeries, and non-urgent visits. The IDPH stated that the measure supports recommendation to stay at home and conserves PPE for urgent procedures and front-line health care workers. The IDPH allowed dental office to resume routine care on May 11, 2020.

43.    On March 20, 2020, Governor Pritzker issued Executive Order 2020-10 which ordered individuals living in Illinois to stay at home through at least April 7, 2020, with limited exceptions. Governor Pritzker extended the stay-home order through May 29, 2020.

44.    These Orders were issued in response to the presence of the SARS-CoV-2 virus in Indiana and Illinois, including property owned (and not owned) by UDC.

45.    The Orders restricted or prohibited access to property not insured by Pacific Employers' policy.

46.    The explicit intent and effect of these Orders were to partially or totally prohibit access to the Insured Locations.

**C.    UDC's Response to COVID-19**

47.    The pandemic, the existence of the virus in and/or on the property's indoor air and/or surfaces, and/or these Orders have required UDC to partially or totally close its Insured Locations or limit their occupancy, causing UDC to sustain losses and damages.

48.    UDC has confirmed the presence of SARS-CoV-2 at the Insured Locations. UDC is aware of approximately one dozen confirmed cases of COVID-19 among its employees who were working at the Insured Locations before they knew they were infected.

13

49. A study conducted in April 2020 by researchers at the Indiana University Fairbanks School of Public Health established that the prevalence of SARS-CoV-2 in the counties close to Chicago was at a minimum 5%.[22]

50. As illustrated by the scientific studies detailed above, the presence of SARS-CoV-2 has physically altered the indoor air and surfaces in the Insured Locations, damaging them and rendering them unsafe, uninhabitable, and/or unsuitable for their intended purposes. This resulted in an interruption of UDC's operations.

51. UDC has had to modify the physical use of its Insured Locations by employees and patients through social distancing, avoiding confined indoor spaces, and avoiding gatherings in order to reduce the impact and transmission of SARS-CoV-2.

52. UDC has had to modify its operations to mitigate the impact of SARS-CoV-2's physical presence on surfaces (such as dental equipment, office furniture, door handles, and numerous other places) and in indoor air within the Insured Locations, including but not limited to the physical alteration of spaces and the disinfection of surfaces.

53. SARS-CoV-2 has caused UDC to sustain losses and damages, including, but not limited to, losses and damages associated with the shutdown of its dental practices.

---

[22] See https://www.pnas.org/content/118/5/e2013906118.

14

## V.
## The Policy

54.    Pacific Employers sold UDC a commercial insurance policy, Policy No. D52718892, with an effective date of April 13, 2019 through April 13, 2020 (the "Policy"). A true and accurate copy of the Policy is attached as **Exhibit 1**.

55.    UDC has paid all required premiums and performed all conditions precedent for obtaining coverage under the Policy.

56.    UDC timely notified Pacific Employers of the loss on September 9, 2020 under Claim Number KY20K2754378.

57.    On October 16, 2020, Pacific Employers informed UDC that it was denying the claim because "[t]here is no information supporting any direct physical loss or damage has occurred that caused such orders to be issued." Pacific Employers also cited the Policy's following exclusion: "We will not pay for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Exclusion"). A true and accurate copy of Pacific Employers' denial letter is attached as **Exhibit 2**.

58.    Pacific Employers wrongly denied UDC's claim. A reasonable policyholder expects coverage for loss of use of physical property for its intended purpose because "physical loss" is different than "physical damage" in the Policy's insuring agreement.

15

59.    Courts have found that "physical loss" language is ambiguous and that this language does not require policyholders to show physical alteration to their property.

60.    The insurance industry has acknowledged that the existence of the virus on surfaces constitutes a covered cause of loss that triggers business income coverage.

61.    Moreover, even if physical alteration of some kind was required under the Policy, as discussed above, SARS-CoV-2 has physically altered and damaged the indoor air and surfaces of the Insured Locations. SARS-CoV-2 has also physically altered and damaged property not owned by UDC in places surrounding the Insured Locations.

62.    The policy imposes a 72-hour waiting period, or a time-limit deductible for short-term losses.

63.    Given Pacific Employers' use of this deductible, it concedes that short-term direct physical loss or direct physical damage does trigger its policy.

64.    The Policy provides several coverages for UDC's losses, including, but not limited to, Building, Personal Property, Business Income, Extra Expense, and Civil Authority coverages.

65.    The Exclusion cited by Pacific Employers' denial letter does not bar coverage. Among other things, an endorsement to the Policy, the "Absolute Pollution Exclusion—Property"—in essence, the same pollution exclusion that the Indiana Supreme Court has held, four times, to be ambiguous and unenforceable— states that it "supersedes" all other terms and conditions of the Policy, which would include the

16

Exclusion. Under Indiana law, any ambiguity on that point must be resolved in favor of UDC. Moreover, there is no virus exclusion like the Exclusion included among the list of exclusions specifically applicable UDC's Business Income and Extra Expense coverage. The more specific controls the general, and the Exclusion does not apply for that reason, too.

## VI.
## Causes of Action

### Count 1:  Declaratory Relief Against Pacific Employers

66.    UDC incorporates by reference the above Paragraphs.

67.    An actual controversy exists as to the scope of UDC's rights and Pacific Employers' obligations under the Policy.

68.    Multiple coverage provisions yield coverage for UDC's losses under the Policy. For example, the coverage grant of the Business Income portion of the Policy states:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Ex. 1 at PDF p. 38.

69.    UDC has suffered a loss of "Business Income," among other losses, that is covered by the terms of the Policy.

70.    Pacific Employers' refusal to pay these losses has damaged, and will continue to damage, UDC as long as the losses continue and remain unpaid.

71.    This declaratory judgment action is necessary and useful in determining all of the rights and responsibilities of the parties.

72.    Pursuant to Indiana Code § 34-14-1-1 and Rule 57 of the Indiana Rules of Trial Procedure, UDC is entitled to declaratory relief establishing that the losses UDC has suffered are covered by the Policy.

### Count 2:  Breach of Contract Against Pacific Employers

73.    UDC incorporates by reference the above Paragraphs.

74.    The Policy obligates Pacific Employers to pay for the losses suffered by UDC.

75.    Pacific Employers' denial of UDC's claim and refusal to pay these losses is a breach of its obligations to UDC under the Policy.

76.    As a result of Pacific Employers' breach, UDC has incurred, and will continue to incur, substantial costs, expenses, and losses related to the COVID-19 pandemic.

77.    UDC is entitled to damages equal to the costs that have been, and will be, incurred as a result of the losses, consequential damages arising from Pacific Employers' breach, and prejudgment and post-judgment interest on all such costs or expenses.

### PRAYER FOR RELIEF

WHEREFORE, UDC requests that the Court enter judgment against Pacific Employers and in favor of UDC:

A.    declaring that UDC's losses are covered under the terms of the Policy;

18

B.    ordering Pacific Employers to pay UDC all amounts owed pursuant to the terms of the Policy;

C.    finding Pacific Employers in breach of its obligations under the Policy and requiring Pacific Employers to pay UDC the full amount of its losses, plus prejudgment and post-judgment interest; and

D.    awarding UDC all other compensatory, consequential, and other damages to which it may be entitled, including but not limited to the attorneys' fees and expenses incurred in bringing this action, and all other and further relief as this Court may deem proper.

Respectfully submitted,


_/s/ Joanne R. Sommers_
Attorneys for United Dental Centers, Ltd.

George M. Plews, Atty. No. 6274-49
Joanne R. Sommers, Atty. No. 32740-49
Plews Shadley Racher & Braun LLP
1346 North Delaware Street
Indianapolis, Indiana 46202
Tel: (317) 637-0700
Fax: (317) 637-0710

Jeffrey D. Claflin, Atty. No. 15136-49
Plews Shadley Racher & Braul LLP
1017 E. Jefferson Boulevard
South Bend, Indiana 46617
Tel: (574) 273-1010
Fax: (574) 271-2050

## REQUEST FOR JURY TRIAL

Plaintiff United Dental Centers, Ltd. demands a trial by jury for all issues so triable.

Respectfully submitted,

*/s/ Joanne R. Sommers*
Attorneys for United Dental Centers, Ltd.

George M. Plews, Atty. No. 6274-49
Joanne R. Sommers, Atty. No. 32740-49
Plews Shadley Racher & Braun LLP
1346 North Delaware Street
Indianapolis, Indiana 46202
Tel: (317) 637-0700
Fax: (317) 637-0710

Jeffrey D. Claflin, Atty. No. 15136-49
Plews Shadley Racher & Braul LLP
1017 E. Jefferson Boulevard
South Bend, Indiana 46617
Tel: (574) 273-1010
Fax: (574) 271-2050

EXHIBIT 1

49D01-2203-BD-007177

Filed: 3/4/2022 3:04 PM
Clerk
Marion County, Indiana

**CHUBB**

Pacific Employers
436 Walnut Street, Philadelphia, PA 19106

**Businessowners
Policy Declarations**

This Policy is issued by the stock insurance company listed above ("Insurer").

AT LEAST ONE OF THE ENDORSEMENTS IS A CLAIMS MADE AND REPORTED COVERAGE SECTION. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS COVERAGE SECTION COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD. PLEASE READ THIS COVERAGE SECTION CAREFULLY. THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES. FURTHER NOTE THAT AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETENTION AMOUNT.

**Policy Number:** D52718892
**Renewal of:** HLTIND527188923N

**Named Insured & Principal Address:**
UNITED DENTAL CENTERS, LTD; LUCKY
DOG LLC
1332 119th St
Whiting, IN 46394

**Policy Period:**    From 04-13-2019 To 04-13-2020
12:01 AM* Standard Time at your mailing
address shown

**ADVANCED PREMIUM: $6,939.00**

Admitted Status: Admitted

Auditable Status: No
Auditable Period: N/A

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE INSURANCE AS STATED IN THIS POLICY

**Business Description:** Healthcare

Section 1.    **PROPERTY**

| Coverage | Limit of Insurance | Deductible | Premium |
|---|---|---|---|
| Business Income and Extra Expense Limit of Insurance | Actual Loss Sustained | 72 Hour Waiting Period | Included |

Described Premises: 1332 119th St, Whiting, IN 46394

| Prem. No. | Coverage(s) | Limit Of Insurance | Deductible | Valuation | Premium |
|---|---|---|---|---|---|
| 1 | Building | $850,000 | | Replacement Cost | $1,249.00 |
| 1 | Business | $140,000 | $1,000 | Replacement Cost | $314.00 |

© 2015

| | Personal Property | | | |
|---|---|---|---|---|

| Coverage | Limit of Insurance | Deductible | Premium |
|---|---|---|---|
| Equipment Breakdown Protection Coverage | Included | 24 hours/$1,000 | $174 |

| Coverage | Wind Deductible Percentage | Wind Deductible Dollar Amount | Wind Excluded? | Premium |
|---|---|---|---|---|
| Wind | N/A | $1,000 | No. | Included |

Described Premises: 5254 Hohman Ave, Hammond, IN 46320

| Prem. No. | Coverage(s) | Limit Of Insurance | Deductible | Valuation | Premium |
|---|---|---|---|---|---|
| 2 | Building | $850,000 | | Replacement Cost | $1,064.00 |
| 2 | Business Personal Property | $140,000 | $1,000 | Replacement Cost | $304.00 |

| Coverage | Limit of Insurance | Deductible | Premium |
|---|---|---|---|
| Equipment Breakdown Protection Coverage | Included | 24 hours/$1,000 | $174 |

| Coverage | Wind Deductible Percentage | Wind Deductible Dollar Amount | Wind Excluded? | Premium |
|---|---|---|---|---|
| Wind | N/A | $1,000 | No | Included |

Described Premises: 5655 Harrison St, Merrillville, IN 46410-2071

| Prem. No. | Coverage(s) | Limit Of Insurance | Deductible | Valuation | Premium |
|---|---|---|---|---|---|
| 3 | Building | $230,000 | | Replacement Cost | $452.00 |
| 3 | Business Personal Property | $104,364 | $1,000 | Replacement Cost | $186.00 |

| Coverage | Limit of Insurance | Deductible | Premium |
|---|---|---|---|
| Equipment Breakdown Protection Coverage | Included | 24 hours/$1,000 | $87 |

| Coverage | Wind Deductible Percentage | Wind Deductible Dollar Amount | Wind Excluded? | Premium |
|---|---|---|---|---|
| Wind | N/A | $1,000 | No | Included |

Described Premises: 3540 E 118th St, Chicago, IL 60617

| Prem. No. | Coverage(s) | Limit Of Insurance | Deductible | Valuation | Premium |
|---|---|---|---|---|---|

| 4 | Business Personal Property | $160,000 | $1,000 | Replacement Cost | $439.00 |

| Coverage | Limit of Insurance | Deductible | Premium |
|---|---|---|---|
| Equipment Breakdown Protection Coverage | Included | 24 hours/$1,000 | $69 |

| Coverage | Wind Deductible Percentage | Wind Deductible Dollar Amount | Wind Excluded? | Premium |
|---|---|---|---|---|
| Wind | N/A | $1,000 | No | Included |

Described Premises: 18511 Torrence Ave, Lansing, IL 60438-2851

| Prem. No. | Coverage(s) | Limit Of Insurance | Deductible | Valuation | Premium |
|---|---|---|---|---|---|
| 5 | Business Personal Property | $120,000 | $1,000 | Replacement Cost | $267.00 |

| Coverage | Limit of Insurance | Deductible | Premium |
|---|---|---|---|
| Equipment Breakdown Protection Coverage | Included | 24 hours/$1,000 | $69 |

| Coverage | Wind Deductible Percentage | Wind Deductible Dollar Amount | Wind Excluded? | Premium |
|---|---|---|---|---|
| Wind | N/A | $1,000 | No | Included |

| Optional Coverages | Limit Of Insurance | Premium |
|---|---|---|
| Interruption of Computer Operations | $10,000 | $0 |
| Business Personal Property Temporarily In Portable Storage Units* | $10,000 | Included |

## BUSINESSOWNERS PROPERTY ENHANCEMENTS

Limits of Insurance                                                 $50,000

Businessowners Property Enhancements Premium: $150
Total Terrorism (TRIA) Premium:          $68
Total Property Premium:          $5,182.00

Section 2.    **LIABILITY**

Described Premises: 1332 119th St, Whiting, IN 46394

| Prem. No. | Classification | Class Code | Rating Basis | Premium Basis | Premium |
|---|---|---|---|---|---|

| | | | | | Prem/Ops | PR/CO |
|---|---|---|---|---|---|---|
| 1 | Dental Offices | 63981 | Area | 3,000 | $380 | $0 |

Described Premises: 5254 Hohman Ave, Hammond, IN 46320

| Prem. No. | Classification | Class Code | Rating Basis | Premium Basis | Premium | |
|---|---|---|---|---|---|---|
| | | | | | Prem/Ops | PR/CO |
| 2 | Dental Offices | 63981 | Area | 6,000 | $761 | $0 |

Described Premises: 5655 Harrison St, Merrillville, IN 46410-2071

| Prem. No. | Classification | Class Code | Rating Basis | Premium Basis | Premium | |
|---|---|---|---|---|---|---|
| | | | | | Prem/Ops | PR/CO |
| 3 | Dental Offices | 63981 | Area | 1,300 | $72 | $0 |

Described Premises: 3540 E 118th St, Chicago, IL 60617

| Prem. No. | Classification | Class Code | Rating Basis | Premium Basis | Premium | |
|---|---|---|---|---|---|---|
| | | | | | Prem/Ops | PR/CO |
| 4 | Dental Offices | 63981 | Area | 1,766 | $114 | $0 |

Described Premises: 18511 Torrence Ave, Lansing, IL 60438-2851

| Prem. No. | Classification | Class Code | Rating Basis | Premium Basis | Premium | |
|---|---|---|---|---|---|---|
| | | | | | Prem/Ops | PR/CO |
| 5 | Dental Offices | 63981 | Area | 800 | $57 | $0 |

**LIMITS**

| | | |
|---|---|---|
| Other than Products/Completed Operations Aggregate | $2,000,000 | |
| Products/Completed Operations Aggregate | $2,000,000 | |
| Liability and Medical Expenses | $1,000,000 | Per Occurrence |
| Damage to Premises Rented to You | $1,000,000 | Any One Premises |
| Medical Expense | $10,000 | Per Person |
| Combined Total Aggregate | $10,000,000 | All Locations Combined |

Item C.  **OPTIONAL COVERAGES**

**HIRED AND NON-OWNED AUTO**

**INCLUDED WITHIN LIABILITY LIMITS**

| | |
|---|---|
| General Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $1,000,000 |

**Total Hired & Non-Owned Auto Premium: $59**

**WATER BACK-UP AND SUMP OVERFLOW LIABILITY**

**LIMITS**

| | |
|---|---|
| Water Back-up And Sump Overflow Limit | $5,000 |
| Business Income/Extra Expense Limit | $5,000 |

**Total Water Back-Up And Sump Overflow Premium: $133**

**BUSINESSOWNERS LIABILITY ENHANCEMENTS**

**Total Businessowners Liability Enhancements Premium: $150**

**PRIVACY LIABILITY**

**LIMITS**

| | |
|---|---|
| Privacy Liability Each Claim Limit | $25,000 |
| Privacy Liability Aggregate | $25,000 |
| Maximum Policy Aggregate Limit of Liability | $25,000 |
| Retention | $1,000 |
| Retroactive Date: | 04-13-2018 |

**Total Privacy Liability Premium: $147**


**EMPLOYEE BENEFITS LIABILITY**

**Total Employee Benefits Liability Premium: $0**


**EMPLOYMENT-RELATED PRACTICES LIABILITY**

**LIMITS**

| | |
|---|---|
| Annual Aggregate Limit | $25,000 |
| Deductible | $1,000 |
| Supplemental Limit | $25,000 |
| Retro Date | 04-13-2018 |

**Total Employment Practices Liability Premium: $0**

| | |
|---|---|
| **Total Terrorism (TRIA) Premium:** | **$68** |
| **Total General Liability Premium:** | **$1,757** |
| **Total Policy Premium:** | **$6,939.00** |

**Item E.    COVERAGE FORMS**

| Form Number | Edition | Title |
|---|---|---|
| BOP43591b | 0117 | BUSINESSOWNERS POLICY DECLARATIONS |
| CC1K11H | 0314 | SIGNATURES |
| BOP43603 | 0814 | EXCLUSION-GENETICALLY MODIFIED ORGANISMS |
| BOP43614 | 0814 | ADDITIONAL NAMED INSURED ENDORSEMENT |
| BOP43827 | 0614 | ABSOLUTE POLLUTION EXCLUSION - PROPERTY |
| BOP45199 | 0215 | PRIVACY LIABILITY INSURANCE ENDORSEMENT |
| BOP45208a | 0318 | EMPLOYMENT-RELATED PRACTICES LIABILITY ENDORSEMENT |
| BP0003 | 0713 | BUSINESSOWNERS COVERAGE FORM |
| BP0404 | 0110 | HIRED AUTO AND NON-OWNED AUTO LIABILITY |

| BP0439 | 0702 | ABUSE OR MOLESTATION EXCLUSION |
| BP0453 | 0713 | WATER BACK-UP AND SUMP OVERFLOW |
| BP0501 | 0702 | CALCULATION OF PREMIUM |
| BP0515 | 0115 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| BP0517 | 0106 | EXCLUSION - SILICA OR SILICA-RELATED DUST |
| BP1505 | 0514 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - LIMITED BODILY INJURY EXCEPTION NOT INCLUDED |
| TRIA11c | 0115 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| BP0523 | 0115 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| BOP48131 | 1016 | BUSINESSOWNERS PROPERTY ENHANCEMENTS FOR HEALTHCARE |
| BOP47643 | 0316 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| BOP48130 | 1016 | BUSINESSOWNERS LIABILITY ENHANCEMENTS ENDORSEMENT FOR HEALTHCARE |
| ALL20887 | 1006 | ACE PRODUCER COMPENSATION PRACTICES AND POLICIES |
| ILP001 | 0104 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS |
| ALL42490B | 0716 | U.S. FOREIGN ACCOUNT TAX COMPLIANCE ACT ("FATCA") |
| ALL21101 | 1106 | TRADE OR ECONOMIC SANCTIONS ENDORSEMENT |
| BP0598 | 0713 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| BOP48527 | 0117 | ASBESTOS EXCLUSION |
| BOP43830 | 0614 | LEAD EXCLUSION |
| ALL34772 | 1111 | ALL 34772 Illinois Religious Freedom Form |
| BP0643 | 0406 | ILLINOIS CHANGES - DEFENSE COSTS |
| XS2X35c | 1111 | SERVICE OF SUIT ENDORSEMENT – ILLINOIS |
| BOP47086 | 1015 | PRIVACY LIABILITY INSURANCE ENDORSEMENT |
| ILU003 | 0115 | ILLINOIS UNINSURED MOTORISTS COVERAGE AND UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION |
| BP0135 | 0208 | INDIANA CHANGES |
| BP1071 | 0208 | INDIANA CHANGES - POLLUTION EXCLUSION |
| BP1445 | 1210 | INDIANA CHANGES - WORKERS' COMPENSATION EXCLUSION |
| BOP46641 | 0815 | AMENDATORY ENDORSEMENT - INDIANA |

Item F.    Notice under this **Policy** shall be given to:
Chubb North America Claims
P.O. Box 5122
Scranton, PA    18505-0554
Toll Free: 844-539-3801
ACECRS-CLAIMS@chubb.com

Item G.    Producer Name and Mailing Address

LAMBENT RISK MANAGEMENT SERVICES INC
33 N LASALLE ST, #1150
CHICAGO, IL 60602-0000

Item H.    Producer Code: 25147C

IN WITNESS WHEREOF, the **Insurer** has caused this **Policy** to be signed by its President and Secretary, and countersigned by a duly authorized representative of the **Insurer**.

DATE:    03-14-2019

_____
                                                              Authorized Representative

# SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| UNITED DENTAL CENTERS, LTD; LUCKY DOG LLC | | | CC1K11H0314 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| HLT | D52718892 | 04-13-2019 **TO** 04-13-2020 | 04-13-2019 |

| Issued By (Name of Insurance Company) |
|---|
| PACIFIC EMPLOYERS INSURANCE COMPANY |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

CC-1K11h (03/14)

## GENETICALLY MODIFIED ORGANISM OR SUBSTANCE EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**BUSINESSOWNERS COVERAGE FORM**

The policy is amended as follows:

1.  The following exclusion is added to **SECTION II – LIABILITY:**

    This insurance does not apply to:

    **Genetic Modifications**

    **(1)** "Property damage" arising out of, in connection with, caused directly or indirectly by, or in any way related to any "genetically modified organism or substance", however caused, including but not limited to "property damage" arising out of or in connection with, caused directly or indirectly by, or in any way related to, the actual, alleged or threatened use, development, testing, discharge, disposal, dispersal, mishandling, migration, pollination, inhalation, ingestion, existence, breeding, presence, spread, release, or escape of, exposure to, or mixing, co-mingling or contact with, any "genetically modified organism or substance", regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, claim, "suit" or order that any insured or others abate, test for, monitor, clean up, remove, contain, treat, neutralize, detoxify, remediate, dispose of, or in any way respond to or assess the effects of any "genetically modified organism or substance"; or

    **(b)** Request, demand, claim, "suit" or order by or on behalf of a governmental authority for damages because of testing for, abating, cleaning up, removing, containing, treating, neutralizing, detoxifying, remediating, disposing or in any way responding to, or assessing the effect of any "genetically modified organism or substance".

    We will have no duty to investigate any claim or defend any "suit" arising out of or in any way related to any "genetically modified organism or substance" excluded by this endorsement.

2.  The following definitions are added to **SECTION II – LIABILITY, Section F. Liability and Medical Expenses Definitions**:

    "Genetically modified" means a process through science, engineering, biotechnology, technology or any other means or method that changes, alters, mutates or manipulates the genome, the chromosomes, the sequence of DNA, or the DNA of a gene or otherwise modifies a gene, changes the genetic makeup of cells, silences, depresses, represses or lessens the expression of a gene, removes a gene, or moves one or more genes across species boundaries. The term "genetically modified" includes, but is not limited to, any novel combination of genetic material obtained through the use of modern biotechnology, genetic engineering, gene therapy, cloning, recombinant DNA technology, transgenic technology and nuclear

transfer technology. However "genetically modified" does not mean the traditional horticultural practices of crossbreeding, plant limb grafting, or radiation breeding by random mutagenesis.

"Genetically modified organism or substance" means any "genetically modified" food, feed, bean, seed, plant, grain, crop, shrub, tree, organism, virus, microbe, animal or any other material, organism, life form, or substance, living or dead.

3.  The addition of this endorsement does not imply that other policy provisions, including but not limited to any "products-completed operations hazard" exclusion or pollution or contamination exclusion, do not also exclude coverage for any "genetically modified organism or substance".

All other terms and conditions of this policy remain unchanged.

## ADDITIONAL NAMED INSURED ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following: BUSINESSOWNERS COVERAGE FORM**

The policy is amended as follows:

The Declarations of the policy are amended to include the following persons or organizations as Named Insureds:

UNITED DENTAL CENTERS, LTD; LUCKY DOG LLC

All other terms and conditions of this policy remain unchanged.

BOP-43614 (08/14)                                                                 Page **1** of **1**

## ABSOLUTE POLLUTION EXCLUSION – PROPERTY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### BUSINESSOWNERS COVERAGE FORM

The following supersedes the terms and conditions of this policy. This policy does not insure against loss or expense, including but not limited to the cost of defense for:

1) direct physical loss of or damage to Covered Property,

2) your expense to remove debris of Covered Property,

3) any actual loss of Business Income you sustain due to the suspension of your "operations" during any "period of restoration",

4) any extra expense you incur during any "period of restoration",

5) damages for the devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space,

6) any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action requiring, that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "pollutants", or

7) any litigation or administrative procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence with another cause of loss, out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "pollutants", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

This exclusion applies even if such "pollutant" has a function in, or is used by you in your business, operations, premises, site or location.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, toxic materials, "volatile organic compound" and gases therefrom, radon, combustion byproducts and "waste."

"Volatile organic compound" means any compound which discharges organic gases as it decomposes or evaporates, examples of which include but are not limited to formaldehyde, pesticides, adhesives, construction materials made with organic chemicals, solvents, paint varnish and cleaning products.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

All other terms and conditions of this policy remain unchanged.  This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

_____
Authorized Representative



# Privacy Liability Insurance Endorsement

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**THIS COVERAGE SECTION IS A CLAIMS MADE AND REPORTED COVERAGE SECTION. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS COVERAGE SECTION COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR EXTENDING REPORTING PERIOD, IF APPLICABLE. PLEASE READ THIS COVERAGE SECTION CAREFULLY. THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES. FURTHER NOTE THAT AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETENTION AMOUNT.**

It is agreed that solely with respect to coverage afforded by this Endorsement, the **Policy** is amended as follows:

In consideration of the payment of the premium, and subject to the Declarations and the terms and conditions of this coverage Endorsement, the **Insureds** and the **Insurer** agree that this Endorsement modifies the insurance provided under the following: BUSINESSOWNERS COVERAGE FORM (hereinafter, the **Policy**). The **Policy** is amended to add the following Insuring Agreement and its respective definitions, exclusions, and general terms and conditions as set forth herein, solely with respect Privacy Liability coverage.

I.    INSURING AGREEMENT

     Privacy Liability

     The **Insurer** will pay **Damages** and **Claims Expenses** excess of the applicable Retention by reason of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** pursuant to Section VIII, Notice, for any **Wrongful Acts** taking place after the **Retroactive Date** and prior to the end of the **Policy Period**.

II.    DEFINITIONS

     When used in this Endorsement:

     A.   **Bodily Injury** means injury to the body, sickness, or disease, and death. **Bodily Injury** also means mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting from injury to the body, sickness, disease or death of any person.

           However, **Bodily Injury** does not mean mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock resulting from a **Wrongful Act** for which coverage is provided under this Endorsement.

     B.   **Claim** means:

          1.   a written demand against any **Insured** for monetary or non-monetary damages;

          2.   a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

          3.   an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief; or

          4.   a **Regulatory Proceeding**;

          including, where applicable, any appeal therefrom.

     C.   **Claims Expenses** means:

          1.   reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by the **Insurer**, or by the **Insured** with the **Insurer's** prior written consent, in the investigation and defense of a covered **Claim**; and

          2.   reasonable and necessary premiums for any appeal bond, attachment bond or similar bond, provided the **Insurer** shall have no obligation to apply for or furnish such bond.

          **Claims Expenses** shall not include wages, salaries, fees or costs of directors, officers or employees of the **Insurer** or the **Insured**.

D.   **Damages** means compensatory damages, any award of prejudgment or post-judgment interest, and settlements which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against any **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this Endorsement applies. **Damages** shall not include:

1.   any amount for which the **Insured** is not financially liable or legally obligated to pay;

2.   taxes, fines, penalties, or sanctions imposed against the **Insured**; (not applicable to **Regulatory Proceeding**)

3.   matters uninsurable under the laws pursuant to which this Endorsement is construed;

4.   the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority, specific performance, or any agreement to provide such relief;

5.   loss of fees or profits by the **Insured**, return of fees, commissions or royalties by the **Insured**, or re-performance of services by the **Insured** or under the **Insured's** supervision;

6.   disgorgement of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled;

7.   liquidated damages pursuant to a contract, unless, even in the absence of such contract, the **Insured** would be liable for such damages as result of a **Wrongful Act**;

8.   penalties of any nature, however denominated, arising by contract; and

9.   any amounts other than those which compensate solely for a loss caused by a **Wrongful Act**.

**Damages** includes punitive and exemplary damages to the extent such damages are insurable under the internal laws of the applicable jurisdiction that most favors coverage for such damages.

E.   **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Insured**.

F.   **Extended Reporting Period** means the period(s) for the extension of coverage, if applicable, described in Section V, **Extended Reporting Periods**.

G.   **Insured** means:

1.   The **Named Insured**;

2.   **Subsidiaries** of the **Named Insured**, but only with respect to **Wrongful Acts** which occur while they are a **Subsidiary**;

3.   any past, present or future principal, partner, officer, director, trustee, employee, leased employee, or temporary employee of the **Named Insured** or a **Subsidiary**, but only with respect to the commission of a **Wrongful Act** committed within the scope of such person's duties performed on behalf of the **Named Insured** or such **Subsidiary**; and

4.   Independent contractors of the **Named Insured** or of a **Subsidiary** who are natural persons, but only with respect to the commission of a **Wrongful Act** within the scope of such person's duties performed on the behalf of the **Named Insured** or such **Subsidiary**.

H.   **Insurer** means the insurance company providing this insurance.

I.   **Internet** means the worldwide public network of computers which enables the transmission of electronic data and which includes intranets, extranets and virtual private networks.

J.   **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

K.   **Mediation** means a non-binding process in which a neutral panel or individual assists the parties in reaching a settlement agreement. To be considered **Mediation** under this Endorsement, the process must be as set forth in the Commercial Mediation Rules of the American Arbitration Association, or such other process as the **Insurer** may, at its sole option, approve.

L.   **Named Insured** means the organization or natural person first specified in the **Policy** Declarations.

M.   **Personal Information** means:

    1.  an individual's name, social security number, medical or healthcare data, other protected health information, drivers license number, state identification number, credit card number, debit card number, address, telephone number, account number, account histories, or passwords; and

    2.  other nonpublic personal information as defined in **Privacy Regulations**;

in any format. **Personal Information** shall not include information that is lawfully made available to the general public for any reason, including but not limited to information from federal, state or local government records.

N.    **Personal Injury** means injury arising out of one or more of the following offenses:

    1.  false arrest, detention or imprisonment;

    2.  malicious prosecution;

    3.  libel, slander, or other defamatory or disparaging material;

    4.  publication or an utterance in violation of an individual's right to privacy; and

    5.  wrongful entry or eviction, or other invasion of the right to private occupancy.

O.    **Policy** means, collectively, the Declarations, attached policy form and any endorsements.

P.    **Policy Period** means the period of time specified in the Policy Declarations, subject to any applicable prior termination pursuant to Section XIII, Termination.

Q.    **Privacy Policy** means the **Insured's** policy for managing, storing, destroying, use, disclosure, and access to **Personal Information**.

R.    **Privacy Regulations** means the following statutes and regulations associated with the care, custody, control or use of personally identifiable financial, medical or other sensitive information:

    1.  Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) and Health Information Technology for Economic and Clinical Health Act;

    2.  Gramm-Leach-Bliley Act of 1999;

    3.  the California Security Breach Notification Act (CA SB 1386) and Massachusetts 201 CMR 17;

    4.  Identity Theft Red Flags under the Fair and Accurate Credit Transactions Act of 2003;

    5.  Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce, and

    6.  other similar state or federal identity theft and privacy protection legislation of the United States of America, its territories or possessions, that requires commercial entities that collect **Personal Information** to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that **Personal Information** has potentially been compromised.

S.    **Property Damage** means:

    1.  physical injury to, or loss or destruction of, tangible property, including the loss of use thereof; and

    2.  loss of use of tangible property which has not been physically injured, lost, damaged or destroyed.

However, **Property Damage** does not mean physical injury to, loss or destruction of, or loss of use of intangible property, including data.

T.    **Regulatory Proceeding** means a request for information, demand, suit, civil investigation or civil proceeding by or on behalf of a government agency, commenced by a service of a complaint or similar pleading alleging the violation of **Privacy Regulations** as a result of the **Insured's Wrongful Act**, and which may reasonably be expected to give rise to a covered **Claim** under this Endorsement.

U.    **Retroactive Date** means the date specified in the **Policy** Declarations.

V.    **Subsidiary** means any entity that is not formed as a partnership or joint venture of which the **Named Insured** owns or has the right to vote more than 50% of the outstanding voting securities representing the present right to vote for election of directors, or the managers or members of the board of managers or equivalent executives of a limited liability company, on or before the inception date of the Endorsement , either directly or indirectly, in any combination, by one or more other **Subsidiaries**.

W.    **Trade Secret** means information, including a formula, pattern, compilation, program, device, method, technique or process, that derives independent economic value, actual or potential, from not being

generally known to or readily ascertainable by other persons who can obtain value from its disclosure or use, so long as reasonable efforts have been made to maintain its secrecy.

X.    **Website** means the software, content and other materials accessible via the **Internet** at a designated Uniform Resource Locator address.

Y.    **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, breach of duty, or **Personal Injury** offense actually or allegedly committed or attempted by any **Insured**, in their capacity as such, resulting in:

   a.  the failure by the **Insured** or by an independent contractor for which the **Insured** is legally responsible to properly handle, manage, store, destroy or otherwise control:

      i. **Personal Information**; or

      ii. third party corporate information in any format provided to the **Insured** and specifically identified as confidential and protected under a nondisclosure agreement or similar contract with the **Named Insured** or **Subsidiary**; or

   b.  an unintentional violation of the **Insured's** privacy policy that results in the violation of any **Privacy Regulation**.

Z.    **Wrongful Employment Practices** means any actual or alleged:

   1.  wrongful dismissal or discharge or termination of employment, whether actual or constructive;

   2.  employment-related misrepresentation;

   3.  violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;

   4.  sexual harassment or other unlawful workplace harassment;

   5.  wrongful deprivation of a career opportunity or failure to employ or promote;

   6.  wrongful discipline of employees;

   7.  retaliation against employees for the exercise of any legally protected right or for engaging in any legally protected activity;

   8.  negligent evaluation of employees;

   9.  failure to adopt adequate workplace or employment policies and procedures;

   10. employment-related libel, slander, or defamation;

   11. employment-related invasion of privacy, except with respect to that part of any **Claim** arising out of the loss of **Personal Information** which is otherwise covered under this Endorsement;

   12. employment-related wrongful infliction of emotional distress, except with respect to that part of any **Claim** arising out of the loss of **Personal Information** which is otherwise covered under this Endorsement; and

   13. any actual or alleged discrimination, sexual harassment, or violation of a natural person's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

III.   **EXCLUSIONS**

The **Insurer** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim**:

A.    alleging, based upon, arising out of or attributable to any dishonest, fraudulent, criminal, or malicious act, error or omission, or any intentional or knowing violation of the law by an **Insured**.

B.    alleging, based upon, arising out of or attributable to any **Bodily Injury** or **Property Damage**.

C.    for breach of any express, implied, actual or constructive contract, warranty, guarantee, or promise, including any actual or alleged liability assumed by the **Insured**, unless such liability would have attached to the **Insured** even in the absence of such contract, warranty, guarantee, or promise.

D.    alleging, based upon, arising out of or attributable to any:

   1.  illegal discrimination of any kind;

    2.   humiliation, harassment or misconduct based upon, arising out of or related to any such discrimination;

    3.   **Wrongful Employment Practices**.

E.     alleging, based upon, arising out of or attributable to any price fixing, restraint of trade, monopolization, unfair trade practices or other violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world. However, with respect to a **Wrongful Act** expressly covered under this Endorsement, this exclusion shall not apply to a **Regulatory Proceeding** for that portion of **Damages** or **Claims Expenses** allocated to numbered paragraph 5 of **Privacy Regulations**.

F.     alleging, based upon, arising out of or attributable to any violation of the Employee Retirement Income Security Act of 1974, any rules or regulations promulgated thereunder, amendments thereto, or any similar federal, state or common law.

G.     alleging, based upon, arising out of or attributable to the gaining in fact of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled.

H.     alleging, based upon, arising out of or attributable to any fees, expenses, or costs paid to or charged by the **Insured**.

I.     alleging, based upon, arising out of or attributable to a **Wrongful Act** actually or allegedly committed prior to the date of this Endorsement.

J.     alleging, based upon, arising out of, or attributable to:

    1.   any prior or pending litigation, **Claims**, demands, arbitration, administrative or regulatory proceeding or investigation which was filed or commenced against an **Insured**, and of which an **Insured** had notice, prior to the date of this Endorsement, or alleging or derived from the same or substantially the same fact, circumstance or situation underlying or alleged therein; or

    2.   any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged therein would constitute **Interrelated Wrongful Acts**.

K.     alleging, based upon, arising out of, or attributable to:

    1.   any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy before the effective date of this Endorsement; or

    2.   any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**.

L.     alleging, based upon, arising out of or attributable to any electrical or mechanical failures or interruption, including but not limited to any electrical disturbance, surge, spike, brownout or blackout, and outages to gas, water, telephone, cable, satellite, telecommunications or other infrastructure.

M.     alleging, based upon, arising out of or attributable to any failure, interruption, or outage to **Internet** access service provided by the **Internet** service provider that hosts the **Insured's Website**.

N.     alleging, based upon, arising out of or attributable to fire, smoke, explosion, lightning, wind, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other physical event, however caused.

O.     alleging, based upon, arising out of or attributable to war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war is declared or not), strike, lock-out, riot, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power.

P.     alleging, based upon, arising out of or attributable to false, deceptive or unfair business practices, violation of consumer protection laws, or false or deceptive advertising. However, with respect to a **Wrongful Act** expressly covered under this Endorsement, this exclusion shall not apply to a **Regulatory Proceeding** for that portion of **Damages** or **Claims Expenses** allocated to numbered paragraph 5 of **Privacy Regulations**.

Q.   alleging, based upon, arising out of or attributable to any validity, invalidity, infringement, violation or misappropriation of any patent or **Trade Secret** by or on behalf of the **Insured**.

R.   alleging, based upon, arising out of or attributable to any validity, invalidity, infringement, violation or misappropriation of any copyright, service mark, trade name, trademark or other intellectual property of any third party.

S.   alleging, based upon, arising out of or attributable to any unsolicited electronic dissemination of faxes, e-mails or other communications by or on behalf of the **Insured** to multiple actual or prospective customers of the **Insured** or any other third party, including but not limited to actions brought under the Telephone Consumer Protection Act, any federal or state anti-spam statutes, and/or any other federal or state statute, law or regulation relating to a person's or entity's right of seclusion.

T.   alleging, based upon, arising out of or attributable to the collection of **Personal Information** by the **Insured** or the failure to provide adequate notice that such information is being collected.

U.   alleging, based upon, arising out of or attributable to the **Insured's** intentional failure to disclose the loss of **Personal Information** in violation of any law or regulation.

V.   alleging, based upon, arising out of or attributable to sections 605 and 616 of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., or any other similar federal or statutory provisions.

W.   alleging, based upon, arising out of or attributable to the rendering of or the failure to render professional services by any **Insured** to others.

## IV.   ESTATES, LEGAL REPRESENTATIVES AND SPOUSES

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insureds** shall be considered **Insureds** under this Endorsement, but coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured** to the spouse or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All of the terms and conditions of this Endorsement, including, without limitation, the Retention shown in the **Policy** Declarations applicable to **Damages** or **Claims Expenses** incurred by **Insureds**, shall also apply to **Damages** or **Claims Expenses** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

## V.   EXTENDED REPORTING PERIODS

If the **Insurer** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), or if the **Named Insured** terminates or does not renew this **Policy** and does not obtain replacement coverage as of the effective date of such termination or nonrenewal, the **Named Insured** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by this Endorsement for at least one **Extended Reporting Period** as follows:

A. Automatic **Extended Reporting Period**

The **Named Insured** shall have continued coverage granted by this Coverage Section for a period of 60 days following the effective date of such termination or nonrenewal, but only for **Claims** first made during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal. This Automatic **Extended Reporting Period** shall immediately expire upon the purchase of replacement coverage by the **Named Insured**.

B. Optional **Extended Reporting Period**

1. The **Named Insured** shall have the right, upon payment of the additional premium set forth below, to an Optional **Extended Reporting Period**, for the period set forth below following the effective date of such termination or nonrenewal, but only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

The premium due for the **Extended Reporting Period** shall be:

100% of the annual premium for a 12-month **Extended Reporting Period**;

160% of the annual premium for a 24-month **Extended Reporting Period**; and

190% of the annual premium for a 36-month **Extended Reporting Period**.

2. This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Insurer**, and the **Insurer** receives payment of the additional premium, within 60 days following the effective date of termination or nonrenewal.

3. The 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic **Extended Reporting Period**.

C. The **Insurer** shall give the **Named Insured** notice of the premium due for the Optional **Extended Reporting Period** as soon as practicable following the date the **Named Insured** gives such notice of such election, and such premium shall be paid by the **Named Insured** to the **Insurer** within 10 days following the date of such notice by the **Insurer** of the premium due. The Optional **Extended Reporting Period** is not cancelable and the entire premium for the Optional **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

D. The Automatic and Optional **Extended Reporting Periods** shall be part of and not in addition to the Limit of Liability for the immediately preceding **Policy Period**. The Automatic and Optional **Extended Reporting Periods** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period** and the Automatic and Optional **Extended Reporting Period**, combined.

E. A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period**.

VI. LIMITS OF LIABILITY

Regardless of the number of Insuring Agreements purchased under this Endorsement, **Insureds** against whom **Claims** are brought, **Claims** made or persons or entities making **Claims**:

A. Limit of Liability

1. the Each **Claim** Limit of Liability stated in the **Policy** Declarations is the **Insurer's** maximum liability under the Privacy Liability Insuring Agreement for the sum of all **Damages** and all **Claims Expenses** because of each **Claim**, including each **Claim** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

2. the Aggregate Limit of Liability as stated in the **Policy** Declarations is the **Insurer's** maximum liability under the Privacy Liability Insuring Agreement for the sum of all **Damages** and all **Claims Expenses** because of all **Claims** combined in the aggregate, including all **Claims** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

3. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

4. **Claims Expenses** shall be part of and not in addition to the applicable Aggregate Limits of Liability stated in the **Policy** Declarations, and shall reduce such Aggregate Limits of Liability. If the applicable Limit of Liability is exhausted by payment of **Damages** or **Claims Expenses**, the obligations of the **Insurer** under this Endorsement shall be completely fulfilled and extinguished. The **Insurer** is entitled to pay **Damages** and **Claims Expenses**, as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

B. Maximum **Policy** Aggregate Limit of Liability

The Maximum **Policy** Aggregate Limit of Liability stated in the **Policy** Declarations is the **Insurer's** maximum liability for the sum of all **Damages** and all **Claims Expenses** because of all **Claims** under this Endorsement.

C.    All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Damages** and **Claims Expenses** resulting from a single **Claim** shall be deemed, respectively, a single **Damage or Claims Expense**.

D.    **Damages** and **Claims Expenses** shall be part of and not in addition to the applicable Limit(s) of Liability shown in the **Policy** Declarations, and shall reduce such Limit(s) of Liability. If the Limit(s) of Liability are exhausted by payment of **Damages** and **Claims Expenses**, the obligations of the **Insurer** under this Endorsement shall be completely fulfilled and extinguished.

VII.    **RETENTION**

A.    The liability of the **Insurer** shall apply only to that part of **Damages** and **Claims Expenses** which are in excess of the applicable Retention amount shown in the **Policy** Declarations. Such Retention shall be borne uninsured by the **Named Insured** and at the risk of all **Insureds**.

B.    A single Retention amount shall apply to **Damages** and **Claims Expenses** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

VIII.    **NOTICE**

A.    The **Insured** shall, as a condition precedent to their rights under this Endorsement , give to the **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than 30 days after the later of the end of the **Policy Period**, the **Automatic Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period**.

B.    If, during the **Policy Period**, the **Insured** becomes aware of any specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this Endorsement , and if the **Insureds** give written notice to the **Insurer** during the **Policy Period**, the Automatic **Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period** of:

1.    the identity of the potential claimants;

2.    a description of the anticipated **Wrongful Act** allegations;

3.    the identity of the **Insureds** allegedly involved;

4.    the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

5.    the consequences which have resulted or may result; and

6.    the nature of the potential monetary damages;

then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

C.    All notices under any provision of this Endorsement shall be in writing and given by prepaid express courier or certified mail properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Named Insured** at the address shown in the **Policy** Declarations. Notice to the **Insurer** of any **Claim** or **Wrongful Act** shall be given to the **Insurer** at the address set forth in the **Policy** Declarations. All other notices to the **Insurer** under this Endorsement shall be given to the **Insurer** at the address set forth in the **Policy** Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee, or one day following the date such notice is sent, whichever is earlier.

D.    No notice that may be given during the **Policy Period** under section VIII, Notice, at subsection B may be given during the **Extended Reporting Periods**, if elected.

IX.    **DEFENSE AND SETTLEMENT**

A.    Except as provided in Section IX, subsection B below, the **Insurer** shall have the right and duty to defend any covered **Claim** brought against the **Insured** even if such **Claim** is groundless, false or fraudulent. The **Insured** shall not:

1.    admit or assume liability without the prior written consent of the **Insurer**;

2. settle or negotiate to settle any **Claim** unless such settlement fully resolves such **Claim** within the applicable Retention; or

3. incur any **Claims Expenses** without the prior written consent of the **Insurer**, and the **Insurer** shall have the right to appoint counsel and to make such investigation and defense of a covered **Claim** as it deems necessary.

B. The **Insurer** shall have the right, but not the duty, to defend any **Regulatory Proceeding**. For such **Claims** the **Insured** shall select defense counsel from the **Insurer's** list of approved law firms, and the **Insurer** reserves the right to associate in the defense of such **Claims**.

C. The **Insurer** shall not settle any **Claim** without the written consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement or a compromise recommended by the **Insurer** and acceptable to the claimant, then the **Insurer's** Limit of Liability under this Endorsement with respect to such **Claim** shall be reduced to the amount of **Damages** for which the **Claim** could have been settled plus all **Claims Expenses** incurred up to the time the **Insurer** made its recommendation to the **Named Insured**, which amount shall not exceed that portion of any applicable Aggregate Limit of Liability that remains unexhausted by payment of **Damages** or **Claims Expenses** or by any combination thereof.

D. The **Insurer** shall not be obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle any **Claim** after any applicable Limit of Liability specified in the **Policy Declarations** has been exhausted by payment of **Damages** or **Claims Expenses**, or by any combination thereof, or after the **Insurer** has deposited the remainder of any unexhausted applicable Limit of Liability into a court of competent jurisdiction. In either such case, the **Insurer** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **Claim** by tendering control of such **Claim** to the **Insured**.

E. The **Insured** shall cooperate with the **Insurer**, and provide to the **Insurer** all information and assistance which the **Insurer** reasonably requests including but not limited to attending hearings, depositions and trials and assistance in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting the defense of any **Claim** covered by this Endorsement . The **Insured** shall do nothing that may prejudice the **Insurer's** position. The **Insureds** shall immediately forward to the **Insurer**, at the address indicated in the **Policy** Declarations, every demand, notice, summons, or other process or pleading received by the **Insured** or its representatives.

X.  OTHER INSURANCE

If any **Damages** or **Claims Expenses** covered under this Endorsement are covered under any other valid and collectible insurance, then this Endorsement shall cover such **Damages** or **Claims Expenses**, subject to the Endorsement terms and conditions, only to the extent that the amount of such **Damages** or **Claims Expenses** are in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this Endorsement.

XI.  MATERIAL CHANGES IN CONDITIONS

A. Acquisition or Creation of Another Organization

If, during the **Policy Period**, the **Named Insured**:

1. acquires voting securities in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

2. acquires any organization by merger into or consolidation with the **Named Insured**;

then, subject to the terms and conditions of this Endorsement, such organization shall be covered under this Endorsement but only with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Insurer** agrees to provide coverage by endorsement for **Wrongful Acts** taking place prior to such acquisition or creation.

If the total assets of such acquired organization, as reflected in the then most recent consolidated financial statements of the organization, exceeds 10% of the total assets of the **Named Insured** and the **Subsidiaries** as reflected in the then most recent consolidated financial statements of the **Named Insured**, the **Named Insured**, as a condition precedent to coverage with respect to such **Insureds**, shall, no later than 60 days after the effective date of such acquisition or creation:

1. give written notice of such acquisition or creation to the **Insurer**;

2.   pay any additional premium required by the **Insurer**; and

3.   agree to any additional terms and conditions of this Endorsement as required by the **Insurer**.

B.   Acquisition of the **Named Insured**

If, during the **Policy Period**, any of the following events occurs:

1.   the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

2.   the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of the directors of the **Named Insured**;

then coverage under this Endorsement will continue in full force and effect until termination of this Endorsement, but only with respect to **Claims** for **Wrongful Acts** taking place before such event. Coverage under this Endorsement will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event. This Endorsement may not be cancelled after the effective time of the event, and the entire premium for this Endorsement **shall** be deemed earned as of such time.

C.   Termination of a **Subsidiary**

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to such organization and its employees shall continue until termination of this Endorsement. Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary**.

XII.   **REPRESENTATIONS**

A.   The **Insureds** represent and acknowledge that they:

1.   reasonably maintain and update the **Insured's** computer system, including the reasonable use, maintenance, upgrading and updating of its network security;

2.   use industry acceptable third party antivirus, firewall, intrusion detection or other solutions to monitor network attacks, computer viruses, Trojan horses, bots, malicious code, software, spyware and malware activity;

3.   use industry acceptable encryption technology;

4.   properly apply necessary software patches;

5.   maintain the performance of software so that such software:

    a.   is not subject to expiration, cancellation, or withdrawal;

    b.   is not released or used during its developmental state; or

    c.   has passed all test runs and has proven successful in applicable daily operations;

6.   comply with any state or federal **Privacy Regulations** and self-regulatory requirements around minimum data security standards;

and that the above activities are a necessary condition precedent to coverage for any **Claim** hereunder. The statements and information contained in A1 – A6 above, including all information provided concerning network security policies and procedures, information management policies and procedures, and business continuity plans and policies, are true and accurate and:

1.   are the basis of this Endorsement and are to be considered as incorporated into and constituting a part of this Endorsement; and

2.   shall be deemed material to the acceptance of this risk or the hazard assumed by the **Insurer** under this Endorsement.

B.   It is understood and agreed that:

1.   this Endorsement is issued in reliance upon the truth and accuracy of such representations;

2.   the **Insureds** have and will provide accurate information with regard to loss control audits and network security assessments as required by the **Insurer**; and

3.   if such representations or such information are not true, accurate and complete, this Endorsement shall be null and void in its entirety and the **Insurer** shall have no liability hereunder.

XIII.   **TERMINATION**

    A.  This Endorsement shall terminate at the earliest of the following times:

      1.  the effective date of termination specified in a prior written notice by the **Named Insured** to the **Insurer**;

      2.  30 days after receipt by the **Named Insured** of a written notice of termination from the **Insurer**;

      3.  10 days after receipt by the **Named Insured** of a written notice of termination from the **Insurer** for failure to pay a premium when due, unless the premium is paid within such 10 day period;

      4.  upon expiration of the **Policy Period** as set forth in the **Policy** Declarations; or

      5.  at such other time as may be agreed upon by the **Insurer** and the **Named Insured**.

## XIV.   TERRITORY AND VALUATION

    A.  Coverage provided under this Endorsement shall extend to **Wrongful Acts** and **Claims** taking place, brought or maintained in, and subject to the laws of, the United States of America, its territories or possessions.

    B.  All premiums, limits, retentions, **Damages** or **Claims Expenses**, and any other amounts under this Endorsement are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of loss under this Endorsement is stated in a currency other than United States of America dollars, payment under this Endorsement shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal*.

## XV.   SUBROGATION

In the event of any payment under this Endorsement, the **Insurer** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

## XVI.   ACTION AGAINST THE **INSURER** AND BANKRUPTCY

Except as provided in Section XIX, Alternative Dispute Resolution, no action shall lie against the **Insurer**. No person or organization shall have any right under this Endorsement to join the **Insurer** as a party to any action against any **Insured** to determine the liability of the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or its legal representatives. Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this Endorsement.

## XVII.   AUTHORIZATION CLAUSE

By acceptance of this Endorsement, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving of notice of **Claim**, the giving or receiving of notice of termination or nonrenewal, the payment of premiums, the receiving of any premiums that may become due under this Endorsement, the agreement to and acceptance of endorsements, consenting to any settlement, exercising the right to the **Extended Reporting Period**, and the giving or receiving of any other notice provided for in this Endorsement, and all **Insureds** agree that the **Named Insured** shall so act on their behalf.

## XVIII.   ALTERATION, ASSIGNMENT AND HEADINGS

    A.  Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or a change in any part of this Endorsement nor prevent the **Insurer** from asserting any right under the terms of this Endorsement.

    B.  No change in, modification of, or assignment of interest under this Endorsement shall be effective except when made by a written endorsement which is signed by an authorized representative of the **Insurer**.

    C.  The titles and headings to the various parts, sections, and subsections of this Endorsement are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, or subsections.

XIX.    ALTERNATIVE DISPUTE RESOLUTION

The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this Endorsement or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process set forth in this Section.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding **Mediation** administered by any **Mediation** facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by **Mediation** in accordance with the then-prevailing commercial **Mediation** rules of the **Mediation** facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either **Mediation** or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of **Mediation**, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until at least 60 days after the date the **Mediation** shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in the **Policy** Declarations as the principal address of the **Named Insured**. The **Named Insured** shall act on behalf of each and every **Insured** in connection with any ADR process under this Section.

XX.    INTERPRETATION

The terms and conditions of this Endorsement shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this Endorsement is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions, without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer** and without reference to the reasonable expectations of either the **Insureds** or the **Insurer**.

All other terms and conditions of the **Policy** remain unchanged.

**CHUBB**

## EMPLOYMENT-RELATED PRACTICES LIABILITY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### BUSINESSOWNERS COVERAGE FORM

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE AND REPORTED COVERAGE. PLEASE READ IT CAREFULLY.

### SCHEDULE

| |
|---|
| Employment-related Practices Liability Annual Aggregate Limit Of Insurance: $ 25,000 |
| Deductible Amount: $ 1,000 |
| Supplemental Limit: $ 25,000 |
| Retroactive Date: 04-13-2018 |
| ☐  Extended Reporting Period |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

For the purposes of the coverage provided by this endorsement, **SECTION II − LIABILITY** is amended as follows:

**A.** The following is added to Paragraph **A. Coverages:**

    **1. Insuring Agreement**

        **a.** We will pay those sums the insured becomes legally obligated to pay as damages resulting from a "wrongful act" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages because of a "wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any incident that may result from a "wrongful act". We may, with your written consent, settle any "claim" that may result. But:

            **(1)** The amount we will pay for damages and "defense expenses" is limited as described in Paragraph **D.1.** Employment-related Practices Liability Annual Aggregate Limit Of Insurance and Paragraph **D.2.** Deductible of this endorsement; and

            **(2)** The coverage and duty to defend provided by this endorsement will end when we have used the applicable Limit of Insurance for "defense expenses" or the payment of judgments or settlements.

        No other obligation or liability to pay sums, such as civil or criminal fines, imposed on you or any other insured, or to perform acts or services is covered.

        **b.** This insurance applies to "wrongful acts" only if:

            **(1)** The "wrongful act" takes place in the "coverage territory";

            **(2)** The "wrongful act" did not commence before the Retroactive Date, if any, shown in the

CHUBB

Schedule, or after the end of the policy period; and

    **(3)** A "claim" against any insured for damages because of the "wrongful act" is first made during the policy period, or an Extended Reporting Period provided under Paragraph **F.** of this endorsement, in accordance with Paragraphs **c.** and **d.** below.

  **c.** A "claim" will be deemed to have been made at the earlier of the following times:

    **(1)** When notice of such "claim" after being received by any insured is reported to us in writing; or

    **(2)** When a "claim" against an insured is made directly to us in writing.

A "claim" received by the insured during the policy period and reported to us within 30 days after the end of the policy period will be considered to have been reported within the policy period. However, this 30-day grace period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would have been covered but for exhaustion of the amount of insurance applicable to such "claims".

  **d.** If during the policy period you become aware of a "wrongful act" that may reasonably be expected to give rise to a "claim" against any insured, you must provide notice to us in accordance with the provisions of Paragraph **E.2** Duties In The Event Of A Claim Or Wrongful Act That May Result In A Claim. If such notice is provided, then any "claim" subsequently made against any insured arising out of that "wrongful act" shall be deemed under this policy to be a "claim" made during the policy period in which the "wrongful act" was first reported to us.

  **e.** All "claims" for damages because of a "wrongful act" committed against the same person, including damages claimed by any person for care, loss of services or death resulting at any time from the "wrongful act", will be deemed to have been made at the time the first of such "claims" is made, regardless of the number of "claims" subsequently made.

**B.** For the purposes of the coverage provided by this endorsement, the following is added to Paragraph **B. Exclusions**, Subparagraph **1. Applicable To Business Liability Coverage**:

This insurance does not apply to:

  **a. Criminal, Fraudulent Or Malicious Acts**

An insured's liability arising out of criminal, fraudulent or malicious acts or omissions by that insured.

This exclusion does not affect our duty to defend, in accordance with Paragraph **A.1.** of this endorsement, an insured prior to determining, through the appropriate legal processes, that that insured is responsible for a criminal, fraudulent or malicious act or omission.

  **b. Contractual Liability**

Any "wrongful act" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

  **c. Violation Of Laws Applicable To Employers**

A violation of your responsibilities or duties required by any other federal, state or local statutes, rules or regulations, and any rules or regulations promulgated therefor or amendments thereto, except for the following, and including amendments thereto: Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act, the Pregnancy Discrimination Act of 1978, the Immigration Reform Control Act of 1986, the Family and Medical Leave Act of 1993 and the Genetic Information Nondiscrimination Act of 2008 or any other similar state or local statutes, rules or regulations to the extent that they prescribe responsibilities or duties concerning the same acts or omissions.

However, this insurance does not apply to a "wrongful act" arising out of your failure to comply with any of the accommodations for the disabled required of you by, or any expenses incurred as the result of physical modifications made to accommodate any person pursuant to, the Americans With Disabilities Act, or any amendments thereto, or any similar state or local statutes, rules or regulations to the extent that they prescribe responsibilities or duties concerning the same acts or omissions.

CHUBB®

This exclusion does not apply to any "claim" for retaliatory treatment by an insured against any person making a "claim" pursuant to such person's rights under any statutes, rules or regulations.

**d. Strikes And Lockouts**

Any "wrongful act" committed against any striking or locked-out "employee", or to an "employee" who has been temporarily or permanently replaced due to any labor dispute.

**e. Prior Or Pending Litigation**

Any "claim" or "suit" against any insured which was pending on, or existed prior to, the applicable Retroactive Date shown in the Schedule, or any "claim" or "suit" arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or "suit".

**f. Prior Notice**

Any "wrongful act" alleged or contained in any "claim" which has been reported, or for which, in any circumstance, notice has been given, under any other prior insurance policy providing essentially the same type of coverage.

**C.** For the purposes of the coverage provided by this endorsement, **Section II – Who Is An Insured** is amended to include as an insured:

**1.** Your "employees", unless otherwise excluded in this endorsement.

**2.** Your former "employees", unless otherwise excluded in this endorsement, but only with respect to "wrongful acts" committed while in your employ.

**D.** For the purposes of the coverage provided by this endorsement, Paragraph **D.** Liability And Medical Expenses Limits Of Insurance is replaced by the following:

**1. Employment-related Practices Liability Annual Aggregate Limit Of Insurance**

**a.** The Employment-related Practices Liability Annual Aggregate Limit Of Insurance shown in the Schedule of this endorsement is the most we will pay, regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought; or

**(3)** Persons, organizations or government agencies making "claims" or bringing "suits".

**b.** The Employment-related Practices Liability Annual Aggregate Limit Of Insurance shown in the Schedule of this endorsement is the most we will pay for the sum of:

**(1)** All damages; and

**(2)** All "defense expenses";

because of all "wrongful acts" to which this insurance applies.

The Employment-related Practices Liability Annual Aggregate Limit Of Insurance applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Employment-related Practices Liability Annual Aggregate Limit Of Insurance.

**2. Deductible**

**a.** We will not pay for our share of damages and "defense expenses" until the amount of damages and "defense expenses" exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of damages and "defense expenses" in excess of the Deductible, up to the Employment-related Practices Liability Annual Aggregate Limit Of Insurance.

**b.** The Deductible shown in the Schedule applies to all "claims" arising out of:

BOP-45208a (03/18)
(211397.1)

Includes copyrighted material of the Insurance Services Office, Inc. with its permission.

Page 3 of 8

CHUBB°

(1) The same "wrongful act"; or

(2) A series of "wrongful acts", circumstances or behaviors which arise from a common cause; regardless of the number of persons, organizations or government agencies making such "claims".

c. We may pay any part or all of the Deductible amount to effect settlement of any "claim" and, upon notification of the action taken, you shall promptly reimburse us for such part of the Deductible amount as has been paid by us.

**E.** For the purposes of the coverage provided by this endorsement, the following are added under Paragraph **E. Liability And Medical Expenses General Conditions**:

**1. Consent To Settle**

a. If we recommend a settlement to you which is acceptable to the claimant, but to which you do not consent, the most we will pay as damages in the event of any later settlement or judgment is the amount for which the "claim" could have been settled, to which you did not give consent, less any deductible.

b. If we recommend a settlement within the limit of liability as described in Paragraph **D.1.** Employment-related Practices Liability Annual Aggregate Limit Of Insurance, which is agreed to by the claimant ("settlement opportunity"), and:

(1) You consent to such settlement within 30 days of the date you are first made aware of the "settlement opportunity";

(2) Such consent occurs within the first 90 days after the "claim" is first reported; and

(3) Such "claim" is reported within the first 30 days after it is made;

then, in the event the "claim" settles as a result of such "settlement opportunity", the deductible applicable to such "claim" shall be reduced by 10% for such "claim". It shall be a condition to such reduction that you and any other involved insured must consent to such settlement.

**2. Duties In The Event Of A Claim Or Wrongful Act That May Result In A Claim**

a. If a "claim" is received by any insured, you must:

(1) Immediately record the specifics of the "claim" and the date received; and

(2) Notify us, in writing, as soon as practicable.

b. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any per- son or organization which may be liable to the insured because of a "wrongful act" to which this insurance may also apply.

c. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our written consent.

d. If you become aware of a "wrongful act" that may reasonably be expected to give rise to a "claim" and for which a "claim" has not yet been received, you must notify us, in writing, as soon as practicable. Such notice must provide:

(1) A description of the "wrongful act", including all relevant dates;

(2) The names of the persons involved in the "wrongful act", including names of the potential claimants;

CHUBB°

(3) Particulars as to the reasons why you became aware of and reasonably expect a "claim" which may result from such "wrongful act";

(4) The nature of the alleged or potential damages arising from such "wrongful act"; and

(5) The circumstances by which the insured first became aware of the "wrongful act".

**3. Representations**

By accepting this policy, you agree that:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**4. Transfer Of Duties When Limit Of Insurance Is Used Up**

**a.** If we conclude that, based on "claims" which have been reported to us and to which this insurance may apply, the Employment-related Practices Liability Annual Aggregate Limit Of Insurance is likely to be used up in the payment of judgments or settlements for damages or the payment of "defense expenses", we will notify the first Named Insured, in writing, to that effect.

**b.** When the Employment-related Practices Liability Annual Aggregate Limit Of Insurance has actually been used up in the payment of judgments or settlements for damages or the payment of "defense expenses", we will:

(1) Notify the first Named Insured in writing, as soon as practicable, that such a limit has actually been used up, and that our duty to defend the insured against "suits" seeking damages subject to that limit has also ended;

(2) Initiate, and cooperate in, the transfer of control, to any appropriate insured, of all "suits" for which the duty to defend has ended for the reason described in preceding Paragraph **4.b.(1)** and which are reported to us before that duty to defend ended; and

(3) Take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

**c.** If the circumstances described in Paragraph **4.b.(1)** have occurred, the first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must:

(1) Cooperate in the transfer of control of "suits"; and

(2) Arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

**d.** We will take no action with respect to defense for any "claim" if such "claim" is reported to us after the Employment-related Practices Liability Annual Aggregate Limit Of Insurance has been used up. It becomes the responsibility of the first Named Insured, and any other insured involved in such a "claim", to arrange defense for such "claim".

**e.** The first Named Insured will reimburse us as soon as practicable for expenses we incur in taking those steps we deem appropriate in accordance with Paragraph **4.b.**

**f.** The exhaustion of the Employment-related Practices Liability Annual Aggregate Limit Of Insurance and the resulting end of our duty to defend will not be affected by our failure to comply with any of the provisions of this Condition.

**F. Extended Reporting Period**

**1.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added:

**a.** You will have the right to purchase an Extended Reporting Period from us if:

(1) This endorsement is cancelled or not renewed for any reason other than fraud; or

CHUBB°

  **(2)** We renew or replace this endorsement with insurance that:

   **(a)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

   **(b)** Does not apply to "wrongful acts" on a claims-made basis.

 **b.** An Extended Reporting Period, as specified in Paragraph **F.1.a.** above, lasts three years and is available only for an additional premium.

 **c.** The Extended Reporting Period starts with the end of the policy period. It does not extend the policy period or change the scope of the coverage provided. It applies only to "claims" to which the following applies:

  **(1)** The "claim" is first made during the Extended Reporting Period;

  **(2)** The "wrongful act" occurs before the end of the policy period; and

  **(3)** The "wrongful act" did not commence before the Retroactive Date.

 **d.** You must give us a written request for the Extended Reporting Period within 30 days after the end of the policy period or the effective date of cancellation, whichever comes first.

 **e.** The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and any premium or deductible you owe us for coverage provided under this endorsement. Once in effect, the Extended Reporting Period may not be cancelled.

 **f.** We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

  **(1)** The exposures insured;

  **(2)** Previous types and amounts of insurance;

  **(3)** Limit of Insurance available under this endorsement for future payment of damages; and

  **(4)** Other related factors.

 The additional premium will not exceed 200% of the annual premium for this endorsement.

 **g.** When the Extended Reporting Period is in effect, we will provide a Supplemental Limit of Insurance for any "claim" first made during the Extended Reporting Period.

 The Supplemental Limit of Insurance will be equal to the dollar amount shown in the Schedule of this endorsement under the Employment-related Practices Liability Annual Aggregate Limit Of Insurance.

 Paragraph **D.1.b.** of this endorsement will be amended accordingly.

**2.** If the Extended Reporting Period is chosen by checking the appropriate box in the Schedule of this endorsement, the provisions of this Paragraph **2.** supersede any other provisions of this endorsement to the contrary.

 **a.** An Extended Reporting Period is provided, as described in Paragraph **F.** Extended Reporting Period.

 **b.** A Supplemental Limit of Insurance applies, as set forth in Paragraph **F.2.c.** below, to "claims" first made during the Extended Reporting Period. The limit is equal to the Employment-related Practices Liability Annual Aggregate Limit Of Insurance entered in the Schedule.

 **c.** Paragraph **D.1.b.** of this endorsement is replaced by the following:

  **b.** The Employment-related Practices Liability Annual Aggregate Limit Of Insurance shown in the Schedule of this endorsement is the most we will pay for the sum of:

   **(1)** All damages; and

   **(2)** All "defense expenses";

  because of all "wrongful acts" to which this insurance applies.

CHUBB°

However, the Employment-related Practices Liability Annual Aggregate Limit Of Insurance does not apply to "claims" to which the Supplemental Limit Of Insurance applies.

d. The following is added to Paragraph **D.1.** of this endorsement:

c. The Supplemental Limit Of Insurance is the most we will pay for the sum of:

(1) All damages; and

(2) All "defense expenses";

because of all "wrongful acts" for "claims" first made during the Extended Reporting Period.

e. Paragraph **D.1. Employment-related Practices Liability Annual Aggregate Limit Of Insurance,** as amended by Paragraphs **F.2.c.** and **F.2.d.,** is otherwise unchanged and applies in its entirety.

f. The Extended Reporting Period will not take effect unless the additional premium for it, as set forth in Paragraph **F.** Extended Reporting Period, is paid when due. If that premium is paid when due, the Extended Reporting Period may not be cancelled.

G. For the purposes of the coverage provided by this endorsement, the following is added to Paragraph **F. Liability And Medical Expenses Definitions** of the policy:

1. "Claim" means a "suit" or demand made by or for a current, former or prospective "employee" for damages because of an alleged "wrongful act".

2. "Defense expenses" means payments allocated to a specific "claim" we investigate, settle or defend, for its investigation, settlement or defense, including:

   a. Fees and salaries of attorneys and paralegals we retain, including attorneys and paralegals who are our "employees";

   b. Fees of attorneys the insured retains when, by our mutual agreement or court order (or when required by administrative hearing or proceeding), the insured is given the right to retain defense counsel to defend against a "claim";

   c. All other litigation or administrative hearing expenses, including fees or expenses of expert witnesses hired either by us or by the defense attorney retained by an insured;

   d. Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim", including actual loss of earnings up to $250 a day because of time off from work; and

   e. Costs taxed against the insured in a "suit".

   "Defense expenses" does not include salaries and expenses of our "employees" or the insured's "employees" (other than those described in Paragraphs **a.** and **d.** of this definition).

3. "Discrimination" means violation of a person's civil rights with respect to such person's race, color, national origin, religion, gender, marital status, age, sexual orientation or preference, physical or mental condition, or any other protected class or characteristic established by any federal, state or local statutes, rules or regulations.

4. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker" or independent contractor.

5. "Wrongful act" means one or more of the following offenses, but only when they are employment related:

   a. Wrongful demotion or failure to promote, negative evaluation, reassignment, or discipline of your current "employee" or wrongful refusal to employ;

   b. Wrongful termination, meaning the actual or constructive termination of an "employee":

      (1) In violation or breach of applicable law or public policy; or

CHUBB'

      **(2)** Which is determined to be in violation of a contract or agreement, other than an employment contract or agreement, whether written, oral or implied, which stipulates financial consideration if such financial consideration is due as the result of a breach of the contract;

**c.** Wrongful denial of training, wrongful deprivation of career opportunity, or breach of employment contract;

**d.** Negligent hiring or supervision which results in any of the other offenses listed in this definition;

**e.** Retaliatory action against an "employee" because the "employee" has:

      **(1)** Declined to perform an illegal or unethical act;

      **(2)** Filed a complaint with a governmental authority or a "suit" against you or any other insured in which damages are claimed;

      **(3)** Testified against you or any other insured at a legal proceeding; or

      **(4)** Notified a proper authority of any aspect of your business operation which is illegal;

**f.** Coercing an "employee" to commit an unlawful act or omission within the scope of that person's employment;

**g.** Harassment;

**h.** Libel, slander, invasion of privacy, defamation or humiliation; or

**i.** Verbal, physical, mental or emotional abuse arising from "discrimination".

**BUSINESSOWNERS**
**BP 00 03 07 13**

# BUSINESSOWNERS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section II – Liability, the word "insured" means any person or organization qualifying as such under Paragraph C. Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph H. Property Definitions in Section I – Property and Paragraph F. Liability And Medical Expenses Definitions in Section II – Liability.

## SECTION I – PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

Covered Property includes Buildings as described under Paragraph a. below, Business Personal Property as described under Paragraph b. below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph 2. Property Not Covered.

a. Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Your personal property in apartments, rooms or common areas furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

b. Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

(1) Property you own that is used in your business;

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph E.5.d.(3)(b);

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(4) Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph 1.b.(2); and

**(5)** Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

## 2. Property Not Covered

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** "Money" or "securities" except as provided in the:

**(1)** Money And Securities Optional Coverage; or

**(2)** Employee Dishonesty Optional Coverage;

**c.** Contraband, or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

**(1)** Outdoor Property Coverage Extension; or

**(2)** Outdoor Signs Optional Coverage;

**f.** Watercraft (including motors, equipment and accessories) while afloat;

**g.** Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.** "Electronic data", except as provided under Additional Coverages – Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

**j.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

## 3. Covered Causes Of Loss

Direct physical loss unless the loss is excluded or limited under Section I – Property.

## 4. Limitations

**a.** We will not pay for loss of or damage to:

**(1)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(2)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

**(4)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**(5)** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

© Insurance Services Office, Inc., 2012
BP 00 03 07 13

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

(6) Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

(a) Dampness or dryness of atmosphere or of soil supporting the vegetation;

(b) Changes in or extremes of temperature;

(c) Disease;

(d) Frost or hail; or

(e) Rain, snow, ice or sleet.

b. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

(1) Animals, and then only if they are killed or their destruction is made necessary.

(2) Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

(a) Glass that is part of the exterior or interior of a building or structure;

(b) Containers of property held for sale; or

(c) Photographic or scientific instrument lenses.

c. For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

5. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this policy;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to Paragraph **(3)(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

**Example 1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $ 10,500 |
| Additional Amount | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs d.(1) through d.(7).

**(1)** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in Paragraph (2)(a) or (2)(b);

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage – Collapse does **not** apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

    **(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

    **(b)** The personal property which collapses is inside a building; and

    **(c)** The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage – Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in Paragraphs d.(1) through d.(7).

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

    **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

    **(i)** The portion of the building which you rent, lease or occupy;

    **(ii)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

    **(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

© Insurance Services Office, Inc., 2012

BP 00 03 07 13

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

   **(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

   **(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

   **(i)** Means payroll expenses for all your employees except:

     **i.** Officers;

     **ii.** Executives;

     **iii.** Department Managers;

     **iv.** Employees under contract; and

     **v.** Additional Exemptions shown in the Declarations as:

       • Job Classifications; or

       • Employees.

   **(ii)** Include:

     **i.** Payroll;

     **ii.** Employee benefits, if directly related to payroll;

     **iii.** FICA payments you pay;

     **iv.** Union dues you pay; and

     **v.** Workers' compensation premiums.

**(2) Extended Business Income**

  **(a)** If the necessary suspension of your "operations" produces a Business Income payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    **(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(ii)** Ends on the earlier of:

      **i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

      **ii.** 60 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

    However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

  **(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

  **(a)** The partial slowdown or complete cessation of your business activities; or

  **(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**g. Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

(a) The portion of the building which you rent, lease or occupy;

(b) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

(c) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations":

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue "operations".

(c) To:

(i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

(3) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

     © Insurance Services Office, Inc., 2012     **BP 00 03 07 13**

**i. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

**j. Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

(1) Money orders issued by any post office, express company or bank that are not paid upon presentation; or

(2) "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery Or Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

(4) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

**l. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs (3) through (9) of this Additional Coverage.

(3) The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

(6) The most we will pay under this Additional Coverage, for each described building insured under Section I – Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment Property Loss Condition in Section I – Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

m. **Business Income From Dependent Properties**

(1) We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

(2) We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

(a) Source of materials; or

(b) Outlet for your products.

(3) If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

(4) Dependent property means property owned by others whom you depend on to:

(a) Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

(b) Accept your products or services;

(c) Manufacture your products for delivery to your customers under contract for sale; or

(d) Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

(5) Secondary dependent property means an entity which is not owned or operated by a dependent property and which;

(a) Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

(b) Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

(i) Water supply services;

(ii) Wastewater removal services;

(iii) Communication supply services; or

(iv) Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

(6) The coverage period for Business Income under this Additional Coverage:

(a) Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

(b) Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

(7) The Business Income coverage period, as stated in Paragraph (6), does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down )of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

(8) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

(1) We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

(2) We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

(1) We will pay:

   (a) The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

   (b) For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

(2) No coverage will apply if the fire extinguishing system is discharged during installation or testing.

(3) The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

(1) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

(4) This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**q. Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

© Insurance Services Office, Inc., 2012
BP 00 03 07 13

(2) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

    (a) Coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

    (b) If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

    (c) The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage – Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(4) This Additional Coverage – Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in (3) above has not been exhausted.

(5) Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

 © Insurance Services Office, Inc., 2012

(6) Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs (1) through (4) of this Additional Coverage.

(7) This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

r. **Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

(1) The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

(2) We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

(a) Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

(b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

(c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

(3) The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

**(6)** The following applies only, if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

**(a)** If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

## 6. Coverage Extensions

In addition to the Limits of Insurance of Section I – Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

### a. Newly Acquired Or Constructed Property

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at premises other than the one described, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

**(a)** Business Personal Property, including such property that you newly acquire, at any location you acquire; or

**(b)** Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

### b. Personal Property Off-premises

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. Valuable Papers And Records**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale; and

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit Of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)** Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)** Paragraph **B.** Exclusions in Section I – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.**, Dishonesty;

**(e)** Paragraph **B.2.g.**, False Pretense;

**(f)** Paragraph **B.2.m.(2)**, Errors Or Omissions; and

**(g)** Paragraph **B.3.**

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**(3)** Paragraph B. Exclusions in Section I – Property does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.**, Governmental Action;

**(b)** Paragraph **B.1.d.**, Nuclear Hazard;

**(c)** Paragraph **B.1.f.**, War And Military Action;

**(d)** Paragraph **B.2.f.**, Dishonesty;

**(e)** Paragraph **B.2.g.**, False Pretense;

**(f)** Paragraph **B.3.**; and

**(g)** Paragraph **B.6.**, Accounts Receivable Exclusion.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the buildings or structures described in the Declarations or within 100 feet of the described premises, whichever distance is greater.

**(2)** The limitation under Paragraph **A.4.a.(5)** also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the Business Personal Property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**a. Ordinance Or Law**

**(1)** The enforcement of or compliance with any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or. Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for volcanic action as set forth in **5(a)**, **(5)(b)** and **5(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs (1) through (5), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

(1) The failure, malfunction or inadequacy of:

(a) Any of the following, whether belonging to any insured or to others:

(i) "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

(ii) "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

(iii) "Computer" operating systems and related software;

(iv) "Computer" networks;

(v) Microprocessors ("computer" chips) not part of any "computer" system; or

(vi) Any other computerized or electronic equipment or components; or

(b) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph (a) above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

(2) Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above, results in a "specified cause of loss" under Section I — Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungi", wet rot or dry rot results from fire or lightning; or

(2) To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(2) However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion **i.**

(3) With respect to any loss or damage subject to the exclusion in Paragraph **(1)**, such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(1) Electrical current, including arcing;

(2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(3) Pulse of electromagnetic energy; or

(4) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

(1) An occurrence that took place within 100 feet of the described premises; or

(2) Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

© Insurance Services Office, Inc., 2012
**BP 00 03 07 13**

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph i.(1)(a) or i.(1)(b).

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion i. does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage – Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k. Neglect**

Neglect of an insured to use all reasonable means to use and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section I – Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

© Insurance Services Office, Inc., 2012

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

a. We will not pay for:

(1) Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

(2) Any other consequential loss.

b. With respect to this exclusion, suspension means:

(1) The partial slowdown or complete cessation of your business activities; and

(2) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

a. Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

b. Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

c. Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

1. The most we will pay for loss or damage in any one occurrence is the applicable Limits Of Insurance of Section I – Property shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section I – Property:

a. Fire Department Service Charge;

b. Pollutant Clean-up And Removal;

c. Increased Cost Of Construction;

d. Business Income From Dependent Properties;

e. Electronic Data; and

f. Interruption Of Computer Operations.

**4. Building Limit – Automatic Increase**

a. In accordance with Paragraph **C.4.b.**, the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

    © Insurance Services Office, Inc., 2012

b. The amount of increase is calculated as follows:

   (1) Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date or any other policy change amending the Building limit by:

      (a) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

      (b) .08, if no percentage of annual increase is shown in the Declarations; and

   (2) Multiply the number calculated in accordance with b.(1) by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

   **Example**

   If:

   The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

   The amount of increase is

   $100,000 x .08 x 146 ÷ 365 = $3,200.

5. **Business Personal Property Limit – Seasonal Increase**

   a. Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

      (1) The Business Personal Property – Seasonal Increase percentage shown in the Declarations; or

      (2) 25% if no Business Personal Property – Seasonal Increase percentage is shown in the Declarations;

      to provide for seasonal variances.

   b. The increase described in Paragraph **5.a.** will apply only if the Limit Of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the loss or damage occurs; or

      (2) The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I – Property.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

   a. Money and Securities;

   b. Employee Dishonesty;

   c. Outdoor Signs; and

   d. Forgery or Alteration.

   But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

   a. Fire Department Service Charge;

   b. Business Income;

   c. Extra Expense;

   d. Civil Authority; and

   e. Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

    © Insurance Services Office, Inc., 2012    BP 00 03 07 13

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

   **a.** You must see that the following are done in the event of loss or damage to Covered Property:

     **(1)** Notify the police if a law may have been broken.

     **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

     **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

     **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section I – Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

     **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

     **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

       Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

     **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

     **(8)** Cooperate with us in the investigation or settlement of the claim.

     **(9)** Resume all or part of your "operations" as quickly as possible.

   **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

   **a.** There has been full compliance with all of the terms of this insurance; and

   **b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

5. **Loss Payment**

In the event of loss or damage covered by this policy:

   **a.** At our option, we will either:

     **(1)** Pay the value of lost or damaged property;

     **(2)** Pay the cost of repairing or replacing the lost or damaged property;

     **(3)** Take all or any part of the property at an agreed or appraised value; or

     **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

   **b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

   **c.** We will not pay you more than your financial interest in the Covered Property.

   **d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

     **(1)** At replacement cost without deduction for depreciation, subject to the following:

       **(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

         **(i)** The Limit of Insurance under Section I – Property that applies to the lost or damaged property;

---

**BP 00 03 07 13**                © Insurance Services Office, Inc., 2012                **Page 25 of 53**

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

**i.** Of comparable material and quality; and

**ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property.

**Example**

The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

Amount of recovery

$70,000 ÷ $80,000 = .875

.875 x $25,000 = $21,875

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value – Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or secondhand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts; and

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' improvements and betterments at:

(a) Replacement cost if you make repairs promptly.

(b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

(6) Applicable only to the Optional Coverages:

(a) "Money" at its face value; and

(b) "Securities" at their value at the close of business on the day the loss is discovered.

(7) Applicable only to accounts receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i) We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii) We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to reestablish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section I – Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in Paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## F. Property General Conditions

### 1. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### 2. Mortgageholders

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

### 3. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### 4. Policy Period, Coverage Territory

Under Section I – Property:

a. We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b. The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below:

**1. Outdoor Signs**

a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

   (1) Owned by you; or

   (2) Owned by others but in your care, custody or control.

b. Paragraph **A.3.,** Covered Causes Of Loss and Paragraph **B.,** Exclusions in Section I – Property do not apply to this Optional Coverage, except for:

   (1) Paragraph **B.1.c.,** Governmental Action;

   (2) Paragraph **B.1.d.,** Nuclear Hazard; and

   (3) Paragraph **B.1.f.,** War And Military Action.

c. We will not pay for loss or damage caused by or resulting from:

   (1) Wear and tear;

   (2) Hidden or latent defect;

   (3) Rust;

   (4) Corrosion; or

   (5) Mechanical breakdown.

d. The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Outdoor Signs shown in the Declarations.

e. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

a. We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

   (1) Theft, meaning any act of stealing;

   (2) Disappearance; or

   (3) Destruction.

b. In addition to the Limitations and Exclusions applicable to Section I – Property, we will not pay for loss:

   (1) Resulting from accounting or arithmetical errors or omissions;

   (2) Due to the giving or surrendering of property in any exchange or purchase; or

   (3) Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

c. The most we will pay for loss in any one occurrence is:

   (1) The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

     (a) In or on the described premises; or

     (b) Within a bank or savings institution; and

   (2) The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

d. All loss:

   (1) Caused by one or more persons; or

   (2) Involving a single act or series of related acts;

   is considered one occurrence.

e. You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

a. We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

   (1) Cause you to sustain loss or damage; and also

   (2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

     (a) Any employee; or

     (b) Any other person or organization.

© Insurance Services Office, Inc., 2012   **BP 00 03 07 13**

**b.** We will not pay for loss or damage:

   **(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

   **(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph a.), "managers" or directors:

     **(a)** Whether acting alone or in collusion with other persons; or

     **(b)** While performing services for you or otherwise.

   **(3)** The only proof of which as to its existence or amount is:

     **(a)** An inventory computation; or

     **(b)** A profit and loss computation.

   **(4)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

   **(1)** Caused by one or more persons; or

   **(2)** Involving a single act or series of acts;

   is considered one occurrence.

**e.** If any loss is covered:

   **(1)** Partly by this insurance; and

   **(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

   the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

   **(1)** You; or

   **(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

   of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

   **(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

   **(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph h. above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

   **(1)** This Optional Coverage as of its effective date; or

   **(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph G.3., employee means:

   **(1)** Any natural person:

     **(a)** While in your service or for 30 days after termination of service;

     **(b)** Who you compensate directly by salary, wages or commissions; and

     **(c)** Who you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

  **(a)** To substitute for a permanent employee, as defined in Paragraph **(1)** above, who is on leave; or

  **(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

## 4. Equipment Breakdown Protection Coverage

**a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

**(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** Damage to any vacuum tube, gas tube, or brush; or

**(4)** The functioning of any safety or protective device.

**b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2)**, Limitations, do not apply to this Optional Coverage.

**c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B. Exclusions** do not apply:

  **(1)** Paragraph **B.2.a.**, Electrical Apparatus;

  **(2)** Paragraph **B.2.d.**, Steam Apparatus; and

  **(3)** Paragraph **B.2.l.(6)**, Mechanical Breakdown.

**d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the **Outdoor Signs Optional Coverage** does not apply.

**e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

**f.** With respect to Additional Coverages **5.f.** Business Income and **5.g.** Extra Expense, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

With respect to the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

**g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

  **1.** "Computer" means:

  **a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production-type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

**(1)** Your last known address; or

**(2)** The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

## H. Property Definitions

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production-type machinery or equipment.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**5.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**6.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**7.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Traveler's checks, register checks and money orders held for sale to the public.

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

  **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

  **(b)** The date when business is resumed at a new permanent location.

**b.** Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

  **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

  **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

  **(1)** The cost of filling sinkholes; or

  **(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

  **(1)** Personal property in the open; or

  **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

  **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

  **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in c.(1) or c.(2) of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2012

**14.** "Valuable papers and records" means inscribed, printed or written:

  **a.** Documents;

  **b.** Manuscripts; and

  **c.** Records;

  including abstracts, books, deeds, drawings, films, maps or mortgages.

  But "valuable papers and records" does not mean "money" or "securities".

## SECTION II – LIABILITY

### A. Coverages

  **1. Business Liability**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Paragraph **D. Liability And Medical Expenses Limits Of Insurance in Section II – Liability**; and

   **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f. Coverage Extension – Supplementary Payments**.

   **b.** This insurance applies:

   **(1)** To "bodily injury" and "property damage" only if:

    **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(c)** Prior to the policy period, no insured listed under Paragraph **C.1. Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

   **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1. Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

**f. Coverage Extension – Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   (a) All expenses we incur.

   (b) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

   (c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

   (d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   (e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   (f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   (g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

   These payments will not reduce the limit of liability.

(2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   (a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   (b) This insurance applies to such liability assumed by the insured;

   (c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   (d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   (e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   (f) The indemnitee:

      (i) Agrees in writing to:

         i. Cooperate with us in the investigation, settlement or defense of the "suit";

         ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         iii. Notify any other insurer whose coverage is available to the indemnitee; and

© Insurance Services Office, Inc., 2012    BP 00 03 07 13

iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(ii) Provides us with written authorization to:

　i. Obtain records and other information related to the "suit"; and

　ii. Conduct and control the defense of the indemnitee in such "suit".

(3) So long as the conditions in Paragraph (2) are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II – Liability**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(a) We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

(b) The conditions set forth above, or the terms of the agreement described in Paragraph (2)(f) above, are no longer met.

## 2. Medical Expenses

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II – Liability**. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## B. Exclusions

### 1. Applicable To Business Liability Coverage

This insurance does not apply to:

#### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

#### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

© Insurance Services Office, Inc., 2012

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by an insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 51 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

    **(b)** The operation of any of the following machinery or equipment:

        **(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

    © Insurance Services Office, Inc., 2012    **BP 00 03 07 13**

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II – Liability.**

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

    © Insurance Services Office, Inc., 2012

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(6) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(7) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(8) Committed by an insured whose business is:

    (a) Advertising, broadcasting, publishing or telecasting;

    (b) Designing or determining content of web sites for others; or

    (c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Paragraph **F. Liability And Medical Expenses Definitions.**

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

(9) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

(10) With respect to any loss, cost or expense arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

(13) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

   © Insurance Services Office, Inc., 2012   BP 00 03 07 13

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** in Section II – Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section II – Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

  **(1)** The "nuclear material":

    **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    **(b)** Has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

  **(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

  **(a)** Any "nuclear reactor";

  **(b)** Any equipment or device designed or used for:

    **(i)** Separating the isotopes of uranium or plutonium;

    **(ii)** Processing or utilizing "spent fuel"; or

    **(iii)** Handling, processing or packaging "waste";

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

  and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property;

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

    © Insurance Services Office, Inc., 2012    BP 00 03 07 13

**(10)** "Waste" means any waste material:

**(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section II – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. The most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this policy:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Separation Of Insureds**

Except with respect to the Limits of Insurance of Section II – Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

  **a.** As if each Named Insured were the only Named Insured; and

  **b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  **b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

  **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

  **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

   **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

   **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **(2)** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

     **(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

     **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

© Insurance Services Office, Inc., 2012
BP 00 03 07 13

**11.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

  **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  **(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

  **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

© Insurance Services Office, Inc., 2012

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

**SECTION III – COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I – PROPERTY AND SECTION II – LIABILITY)**

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

(1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

(a) Seasonal unoccupancy; or

(b) Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

(2) After damage by a Covered Cause of Loss, permanent repairs to the building:

(a) Have not started; and

(b) Have not been contracted for;

within 30 days of initial payment of loss.

(3) The building has:

(a) An outstanding order to vacate;

(b) An outstanding demolition order; or

(c) Been declared unsafe by governmental authority.

(4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

(5) Failure to:

(a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

(b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe and healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section I – Property.

**2.** Business Liability Coverage is excess over:

**a.** Any other insurance that insures for direct physical loss or damage; or

**b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

    **a.** Paid to us prior to the anniversary date; and

    **b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## J. Premium Audit

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

## K. Transfer Of Rights Of Recovery Against Others To Us

**1.** Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

    **a.** Prior to a loss to your Covered Property.

    **b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

        **(1)** Someone insured by this insurance;

        **(2)** A business firm:

            **(a)** Owned or controlled by you; or

            **(b)** That owns or controls you; or

        **(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

## L. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: D52718892

**BUSINESSOWNERS**
**BP 04 04 01 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Coverage | Additional Premium |
|---|---|
| **A. Hired Auto Liability** | $ |
| **B. Non-owned Auto Liability** | $ 59 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

**1. Hired Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**2. Non-owned Auto Liability**

The insurance provided under Paragraph **A.1. Business Liability** in **Section II – Liability** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person.

**B.** For insurance provided by this endorsement only:

**1.** The exclusions under Paragraph **B.1. Applicable To Business Liability Coverage** in **Section II – Liability**, other than Exclusions **a., b., d., f.** and **i.** and the **Nuclear Energy Liability Exclusion,** are deleted and replaced by the following:

**a.** "Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

**(1)** Liability assumed by the insured under an "insured contract"; or

**(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

**b.** "Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured.

**BP 04 04 01 10**                    © Insurance Services Office, Inc., 2009                    **Page 1 of 2**         ☐

2. Paragraph **C. Who Is An Insured** in **Section II – Liability** is replaced by the following:

1. Each of the following is an insured under this endorsement to the extent set forth below:

   a. You;

   b. Any other person using a "hired auto" with your permission;

   c. For a "non-owned auto":

      (1) Any partner or "executive officer" of yours; or

      (2) Any "employee" of yours;

      but only while such "non-owned auto" is being used in your business; and

   d. Any other person or organization, but only for their liability because of acts or omissions of an insured under **a.**, **b.** or **c.** above.

2. None of the following is an insured:

   a. Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

   b. Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

   c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

   d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee; or

   e. Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

C. For the purposes of this endorsement only, Paragraph **H. Other Insurance** in **Section III – Common Policy Conditions** is replaced by the following:

This insurance is excess over any primary insurance covering the "hired auto" or "non-owned auto".

D. The following additional definitions apply:

1. "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

2. "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers" or members of their households.

3. "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

    © Insurance Services Office, Inc., 2009    **BP 04 04 01 10**    □

**BUSINESSOWNERS**
**BP 04 39 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following applies to Section **II** – Liability and supersedes any provision to the contrary:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

(a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(b) The negligent:

(i) Employment;

(ii) Investigation;

(iii) Supervision;

(iv) Reporting to the proper authorities, or failure to so report; or

(v) Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

© ISO Properties, Inc., 2001

POLICY NUMBER: D52718892

**BUSINESSOWNERS**
**BP 04 53 07 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER BACK-UP AND SUMP OVERFLOW

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Premises Number | Covered Property Annual Aggregate Limit Of Insurance | Business Income And Extra Expense Annual Aggregate Limit Of Insurance |
|---|---|---|
| 1-1 | $ 5,000 | $ 5,000 |
| 2-1 | $ 5,000 | $ 5,000 |
| 3-1 | $ 5,000 | $ 5,000 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** We will pay for direct physical loss or damage to Covered Property, covered under Section I – Property, caused by or resulting from:

1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

2. Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph A.2., we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

**B.** The coverage described in Paragraph A. of this endorsement does not apply to loss or damage resulting from:

1. An insured's failure to keep a sump pump or its related equipment in proper working condition;

2. An insured's failure to perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

3. Sump pump failure which is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

**C.** The most we will pay for the coverage provided under this endorsement for all direct physical loss or damage to Covered Property is the Covered Property Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Covered Property Annual Aggregate Limit Of Insurance is indicated in the Schedule of this endorsement.

The applicable Covered Property Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all direct physical loss or damage sustained in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property. If loss payment for the first such occurrence does not exhaust the applicable Limit of Insurance, then the balance of that limit is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

 © Insurance Services Office, Inc., 2012

**D.** The following provisions apply to **Section I – Property** and supersede any provisions to the contrary:

The most we will pay under:

1. Paragraph **A.5.f.** Business Income Additional Coverage for all loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement; and

2. Paragraph **A.5.g.** Extra Expense Additional Coverage for all necessary Extra Expense you incur and that you would not have incurred if there had been no direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement;

is the Business Income And Extra Expense Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Business Income And Extra Expense Annual Aggregate Limit Of Insurance is shown in the Schedule.

The applicable Business Income And Extra Expense Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all loss of Business Income you sustain and Extra Expense you incur in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property as described in Paragraph **A.** of this endorsement. If loss payment during an earlier "period of restoration" in the policy year does not exhaust the applicable Limit of Insurance, then the balance of that limit is available for loss of Business Income you sustain or Extra Expense you incur during a subsequent "period of restoration" beginning in, but not after, that policy year. With respect to a "period of restoration" which begins in one policy year and continues in a subsequent policy year(s), all loss of Business Income you sustain or Extra Expense you incur is deemed to be sustained or incurred in the policy year in which the "period of restoration" began.

**E.** With respect to the coverage provided under this endorsement, the **Water** Exclusion in **Section I – Property** is replaced by the following:

**Water**

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow;

3. Water under the ground surface pressing on, or flowing or seeping through:

   a. Foundations, walls, floors or paved surfaces;

   b. Basements, whether paved or not; or

   c. Doors, windows or other openings; or

4. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **4.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **4.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**F.** For the purposes of this endorsement, the term drain includes a roof drain and related fixtures.

© Insurance Services Office, Inc., 2012

**BP 04 53 07 13**

POLICY NUMBER: D52718892

**BUSINESSOWNERS**
**BP 04 53 07 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER BACK-UP AND SUMP OVERFLOW

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Covered Property Annual Aggregate Limit Of Insurance | Business Income And Extra Expense Annual Aggregate Limit Of Insurance |
|---|---|---|
| 4-1 | $ 5,000 | $ 5,000 |
| 5-1 | $ 5,000 | $ 5,000 |
| | $ | $ |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** We will pay for direct physical loss or damage to Covered Property, covered under Section I – Property, caused by or resulting from:

1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

2. Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

However, with respect to Paragraph A.2., we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

**B.** The coverage described in Paragraph A. of this endorsement does not apply to loss or damage resulting from:

1. An insured's failure to keep a sump pump or its related equipment in proper working condition;

2. An insured's failure to perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions; or

3. Sump pump failure which is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

**C.** The most we will pay for the coverage provided under this endorsement for all direct physical loss or damage to Covered Property is the Covered Property Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Covered Property Annual Aggregate Limit Of Insurance is indicated in the Schedule of this endorsement.

The applicable Covered Property Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all direct physical loss or damage sustained in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property. If loss payment for the first such occurrence does not exhaust the applicable Limit of Insurance, then the balance of that limit is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

© Insurance Services Office, Inc., 2012

**D.** The following provisions apply to **Section I — Property** and supersede any provisions to the contrary:

The most we will pay under:

1. Paragraph **A.5.f.** Business Income Additional Coverage for all loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement; and

2. Paragraph **A.5.g.** Extra Expense Additional Coverage for all necessary Extra Expense you incur and that you would not have incurred if there had been no direct physical loss or damage to Covered Property as described in Paragraph **A.** of this endorsement;

is the Business Income And Extra Expense Annual Aggregate Limit of Insurance. That limit is $5,000 per location, unless a different Business Income And Extra Expense Annual Aggregate Limit Of Insurance is shown in the Schedule.

The applicable Business Income And Extra Expense Annual Aggregate Limit of Insurance is the most we will pay under this endorsement for the total of all loss of Business Income you sustain and Extra Expense you incur in any one policy year, regardless of the number of occurrences that cause or result in loss or damage to Covered Property as described in Paragraph **A.** of this endorsement. If loss payment during an earlier "period of restoration" in the policy year does not exhaust the applicable Limit of Insurance, then the balance of that limit is available for loss of Business Income you sustain or Extra Expense you incur during a subsequent "period of restoration" beginning in, but not after, that policy year. With respect to a "period of restoration" which begins in one policy year and continues in a subsequent policy year(s), all loss of Business Income you sustain or Extra Expense you incur is deemed to be sustained or incurred in the policy year in which the "period of restoration" began.

**E.** With respect to the coverage provided under this endorsement, the **Water** Exclusion in **Section I — Property** is replaced by the following:

**Water**

1. Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

2. Mudslide or mudflow;

3. Water under the ground surface pressing on, or flowing or seeping through:

   a. Foundations, walls, floors or paved surfaces;

   b. Basements, whether paved or not; or

   c. Doors, windows or other openings; or

4. Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.** or **3.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **4.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **4.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**F.** For the purposes of this endorsement, the term drain includes a roof drain and related fixtures.

© Insurance Services Office, Inc., 2012 **BP 04 53 07 13**

**BUSINESSOWNERS**
**BP 05 01 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

   BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

    © ISO Properties, Inc., 2001       □

POLICY NUMBER: D52718892

**BUSINESSOWNERS**
**BP 05 15 01 15**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| **SCHEDULE – PART I** |
| --- |
| **Terrorism Premium (Certified Acts)**    $   68 |
| **Additional information, if any, concerning the terrorism premium:** |

| **SCHEDULE – PART II** |
| --- |
| **Federal share of terrorism losses**   _82_   **% Year: 20**   **18** |
| (Refer to Paragraph **B.** in this endorsement.) |
| |
| **Federal share of terrorism losses**   _81_   **% Year: 20**   **19** |
| (Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**BP 05 15 01 15**        © Insurance Services Office, Inc., 2015        **Page 1 of 2**

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015
BP 05 15 01 15

**BUSINESSOWNERS**
BP 05 17 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – SILICA OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B. Exclusions in Section II – Liability:**

**B. Exclusions**

This insurance does not apply to:

**SILICA OR SILICA-RELATED DUST**

1. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

2. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

3. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

4. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions** in **Section II – Liability:**

1. "Silica" means silicon dioxide, (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2005

BUSINESSOWNERS
BP 15 05 05 14

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Exclusion **B.1.q.** of **Section II – Liability** is replaced by the following:

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)** Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

BP 15 05 05 14                   © Insurance Services Office, Inc., 2013                   Page 1 of 2

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II – Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013
**BP 15 05 05 14**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured UNITED DENTAL CENTERS, LTD; LUCKY DOG LLC | | | Endorsement Number TRIA11C0115 |
|---|---|---|---|
| Policy Symbol HLT | Policy Number D52718892 | Policy Period 04-13-2019 **TO** 04-13-2020 | Effective Date of Endorsement 04-13-2019 |
| Issued By (Name of Insurance Company) PACIFIC EMPLOYERS INSURANCE COMPANY | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

### Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year   , the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year  and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: **$68**.

Authorized Representative

TRIA11c (1/15)        Includes copyrighted material of Insurance Services office, Inc., with its permission.

**BUSINESSOWNERS**
**BP 05 23 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED
# ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

### A. CAP ON CERTIFIED TERRORISM LOSSES

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

### B. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

BP 05 23 01 15                 © Insurance Services Office, Inc., 2015                 Page 1 of 1

**BUSINESSOWNERS PROPERTY ENHANCEMENTS FOR HEALTHCARE INDUSTRY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BUSINESSOWNERS COVERAGE FORM**

**SCHEDULE**

| COVERAGES SUBJECT TO THE BLANKET LIMIT OF INSURANCE | $$50,000 Blanket Limit of Insurance | Page |
|---|---|---|
| ACCOUNTS RECEIVABLE | INCLUDED | 3 |
| ELECTRONIC DATA (OTHER THAN COMPUTER VIRUS) | INCLUDED | 3 |
| FINE ARTS | INCLUDED | 4 |
| FIRE DEPARTMENT SERVICE CHARGE | INCLUDED | 4 |
| FIRE EXTINGUISHER SYSTEMS RECHARGE EXPENSE | INCLUDED | 5 |
| LEASEHOLD INTEREST - BONUS PAYMENTS, PREPAID RENT, SUBLEASE PROFIT, TENANTS' LEASE INTEREST/ | INCLUDED | 5 |
| LEASEHOLD INTEREST - UNDAMAGED TENANTS' IMPROVEMENTS & BETTERMENTS | INCLUDED | 6 |
| OUTDOOR PROPERTY | INCLUDED | 6 |
| PAIR AND SET | INCLUDED | 6 |
| PERSONAL EFFECTS | INCLUDED | 6 |
| VALUABLE PAPERS AND RECORDS | INCLUDED | 7 |

| COVERAGES SUBJECT TO THE APPLICABLE BUILDING OR PERSONAL PROPERTY LIMIT OF INSURANCE OR INCLUDED IN BUSINESS INCOME AND EXTRA EXPENSE | LIMITS OF INSURANCE | Page |
|---|---|---|
| BRANDS AND LABELS | Included in Applicable Personal Property Limit of Insurance | 7 |
| BUSINESS PERSONAL PROPERTY ENHANCEMENTS | Included in Applicable Personal Property Limit of Insurance | 7 |
| ORDINANCE OR LAW – UNDAMAGED PORTION OF BUILDING | Included in Applicable Building Limit of Insurance | 8 |
| ORDINANCE OR LAW – INCREASED PERIOD OF RESTORATION | Included in Business Income And Extra Expense | 8 |
| PRESERVATION OF PROPERTY | Included in Applicable Building or Personal Property Limit of Insurance | 9 |
| TENANTS' BUILDING AND BUSINESS PERSONAL PROPERTY | Included in Applicable Building or Personal Property Limit of Insurance | 9 |

| COVERAGES SUBJECT TO SEPARATE LIMITS OF INSURANCE | LIMITS OF INSURANCE | Page |
|---|---|---|

| | | |
|---|---|---|
| APPURTENANT BUILDINGS AND STRUCTURES | | 10 |
| BUSINESS INCOME FROM DEPENDENT PROPERTY | $50,000 | 10 |
| BUSINESS INCOME EXTENSION FOR WEBSITES | $10,000 | 11 |
| COMPUTER FRAUD AND FUNDS TRANSFER FRAUD | $5,000 | 11 |
| DEBRIS REMOVAL | $25,000 | 13 |
| DEFERRED PAYMENTS | $5,000 | 13 |
| ELECTRONIC DATA RECOVERY COSTS (COMPUTER VIRUS) | $10,000 | 13 |
| EMPLOYEE DISHONESTY | $10,000 | 14 |
| FORGERY OR ALTERATION | $25,000 | 14 |
| HIRED CAR PHYSICAL DAMAGE | $10,000 | 14 |
| IDENTITY THEFT EXPENSE | $15,000 | 16 |
| MOBILE COMMUNICATION PROPERTY | $15,000 | 17 |
| MONEY AND SECURITIES | $5,000 Inside Premises  $5,000 Outside Premises | 18 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY – BUILDINGS | | 18 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY – BUSINESS PERSONAL PROPERTY | $250,000 | 18 |
| NEWLY ACQUIRED OR CONSTRUCTED PROPERTY – BUSINESS INCOME | $100,000 | 19 |
| ORDINANCE OR LAW – DEMOLITION COST | $25,000 | 19 |
| ORDINANCE OR LAW – INCREASED COST OF CONSTRUCTION | $25,000 | 19 |
| OUTDOOR SIGNS | $15,000 | 20 |
| PERSONAL PROPERTY OFF-PREMISES | $15,000 | 21 |
| POLLUTANT CLEAN-UP AND REMOVAL | $10,000 | 21 |
| PRECIOUS METALS | $25,000 | 21 |
| REFRIGERATION BREAKDOWN EXPENSE – VEHICLES | $10,000 | 21 |
| REWARD COVERAGE | $5,000 | 21 |
| TEMPERATURE OR HUMIDITY CHANGE (INCLUDING SPOILAGE) | $25,000 | 22 |
| UNAUTHORIZED BUSINESS CARD USE | $5,000 | 23 |
| UTILITY SERVICES – DIRECT DAMAGE | | 23 |
| UTILITY SERVICES – BUSINESS INCOME AND EXTRA EXPENSE | $25,000 | 24 |

| OTHER ENHANCEMENTS | | Page |
|---|---|---|
| EXTENDED BUSINESS INCOME | 90 DaysDays | 25 |
| GREEN STANDARDS | INCLUDED | 25 |
| ORDINARY PAYROLL | 365 DaysDays | 26 |
| REMOVAL OF INSURANCE-TO-VALUE PROVISION | INCLUDED | 26 |
| OTHER PROVISIONS | | |
| BILLABLE HOURS  (BUSINESS INCOME) | | 27 |
| BUSINESS INCOME AND EXTRA EXPENSE | INCLUDED | 28 |

| EXCLUSIONS | | |
|---|---|---|
| BUSINESS INCOME AND EXTRA EXPENSE SUBLIMIT FOR MEDICAL IMAGING OPERATIONS | $1,000,000 | 28 |

Notwithstanding anything to the contrary, the provisions of the Businessowners Coverage Form apply, except as provided in this endorsement.

In **Section I – Property**, Paragraph **C. Limits Of Insurance**, the following is added:

**$      BLANKET LIMIT OF INSURANCE**

The Blanket Limit Of Insurance shown above applies only to the coverages subject to the Blanket Limit of Insurance shown above. Unless otherwise stated, this Blanket Limit Of Insurance applies separately at each covered premises shown in the Declarations. This Blanket Limit Of Insurance applies in excess of the applicable deductible shown in the Declarations.

At the time of loss, the first Named Insured may elect to apportion this Blanket Limit Of Insurance to one or any combination of the coverages subject to the Blanket Limit of Insurance, but under no circumstances will the aggregate apportionment be permitted to exceed the Blanket Limit Of Insurance shown above at any one covered premises.  For purposes of the application of this $      Blanket Limit Of Insurance, all property at one premises shall constitute a single premises.

A separate, specific Limit Of Insurance may be purchased for each of these coverages subject to the Blanket Limit of Insurance. If purchased, these Limits Of Insurance and any applicable deductible will be shown in the Declarations with the applicable Blanket Limit of Insurance. If no deductible is shown in the Declarations with a coverage subject to the Blanket Limit of Insurance, then the Property Deductible will apply. When a separate, specific Limit Of Insurance is purchased for any of these coverages subject to the Blanket Limit of Insurance, such specific Limit Of Insurance will apply in addition to whatever amount the First Named Insured apportions to that coverage at time of loss as provided in the previous paragraphs.

**COVERAGES SUBJECT TO THE BLANKET LIMIT OF INSURANCE**

**A.  Accounts Receivable**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions, f. Accounts Receivable**, subparagraph **(2)** is deleted and replaced with the following:

The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is the applicable Limit Of Insurance for Accounts Receivable shown in the Schedule of this endorsement.

**B.  Electronic Data (Other Than Computer Virus)**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages, p. Electronic Data** is deleted and replaced with the following:

1.  Subject to the provisions of this Electronic Data (Other Than Computer Virus) Additional Coverage, we will pay for the cost to replace or restore "electronic data" that has been lost or damaged by a Covered Cause of Loss.

2.  The Covered Cause of Loss applicable to this Additional Coverage does not include "computer virus".

3.  Under Paragraph **H. Property Definitions**, and only with respect to this Additional Coverage, the following definitions are added:

"Computer system" means a computer and all input, output, processing, storage, off-line media library, and communication facilities which are connected to such computer, provided such computer and facilities are:

    **a.** Owned and operated by you;

    **b.** Leased and operated by you; or

    **c.** Utilized by you pursuant to a written contract.

    "Computer virus" means a computer virus, harmful code or similar instruction introduced into or enacted on a "computer system" (including "electronic data"), or a network to which it is connected, designed to damage or destroy any part of the "computer system" or disrupt its normal operation.

**4.** The most we will pay under this Additional Coverage in any one occurrence at the described premises is the applicable Limit Of Insurance for Electronic Data (Other Than Computer Virus) shown in the Schedule of this endorsement.

## C. Fine Arts

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

**1.** We will pay for direct physical loss or damage to "fine arts", whether owned by you or owned by others and in your care, custody or control caused by or resulting from a Covered Cause Of Loss. Our payment for loss or damage to "fine arts" of others will only be for the account of the owner of the "fine arts."

**2.** For the purposes of this Additional Coverage, "fine arts" means paintings, rare books, sculptures, manuscripts, pictures, prints, etchings, drawings, tapestries, bronzes, statuary, potteries, porcelains, marbles, and other bona fide works of art or items of rarity or historical value.

**3.** Under **E. Property Loss Conditions**, and only with respect to this Additional Coverage, Paragraph **5. Loss Payment**, subparagraphs **d. (3) (d)** and **(e)** are deleted and replaced with the following:

    **a.** "Fine arts" will be valued at the lesser of the following:

        **(1)** The cost of reasonably restoring the "fine arts" to its condition immediately before loss; or

        **(2)** The cost of replacing the "fine arts" with substantially identical "fine arts".

    **b.** In case of loss to any part of a pair or set, we will:

        **(1)** Repair or replace any part to restore the pair or set to its value before the loss; or

        **(2)** Pay the difference between the value of the pair or set before and after the loss.

    **c.** You must arrange for "fine arts" to be packed and unpacked by competent packers.

**4.** In **Section I – Property**, Paragraph **A. Coverage, 2. Property Not Covered**, the following is added:

    **a.** "Fine arts," except as provided under the Fine Arts Additional Coverage.

**5.** The most we will pay under this Additional Coverage for loss or damage in any one occurrence at the described premises is the applicable Limit Of Insurance for Fine Arts shown in the Schedule of this endorsement.

## D. Fire Department Service Charge

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages, c. Fire Department Service Charge** is deleted and replaced with the following:

**1.** When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for the charges you:

    **a.** Assume under any contract or agreement; or

    **b.** Are required to pay by local ordinance,

in effect at the time of the direct physical loss or damage.

2. The most we will pay under this Additional Coverage in any one occurrence at the described premises is the applicable Limit Of Insurance for Fire Department Service Charge shown in the Schedule of this endorsement, regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

**E. Fire Extinguisher Systems Recharge Expense**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, subparagraph **o. Fire Extinguisher Systems Recharge Expense** is deleted and replaced with the following:

1. We will pay the cost you incur to refill or replace your discharged fire protection equipment, whichever is less, whether or not there is direct physical loss or damage to Covered Property.

2. No deductible applies to this Additional Coverage.

3. The most we will pay under this Additional Coverage is the applicable Limit Of Insurance for Fire Extinguisher Systems Recharge Expense shown in the Schedule of this endorsement.

**F. Leasehold Interest – Bonus Payments, Prepaid Rent, Sublease Profit, Tenants' Lease Interest**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1. We will pay for the "bonus payment", "prepaid rent", "sublease profit" or "tenants' lease interest" loss you incur, directly resulting from the cancellation of your written lease for the premises described in the Declarations. Cancellation of the lease must be by the lessor, by a valid condition of your lease, and due to direct physical loss or damage to a building at the premises described in the Declarations, caused by or resulting from a Covered Cause of Loss.

2. The most we will pay under this Additional Coverage in any one occurrence at the described premises is the applicable Limit Of Insurance for Leasehold Interest - Bonus Payments, Prepaid Rent, Sublease Profit, and Tenants' Lease Interest shown in the Schedule of this endorsement.

3. Under Paragraph **H. Property Definitions**, and only with respect to this Additional Coverage, the following definitions are added:

   a. "Bonus payment" means that portion of any cash bonus you paid based on the percentage of your lease remaining at the time of direct physical loss or damage. It does not mean rent, securities or cash bonuses refunded to you, even if you prepaid the rent or security.

   b. "Prepaid rent" means that portion of any prepaid rent you paid based on the percentage of your lease remaining at the time of direct physical loss or damage. It does not mean the customary rent due at the beginning of any rental period.

   c. "Sublease profit" means the net profit you earn through subleasing the building or portion of the building that you rent for the unexpired term of the canceled lease or sublease, whichever would expire first. This amount is discounted based on the prime rate of interest at the time of direct physical loss or damage for the unexpired term of the canceled lease or sublease.

   d. "Tenants' lease Interest" means:

      (1) The difference between the appraised rental value of the leased premises at the time of direct physical loss or damage for the unexpired term of the lease and the actual rent due for the same period, discounted by the prime rate of interest at the time of direct physical loss or damage, for the unexpired term of the canceled lease; or

      (2) The difference between the rent due for the unexpired term of the canceled lease and the rent due under the new lease for that same time period, not to exceed the difference between the actual rent due for the unexpired term of the canceled lease and the appraised rental value of the leased premises for that same period. This difference is discounted by the prime rate of interest at the time of direct physical loss or damage for the unexpired term of the canceled lease.

**G. Leasehold Interest – Undamaged Tenants' Improvements and Betterments**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1.  We will pay for the value of undamaged "tenants' improvements and betterments" when your lease is cancelled:

    a.  By the lessor;

    b.  By a valid condition of your lease; and

    c.  Due to direct physical loss or damage to a building or business personal property at the premises described in the Declarations, caused by or resulting from a Covered Cause of Loss.

2.  The most we will pay under this Additional Coverage in any one occurrence at the described premises is the applicable Limit Of Insurance for Leasehold Interest – Undamaged Tenants' Improvements and Betterments shown in the Schedule of this endorsement.

3.  Under Paragraph **H. Property Definitions**, and only with respect to this Additional Coverage, the following definition is added:

    "Tenants' improvements and betterments" means fixtures, alterations, installations or additions:

    a.  Made a part of a building you occupy but do not own; and

    b.  You acquired or made at your expense but cannot legally remove.

    "Tenants' improvements and betterments" does not mean land, water or air, either inside or outside of a structure; paved or concrete surfaces; retaining walls; foundations or supports below the surface of the lowest floor or basement; outdoor trees, shrubs, plants or lawns; or growing crops.

**H. Outdoor Property**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions, c. Outdoor Property**:

1.  The following sentence is deleted:

    *The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.*

2.  The following sentence is added:

    *The most we will pay under this Coverage Extension for loss or damage in any one occurrence is the applicable Limit Of Insurance for Outdoor Property shown in the Schedule of this endorsement, but not more than $2,500 for any one tree, shrub or plant.*

**I. Pair And Set**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions**, the following is added:

1.  You may extend the insurance that applies to Business Personal Property to apply to consequential loss to your undamaged Business Personal Property, which is part of your product or any product in your care, custody or control, that has become unmarketable as a complete product because of covered direct physical loss or damage to Business Personal Property which is part of the same product.

2.  The most we will pay under this Coverage Extension in any one occurrence at the described premises is the applicable Limit Of Insurance for Pair And Set shown in the Schedule of this endorsement.

**J. Personal Effects**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions**, paragraph **d. Personal Effects** is deleted and replaced with the following:

1.  You may extend the insurance that applies to Business Personal Property to apply to personal effects:

    **a.** Owned by you; or

    **b.** Owned or leased by your officers, partners, "members", "managers" or employees and in your care, custody or control.

  **2.** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is the applicable Limit Of Insurance for Personal Effects shown in the Schedule of this endorsement.

**K.  Valuable Papers And Records**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions, e. Valuable Papers And Records**, subparagraph **(3)** is deleted and replaced with the following:

The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is the applicable Limit Of Insurance for Valuable Papers and Records shown in the Schedule of this endorsement.

**I.  COVERAGES SUBJECT TO THE APPLICABLE BUILDING OR PERSONAL PROPERTY LIMIT OF INSURANCE OR INCLUDED IN BUSINESS INCOME AND EXTRA EXPENSE**

**A.  Brands And Labels**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions**, the following is added:

  **1.** If this policy insures "stock", which is branded or labeled merchandise held in storage or for sale, and such merchandise suffers covered direct physical loss or damage, you may extend that insurance to apply to the cost to:

    **a.** Remove the brand or label and then relabel the lost or damaged merchandise to comply with the law; or

    **b.** Label the lost or damaged merchandise as "salvage", but, in doing so, cause no further damage to the merchandise.

  **2.** This Coverage Extension is subject to the applicable Limit Of Insurance for Business Personal Property shown in the Declarations.

**B.  Business Personal Property Enhancements**

In **Section I – Property**, Paragraph **A. Coverage, 1. Covered Property**, subparagraph **b.** is deleted and replaced with the following:

  **1.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 1,000 feet of the premises described in the Declarations, including:

  **2.** In **Section I – Property**, Paragraph **A. Coverage, 1. Covered Property**, the following are added under subparagraph **b:**

    **a.** Glass in buildings you do not own, if you are legally or contractually required to maintain such glass; and

    **b.** Business personal property temporarily in portable storage units.

  **3.** In **Section I – Property**, Paragraph **E. Property Loss Conditions, 5. Loss Payment**, subparagraph **d.(3)(b)** is deleted.

  **4.** In **Section I – Property**, Paragraph **E. Property Loss Conditions**, the following is added:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

## C. Ordinance Or Law – Undamaged Portion Of Building

In **Section I – Property**, Paragraph **A. Coverage**, **5. Additional Coverages**, the following is added:

1. With respect to a building that has sustained covered direct physical loss or damage, we will pay for the loss in value of the undamaged portion of the building, if an "ordinance or law" requires the demolition of undamaged parts of that building.

2. When there is a loss in value of an undamaged portion of a building to which this Additional Coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

    a. If the property is repaired or replaced on the same or another premises, we will not pay more than the lesser of the following:

        (1) The amount you actually spend to repair, rebuild or reconstruct the building, but not more than the amount it would cost to repair, rebuild or reconstruct the building on the same premises and to the same height, floor area, style and comparable quality of the lost or damaged building; or

        (2) The Limit Of Insurance shown in the Declarations applicable to the lost or damaged building.

    b. If the building is not repaired or replaced, we will not pay more than the lesser of the following:

        (1) the actual cash value of the building at the time of loss; or

        (2) The Limit Of Insurance shown in the Declarations applicable to the lost or damaged building.

3. This Additional Coverage is included in the applicable Building Limit Of Insurance shown in the Declarations.

4. This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

5. Under Paragraph **H. Definitions**, and for the purposes of this Additional Coverage, the following definition is added:

    a. "Ordinance or law" means an ordinance or law that regulates the demolition, construction or repair of buildings and establishes zoning or land use requirements applicable to the described premises, provided such ordinance or law is in effect at the time of loss or damage.

    b. "Ordinance or law" does not include any ordinance or law that requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or activity of "fungi", wet rot or dry rot, or the costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

## D. Ordinance Or Law – Increased Period Of Restoration

In **Section I – Property**, Paragraph **A. Coverage**, **5. Additional Coverages**, the following is added:

1. If a Covered Cause of Loss occurs to a building at the premises described in the Declarations and the building is subject to an "ordinance or law", then the definition of "Period Of Restoration" under paragraph **H., Definitions** is deleted and replaced by the following:

    a. "Period of restoration" means the period of time that:

        (1) Begins:

            (a) 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises, unless a lesser number of hours is shown in the Declarations; or

      **(b)** Immediately after the time of the covered direct physical loss or damage for Extra Expense Coverage; and

   **(2)** Ends on the earlier of:

      **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(b)** The date when business is resumed at a new permanent location.

  **b.** "Period of restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of an "ordinance or law".

  **c.** The expiration date of this policy will not cut short the "period of restoration".

 **2.** Under Paragraph **H. Definitions**, and for the purposes of this Additional Coverage, the following definition is added:

  **a.** "Ordinance or law" means an ordinance or law that regulates the demolition, construction or repair of buildings and establishes zoning or land use requirements applicable to the described premises, provided such ordinance or law is in effect at the time of loss or damage.

  **b.** "Ordinance or law" does not include any ordinance or law that requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or activity of "fungi", wet rot or dry rot, or the costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

 **3.** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

**E. Preservation Of Property**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages, b. Preservation of Property** is deleted and replaced with the following:

 **1.** If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

  **a.** While it is being moved or while temporarily stored at another location; and

  **b.** Only if the loss or damage occurs within 45 days after the property is first moved.

**F. Tenants' Building And Business Personal Property**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

 **1.** We will pay for direct physical loss or damage to Building or Business Personal Property for which you have a contractual responsibility to insure as a tenant. This includes buildings, fixtures, machinery and equipment.

 **2.** The most we will pay under this Additional Coverage for loss or damage in any one occurrence at the described premises is the Limit Of Insurance for Tenants' Building and Business Personal Property shown in the Schedule of this endorsement.

**II.   COVERAGES SUBJECT TO SEPARATE LIMITS OF INSURANCE**

**A. Appurtenant Buildings And Structures**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions**, the following is added:

 **1.** You may extend the insurance that applies to Buildings to apply to incidental appurtenant buildings or

structures located within 1,000 feet of the described premises.

2. You may extend the insurance that applies to Business Personal Property to apply to business personal property contained within incidental appurtenant buildings or structures that are located within 1,000 feet of the described premises.

3. For the purposes of this Coverage Extension, incidental appurtenant buildings or structures mean storage buildings, carports, garages, pump houses or above-ground tanks which have not been specifically described in the Declarations.

4. The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is the applicable Limit Of Insurance for Appurtenant Buildings & Structures shown in the Schedule of this endorsement, regardless of the number of described premises involved.

**B. Business Income From Dependent Property**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages, m. Business Income From Dependent Properties**, subparagraph **(1)** is deleted and replaced with the following:

1. We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause Of Loss.

2. However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, insurance under this Additional Coverage ends once the other property is repaired, rebuilt or replaced.

3. The most we will pay under this Additional Coverage is the applicable Limit Of Insurance for Business Income From Dependent Property shown in the Schedule of this endorsement.

4. In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages, m. Business Income From Dependent Properties**, subparagraph **(4)** is deleted and replaced with the following:

    Dependent property means property owned by others whom you depend on to:

    a. Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

    b. Accept your products or services;

    c. Manufacture your products for delivery to your customers under contract for sale; or

    d. Attract customers to your business.

    The dependent property may be located anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

5. This Additional Coverage does not apply to property at the premises of a vendor that provides you with "on-line access" services.

6. Under Paragraph **H. Property Definitions**, the following definition is added:

    "On-line access" means:

    a. Accessing information made available by third parties; or

    b. Making information available to third parties,

    via computer or other electronic system.

**C. Business Income Extension For Websites**

In **Section I - Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1. We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by covered direct physical loss or damage to property at the premises of a vendor that provides you with "on-line access" services. The premises of the vendor may be located anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

2. The most we will pay under this Additional Coverage in any one occurrence at the described premises is the applicable Limit Of Insurance for Business Income Extension For Websites shown in the Schedule of this endorsement.

3. This Additional Coverage applies only if you regularly back-up software, data, or other information in electronic form at a location other than the site of the website vendor.

4. Under Paragraph **H. Property Definitions**, and only with respect to this Additional Coverage, the definition of "period of restoration" is deleted and replaced with the following:

   "Period of restoration" means the period of time that begins 12 hours after the time of direct physical loss or damage and ends the earlier of:

   a. The date when the property at the premises of a vendor that provides you with "on-line access" services is repaired or replaced with reasonable speed and similar quality; or

   b. Seven days following the date of the covered direct physical loss or damage.

5. Under Paragraph **H. Property Definitions**, the following definition is added:

   "On-line access" means:

   a. Accessing information made available by third parties; or

   b. Making information available to third parties,

   via computer or other electronic system.

**D. Computer Fraud And Funds Transfer Fraud**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1. We will pay for:

   a. Loss of or damage to "money", "securities" and "other property" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the described premises, bank or savings institution:

      **(1)** To a person (other than a messenger) outside those premises; or

      **(2)** To a place outside those premises; and

   b. Loss of "money" or "securities" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "money" and "securities" from your "transfer account".

2. The most we will pay under this Additional Coverage is the applicable Limit Of Insurance for Computer Fraud And Funds Transfer Fraud shown in the Schedule of this endorsement.

3. In **Section I – Property**, Paragraph **B. Exclusions**, paragraph **2.g. False Pretense** is deleted and replaced with the following:

   We will not pay for loss or damage caused by or resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

4. In Section **I - Property**, Paragraph **A. Coverage, 4. Limitations**, and only with respect to this Additional Coverage, subparagraph **a. (4)** does not apply.

5. Under Paragraph **H. Property Definitions**, and only with respect to this Additional Coverage, the following definitions are added:

"Employee" means:

a. Any natural person:

   **(1)** While in your service or for 30 days after termination of service;

   **(2)** Who you compensate directly by salary, wages or commissions; and

   **(3)** Who you have the right to direct and control while performing services for you;

b. Any natural person who is furnished temporarily to you:

   **(1)** To substitute for a permanent "employee", as defined in Paragraph **(a)** above, who is on leave; or

   **(2)** To meet seasonal or short-term work load conditions,

   while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the premises;

c. Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(b)** above;

d. Any natural person who is:

   **(1)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan(s)" insured under this policy; and

   **(2)** Your director or trustee while that person is handling "funds" or "other property" of any "employee benefit plan(s)" insured under this policy;

e. Any natural person who is a former "employee", director, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you; or

f. Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the premises.

"Employee" does not mean:

a. Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

b. Any "manager", director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

"Fraudulent instruction" means:

a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

b. A written instruction (other than those described in the Forgery Or Alteration Additional Coverage of the Businessowners Coverage Form) issued by you, which was forged or altered by someone other than you without your knowledge or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

    **c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

"Other property" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property excluded under this policy.

"Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities" by means of:

    **a.** Electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

    **b.** Written instructions (other than those described in the Forgery Or Alteration Additional Coverage of the Businessowners Coverage Form) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

## E. Debris Removal

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages, a. Debris Removal**, subparagraphs **(3), (4) and (5)** are deleted and replaced with the following:

The most that we will pay under this Additional Coverage in any one occurrence at the described premises is the applicable Limit Of Insurance for Debris Removal shown in the Schedule of this endorsement.

## F. Deferred Payments

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions**, the following is added:

**1.** You may extend this insurance to apply to your interest in Business Personal Property that suffers direct physical loss or damage caused by or resulting from a Covered Cause Of Loss and sold by you under a conditional sale or trust agreement or any installment or deferred payment plan:

    **a.** While in transit to buyers; or

    **b.** After delivery to buyers.

**2.** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is the applicable Limit Of Insurance for Deferred Payments shown in the Schedule of this endorsement.

**3.** This Coverage Extension does not apply to default by the buyer of such agreement or plan.

## G. Electronic Data Recovery Costs (Computer Virus)

In **Section I – Property**, Paragraph **A. Coverage, 5 Additional Coverages**, the following is added:

**1.** We will pay for "electronic data recovery costs" as a result of direct physical loss or damage to "electronic data" or a "computer system" caused by or resulting from "computer virus".

**2.** Under Paragraph **H. Property Definitions**, and only with respect to this Additional Coverage, the following definitions are added:

"Electronic data recovery costs" means the reasonable and necessary costs you incur to:

    **a.** Copy, recreate, replace or retrieve "electronic data" you own or use, or which resides on a system you own or lease; and

    **b.** Restore a system you own or lease to the functionality that existed prior to the "computer virus".

"Computer system" means a computer and all input, output, processing, storage, off-line media library, and communication facilities which are connected to such computer, provided such computer and facilities are:

    **a.** Owned and operated by you;

    **b.** Leased and operated by you; or

    **c.** Utilized by you pursuant to a written contract.

"Computer virus" means a computer virus, harmful code or similar instruction introduced into or enacted on a "computer system" (including "electronic data"), or a network to which it is connected, designed to damage or destroy any part of the "computer system" or disrupt its normal operation.

**3.** The most we will pay under this Additional Coverage at all premises for the sum of such "electronic data recovery costs" that occur during each separate 12-month policy period is the Limit Of Insurance for Electronic Data Recovery Costs (Computer Virus) shown in the Schedule of this endorsement.

## H. Employee Dishonesty

In **Section I – Property**, Paragraph **G. Optional Coverages**, **3. Employee Dishonesty**, subparagraph **c.** is deleted and replaced with the following:

The most we will pay under this Optional Coverage in any one occurrence at the described premises is the applicable Limit Of Insurance for Employee Dishonesty shown in the Schedule of this endorsement.

## I. Forgery Or Alteration

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, **k. Forgery Or Alteration**, subparagraph (4) is deleted and replaced with the following:

The most we will pay under this Additional Coverage for any loss, including legal expenses, in any one occurrence at the described premises is the applicable Limit Of Insurance for Forgery Or Alteration shown in the Schedule of this endorsement.

## J. Hired Car Physical Damage

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

**1.** We will pay for direct physical loss or damage caused by or resulting from a Covered Cause of Loss to a "car" that:

    **a.** you lease, hire, rent or borrow; or

    **b.** is leased, hired or rented by your employee pursuant to a contract in which such employee is a party, with your written permission, while performing duties related to the conduct of your business.

**2.** We will also pay for damages you are legally obligated to pay for loss of use of a covered leased, hired, or rented "car" if:

    **a.** it results from a Covered Cause Of Loss; and

    **b.** the lessor sustains an actual financial loss.

**3.** We will not pay for loss or damage:

    **a.** to any "car" while used in professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for loss or damage to any "car" while that "car" is being prepared for such a contest or activity.

    **b.** caused by or resulting from:

        **(1)** wear and tear, freezing, mechanical or electrical breakdown; or

        **(2)** blowouts, punctures or other road damage.

    **c.** to any of the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission, 2016

      **(1)** tapes, records, discs, or other similar audiovisual or other electronic devices designed for use with audiovisual or other electronic equipment; or

      **(2)** any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measuring equipment.

   **d.** to any "car" hired or borrowed from any of your employees, partners (if you are a partnership), "members" (if you are a limited liability company), volunteers, or any member of any of the foregoing's household.

   **e.** to a chauffeured vehicle, which is a leased, hired, rented or borrowed "car" operated by a third party driver; or

   **f.** to a "car" that is leased for a period of more than six months.

**4.** We will not pay for loss or damage until it exceeds the Hired Car Physical Damage deductible amount of $1,000. For a "car" to which this Additional Coverage applies, our obligation to pay for, repair, return, or replace the damaged or stolen "car" will be reduced by this Hired Car Physical Damage deductible.

**5.** The most we will pay under this Additional Coverage is the lesser of the following:

   **a.** The actual cash value at the time of loss or damage;

   **b.** The cost of repairing or replacing the "car" with another one of like kind and quality; or

   **c.** The applicable Limit Of Insurance for Hired Car Physical Damage shown in the Schedule of this endorsement.

At our option, we may:

   **a.** Pay to repair or replace the "car";

   **b.** Return the "car" at our expense; or

   **c.** Take all or any part of the "car" at an agreed or appraised value.

If we pay for the loss, our payment will include the applicable sales tax for the damaged or stolen "car."

**6.** In **Section I – Property**, Paragraph **E. Property Loss Conditions**, and only with respect to this Additional Coverage, paragraphs **2. Appraisal** and **3. Duties In The Event Of Loss or Damage** are deleted and the following are added:

   **a.** If you and we disagree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and bear the other expenses of the appraisal and umpire equally. If we submit to an appraisal, we still retain our right to deny the claim.

   **b.** In the event of loss or damage to a hired "car," you must do the following:

      **(1)** Promptly notify the police if all or any part of or the "car" is stolen or inexplicably missing;

      **(2)** Take all reasonable steps to protect the "car" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim;

      **(3)** Permit us to inspect the "car" and records proving the loss or damage before it's repair or disposition; and

**(4)** Agree to examination under oath at our request and give us a signed statement of your answers.

7. In **Section III – Common Policy Conditions**, Paragraph **H. Other Insurance**, and only with respect to this Additional Coverage, Paragraph **H. Other Insurance** is deleted and the following is added:

The insurance provided under this Additional Coverage is intended to be primary insurance. If you have other insurance in the name of your business that provides Hired Car Physical Damage coverage on a primary basis, this coverage will contribute with that other insurance on a pro-rata basis.

8. Under Paragraph **F. Property General Conditions**, and only with respect to this Additional Coverage, subparagraph **3. No Benefit To Bailee** is deleted and replaced with the following:

We will not recognize any assignment or provide any insurance for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

9. Under Paragraph **H. Definitions**, and only with respect to this Additional Coverage, the following definition is added:

"Car" means a private passenger vehicle or truck with a gross vehicle weight of 20,000 lbs. or less. "Car" includes a trailer with a load capacity of 2,000 lbs. or less and permanently attached.

10. Under **Section I – Property**, Paragraph **A. Coverage, 2. Property Not Covered**, subparagraph **a.** is deleted and replaced with the following:

Aircraft, automobiles, motor trucks and other vehicles subject to motor vehicle registration, except as provided in the Hired Car Physical Damage Additional Coverage.

## K. Identity Theft Expense

In **Section I – Property, Paragraph A. Coverage, 5. Additional Coverages**, the following is added:

1. We will pay for "expenses" you incur as a direct result of any one "identity theft" that is first discovered by you during the policy period. Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others, against you is considered to be one "identity theft," even if a series of acts continues into a subsequent policy period.

2. We will not pay for:

   **a.** Expenses incurred due to any fraudulent, dishonest or criminal act by any insured, any person aiding or abetting any insured, or any authorized representative or agent of any insured, whether acting alone or in collusion with others;

   **b.** Expenses incurred that are not related to the identity of an individual; or

   **c.** Loss other than "expenses."

3. This Additional Coverage does not apply to any expenses otherwise covered under the Unauthorized Business Card Use Additional Coverage.

4. We will not pay for incurred "expenses" until the covered "expenses" for any one "identity theft" exceed a deductible of $250. Our obligation to pay for covered "expenses" will be reduced by this "Identity Theft" deductible.

5. The most we will pay under this Additional Coverage for the sum of all covered "expenses" arising out of all "identity theft" against you discovered during each separate 12 month policy period is the applicable Limit Of Insurance for Identity Theft Expense shown in the Schedule of this endorsement.

6. In the event covered "expenses" are incurred by you, within 60 days after our request, you must send us receipts, bills or other records that support your claim for "expenses" under this Additional Coverage.

7. Under Paragraph **H. Property Definitions**, and only with respect to this Additional Coverage, the following definitions are added:

"Expenses" mean:

a. Costs for notarizing affidavits or similar documents attesting to fraud, required by financial institutions or similar credit grantors or credit agencies;

b. Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

c. Lost income resulting from time taken off work to:

   (1) Complete fraud affidavits;

   (2) Meet with or talk to law enforcement agencies, credit agencies or legal counsel up to a total payment of $5,000, subject to a maximum of $200 per day.

d. Loan application fees for reapplying for a loan when the original application is rejected solely because the lender received incorrect credit information; and

e. Reasonable attorneys' fees to:

   (1) Defend lawsuits brought against an Insured by merchants, financial institutions or collection agencies;

   (2) Remove any criminal or civil judgments wrongly entered against an insured; or

   (3) Challenge the accuracy or completeness of any information in a consumer credit report; or

f. Reasonable fees for professional financial advice or professional credit advice.

"Identity theft" means the act of knowingly transferring or using, without lawful authority, a means of identification of an Insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

## L. Mobile Communication Property

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1. We will pay for direct physical loss or damage to "mobile communication property" caused by or resulting from a Covered Cause of Loss.

2. The "mobile communication property" may be located anywhere in the world, except to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

3. This Additional Coverage does not apply to "mobile communication property" at, or within 1,000 feet of, the premises described in the Declarations.

4. We will not pay for loss or damage under this Additional Coverage unless the amount exceeds the Mobile Communication Deductible amount of $2,500 in any one occurrence or the Mobile Communication Deductible amount shown in the Declarations, whichever is greater.

5. The most we will pay under this Additional Coverage for loss or damage in any one occurrence is the Limit Of Insurance for Mobile Communication Property shown in the Schedule of this endorsement.

6. In **Section I – Property**, Paragraph **H. Definitions**, and only with respect to this Additional Coverage, the following definition is added:

"Mobile communication property" means cellular telephones, laptop computers, pagers, personal digital assistants, mobile hand held global positioning systems and other hand held communication devices.

**M. Money And Securities**

In **Section I – Property**, Paragraph **G. Optional Coverages, 2. Money And Securities**, subparagraph **c.** is deleted and replaced with the following:

1. The most we will pay under this Optional Coverage in any one occurrence for loss of or damage to "money" and "securities" while:

   a. In or on the described premises; or

   b. Within a bank or savings institution,

   is the applicable Limit Of Insurance for Money And Securities - Inside The Premises shown in the Schedule of this endorsement.

2. The most we will pay under this Optional Coverage in any one occurrence for loss or damage to "money" and "securities" while located anywhere within the Coverage Territory, other than paragraph (1) above, is the Limit Of Insurance for Money And Securities - Outside The Premises shown in the Schedule of this endorsement.

3. Under **Section I – Property**, Paragraph **B. Exclusions**, and only with respect to this Optional Coverage, the following exclusion is added:

   We will not pay for loss or damage to "money" and "securities" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the described premises, bank or savings institution to a:

   a. Person (other than a messenger); or

   b. Place,

   outside those premises.

**N. Newly Acquired Or Constructed Property – Buildings**

1. In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, subparagraph **(1) Buildings**, the last sentence is deleted and replaced with the following:

   The most we will pay under this Coverage Extension for loss or damage in any one occurrence is the applicable Limit Of Insurance for Newly Acquired Or Constructed Property – Buildings shown in the Schedule of this endorsement.

2. In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, subparagraph **(3)(b)** of **Period of Coverage** is deleted and replaced with the following:

   "180 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property".

**O. Newly Acquired Or Constructed Property – Business Personal Property**

1. In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, the last paragraph of subparagraph **(2) Business Personal Property** is deleted and replaced with the following:

   The most we will pay under this Coverage Extension for loss or damage in any one occurrence is the applicable Limit Of Insurance for Newly Acquired Or Constructed Property – Business Personal Property shown in the Schedule of this endorsement.

2. Under **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions, a. Newly Acquired or Constructed Property**, subparagraph **(3)(b)** of **Period of Coverage** is deleted and replaced with the following:

"180 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property".

**P. Newly Acquired Or Constructed Property – Business Income**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions**, the following is added:

1. You may extend your business income coverage to apply to property at any location you acquire.

2. Insurance under this Coverage Extension for each newly acquired location will end when any of the following first occurs:

   a. This policy expires;

   b. 180 days expire after you acquire the location; or

   c. You report the values to us.

3. We will charge you additional premium for values reported from the date you acquire the property.

4. The most we will pay under this Coverage Extension for loss of Business Income in any one occurrence is the Limit Of Insurance for Newly Acquired Or Constructed Property – Business Income shown in the Schedule of this endorsement.

**Q. Ordinance Or Law – Demolition Cost**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1. With respect to a building that has sustained covered direct physical loss or damage, we will pay for the cost to demolish and clear the site of the undamaged parts of the same building, if an "ordinance or law" requires the demolition of such undamaged property.

2. The most we will pay under this Additional Coverage is the Limit Of Insurance for Ordinance Or Law – Demolition Costs shown in the Schedule of this endorsement.

3. This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

4. Under Paragraph **H. Definitions**, and for the purpose of this Additional Coverage, the following definition is added:

   a. "Ordinance or law" means an ordinance or law that regulates the demolition, construction or repair of buildings and establishes zoning or land use requirements applicable to the described premises, provided such ordinance or law is in effect at the time of loss or damage.

   b. "Ordinance or law" does not include enforcement of or compliance with any ordinance or law that requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or activity of "fungi", wet rot or dry rot, or the costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**R. Ordinance Or Law – Increased Cost Of Construction**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, Paragraph **I. Increased Cost of Construction** is deleted and replaced with the following:

1. With respect to a building that has sustained covered direct physical loss or damage, we will pay the increased cost to:

   a. Repair or reconstruct the damaged portions of that building; or

    **b.**  Reconstruct or remodel the undamaged portions of that building, whether or not demolition is required, when the increased cost is a consequence of a requirement to comply with the minimum standards of an "ordinance or law".

**2.**  We will not pay under this Additional Coverage:

    **a.**  Until the property is actually repaired or replaced, at the same or another premises; and

    **b.**  Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed 2 years. We may extend this period in writing during the two years.

**3.**  If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under this Additional Coverage is the lesser of the:

    **a.**  Increased cost of construction at the same premises; or

    **b.**  Limit Of Insurance for Ordinance Or Law – Increased Cost Of Construction shown in the Schedule of this endorsement.

**4.**  This Additional Coverage applies only if the:

    **a.**  Restored or remodeled building is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law; and

    **b.**  Building is repaired, reconstructed or remodeled.

**5.**  **Paragraph E.5.d. Loss Payment Property Loss Condition** does not apply to this Additional Coverage.

**6.**  The most we will pay under this Additional Coverage is the Limit Of Insurance for Ordinance Or Law – Increased Cost Of Construction shown in the Schedule of this endorsement.

**7.**  Under Paragraph **H. Definitions**, and for the purposes of this Additional Coverage, the following definition is added:

    **a.**  "Ordinance or law" means an ordinance or law that regulates the demolition, construction or repair of buildings and establishes zoning or land use requirements applicable to the described premises, provided such ordinance or law is in effect at the time of loss or damage.

    **b.**  "Ordinance or law" does not include enforcement of or compliance with any ordinance or law that requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or activity of "fungi", wet rot or dry rot, or the costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**8.**  This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

**9.**  When direct physical loss or damage is caused by or results from both a Covered Cause Of Loss and an excluded peril, this Additional Coverage will not include the Ordinance or Law costs attributable to the excluded peril. Instead, this Additional Coverage will be based on that portion of such costs equal to the proportion that the covered direct physical loss or damage bears to the total direct physical loss or damage, not including Ordinance Or Law costs, unless the "ordinance or law" applies solely to that portion of the Building that suffered the covered direct physical loss or damage.

## S. Outdoor Signs

In **Section I – Property**, Paragraph **G. Optional Coverages**, **1. Outdoor Signs**, subparagraph (d) is deleted and replaced with the following:

The most we will pay under this Optional Coverage for loss or damage in any one occurrence is the

applicable Limit Of Insurance for Signs shown in the Schedule of this endorsement.

**T.  Personal Property Off-Premises**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions, b. Personal Property Off-premises** is deleted and replaced with the following:

1.  You may extend the insurance provided by this policy to apply to your Covered Property while it is in the course of transit or while at unspecified premises.

2.  This Coverage Extension does not apply to "money" or "securities".

3.  The most we will pay under this Coverage Extension for loss or damage in any one occurrence is the Limit Of Insurance for Personal Property Off-premises shown in the Schedule of this endorsement.

**U.  Pollutant Clean-up And Removal**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the last paragraph under paragraph **h. Pollutant Clean-up And Removal** is deleted and replaced with the following:

The most we will pay for each location under this Additional Coverage for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy is the Limit Of Insurance for Pollutant Clean-up And Removal shown in the Schedule of this endorsement.

**V.  Precious Metals**

In **Section I – Property**, Paragraph **A. Coverage, 4. Limitations**, subparagraph **c. (2)** is deleted and replaced with the following:

The most we will pay for loss or damage in any one occurrence for precious metals, including bullion, gold, silver, platinum and other precious alloys and metals not incorporated into jewelry is the Limit Of Insurance for Precious Metals shown in the Schedule of this endorsement. This Limitation applies only to loss or damage by theft.

**W.  Refrigeration Breakdown Expense - Vehicles**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1.  We will pay for the necessary "refrigeration expenses" you incur to avoid the imminent spoilage of your refrigerated product due to the sudden and accidental breakdown of refrigerated equipment while on transporting conveyances you own or lease.

2.  Under **Paragraph H. Property Definitions**, and only for the purposes of this Additional Coverage, the following definition is added:

3.  "Refrigeration expense" means:

    a.  Expenses to dispatch a replacement vehicle, including the additional wages of the driver of that replacement vehicle;

    b.  Wages for laborers to unload the disabled vehicle and reload the replacement vehicle; and

    c.  Expenses for temporary storage of product in cold storage facilities while awaiting disposition of the product.

4.  The most we will pay under this Additional Coverage for all refrigeration expenses in any one occurrence is the applicable Limit Of Insurance for Refrigeration Breakdown Expense – Vehicles shown in the Schedule of this endorsement.

**X.  Reward Coverage**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1.  This insurance is extended to apply to a reward for information leading to a felony conviction arising out of loss or damage to Covered Property caused by or resulting from arson, larceny, burglary or vandalism.

2.  The most we will pay for this Additional Coverage is 25% of the covered loss or damage, not to exceed the Limit Of Insurance for Reward Coverage shown in the Schedule of this endorsement.

**Y.  Temperature Or Humidity Change (Including Spoilage)**

**In Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

1.  We will pay for direct physical loss or damage to "perishable stock" at the described premises caused by or resulting from:

    a.  a change in temperature or humidity resulting from:

        **(1)** "Mechanical breakdown"; or

        **(2)** Failure of:

            **(a)** Stationary heating units; or

            **(b)** Refrigerating, cooling or humidity control apparatus or equipment;

            only while such units, equipment or apparatus are at the described premises;

    b.  Complete or partial failure of electrical power on the described premises. Such failure of power must be due to conditions beyond your control; or

    c.  The sudden and accidental discharge, dispersal, seepage, migration, release or escape of a refrigerant.

2.  This Additional Coverage does not apply to "perishable stock":

    a.  That is a vegetated roof;

    b.  In the open; or

    c.  In vehicles.

3.  Under Paragraph **E. Property Loss Conditions**, and only with respect to this Additional Coverage, the following is added under Loss Payment:

    "Finished perishable stock" is valued at your selling price, less any discounts and expenses you otherwise would have had.

4.  This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, Utility Services Exclusion or the Mechanical Breakdown Exclusion to the extent that such exclusions would conflict with the provisions of this Additional Coverage.

5.  Under **Section I – Property**, Paragraph **B. Exclusions**, and only with respect to this Additional Coverage, the following exclusion is added:

    We will not pay for loss or damage caused by or resulting from the:

    a.  Disconnection of any of the following systems from the source of power:

        **(1)** Refrigeration;

        **(2)** Cooling; or

        **(3)** Humidity control;

    b.  Loss of electrical power caused by shutting off of any switch or other device used to control the flow of electrical power or current.

   c. Inability of an electrical utility company, your stationary heating system, or any other power source to provide sufficient heat or power due to:

      **(1)** Lack of fuel;

      **(2)** Lack of capacity to make enough heat or power; or

      **(3)** An order of government authority.

   **d.** Faulty operation of equipment or failure of equipment.

**6.** The most we will pay under this Additional Coverage for loss or damage in any one occurrence is the applicable Limit Of Insurance for Temperature or Humidity Change (Including Spoilage) shown in the Schedule of this endorsement.

**7.** Under **Section I – Property**, Paragraph **H. Property Definitions** and only for the purposes of this Additional Coverage, the following definitions are added:

"Finished perishable stock" means "perishable stock" which you have manufactured which is in its completed state and ready for sale. "Finished perishable stock" does not mean "perishable stock" that you have manufactured which is in its completed state and ready for sale on the premises of any retail outlet.

"Mechanical breakdown" means:

   **a.** Breaking or separation of any mechanical part(s), other than gas pipes or lines; or

   **b.** Burning out of any electrical motor servicing unity; and

requiring replacement of the damaged parts to become functional.

"Mechanical breakdown" does not mean faulty operation or failure of equipment which results in temperature change but does not require replacement of broken parts.

"Perishable stock" means personal property:

   **a.** Maintained under controlled conditions for its preservation; and

   **b.** Susceptible to direct physical loss or damage if the controlled conditions change.

**Z. Unauthorized Business Card Use**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages**, the following is added:

**1.** We will pay for:

   **a.** Your loss of "money"; or

   **b.** Charges and costs you incur, that result directly from the unauthorized use of credit, debit or charge cards issued in your business name, including funds transfer cards, charge plates, or telephone cards.

**2.** The most we will pay under this Additional Coverage in any one occurrence is the applicable Limit Of Insurance for Unauthorized Business Card Use shown in the Schedule of this endorsement.

**AA. Utility Services – Direct Damage**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions**, the following is added:

**1.** We will pay for direct physical loss or damage to Covered Property caused by or resulting from the interruption of utility service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause Of Loss to "property of a utility" not on the described premises.

**2.** This Coverage Extension is not subject to the terms of the Utility Services Exclusion, to the extent that such exclusion would conflict with the provisions of this Coverage Extension.

3. Under Paragraph **H, Property Definitions**, the following is added:

"Property of a utility" means property owned or leased by a utility and used to provide the described premises with:

a. Water supply

b. Communication supply; or

c. "Power supply

services.

4. The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is the Limit Of Insurance for Utility Services – Direct Damage shown in the Schedule of this endorsement.

**BB. Utility Services – Business Income And Extra Expense**

In **Section I – Property**, Paragraph **A. Coverage, 6. Coverage Extensions**, the following is added:

1. We will pay for the actual loss of Business Income you sustain and Extra Expense you incur due to the suspension of your "operations" at the described premises during the "period of restoration". The suspension must be caused by or result from direct physical loss or damage by a Covered Cause of Loss to "property of a utility" not on the described premises.

2. Under Paragraph **H. Property Definitions**, and only for the purposes of this Coverage Extension, the definition of "Period Of Restoration" is deleted and the following definitions are added:

"Period of restoration" means the period of time that:

a. Begins:

(1) 12 consecutive hours after the time of direct physical loss or damage to "property of a utility" for loss of Business Income; or

(2) Immediately after the time of direct physical loss or damage to "property of a utility",

Caused by or resulting from a Covered Cause Of Loss; and

b. Ends on the earlier of:

(1) The date when the "property of a utility" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

The expiration date of this policy will not cut short the "period of restoration".

"Property of a utility" means property owned or leased by a utility and used to provide the described premises with:

a. Water supply;

b. Communication supply; or

c. Power supply,

services.

"Property of a utility" does not mean property located at the premises of a vendor that provides you with "on-line access" services.

"On-line access" means:

a. Accessing information available to third parties; or

b. Making information available to third parties,

Via computer or other electronic system.

3. We will not pay for any reduction in business income or extra expense after the relevant utility service(s) has been restored to the described premises.

4. The most we will pay under this Coverage Extension in any one occurrence at the described premises is the applicable Limit Of Insurance for Utility Services – Business Income And Extra Expense shown in the Schedule of this endorsement.

## III.    OTHER ENHANCEMENTS

### A.    Extended Business Income

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverages, f. Business Income**, subparagraph **(ii)** of **(2) Extended Business Income** is deleted and replaced with the following:

1. Ends on the earlier of the:

   a. Date you could restore your "operations", with reasonable speed to the level which would generate the Business Income amount that existed if no direct physical loss or damage had occurred; or

   b. Number of consecutive days shown in the Schedule of this endorsement, beginning with the date the property, except finished stock, is actually repaired, rebuilt or replaced and "operations" are resumed.

### B.    Green Standards

In **Section I – Property**, Paragraph **E. Property Loss Conditions, 5. Loss Payment**, the following is added:

1. Subject to the applicable Limit Of Insurance, if you repair or replace Covered Property, the valuation will include the necessary and incurred expenses to:

   a. Hire professionals accredited pursuant to "green standards" to participate in the repair or replacement of Covered Property;

   b. Register and certify the repaired or replaced Covered Property pursuant to "green standards";

   c. Dispose of debris, certified pursuant to "green standards", at recycling facilities, if such debris can be recycled; and

   d. Ventilate the repaired or replaced Covered Property in a manner consistent with "green standards".

2. When direct physical loss or damage is caused by or results from both a Covered Cause Of Loss and an excluded peril, the valuation will not include "green standards" costs attributable to the excluded peril. Instead, the valuation will be based on that portion of such costs equal to the proportion that the covered direct physical loss or damage bears to the total direct physical loss or damage, not including "green standards" costs, unless the "green standards" apply solely to that portion of the Covered Property that suffered the covered direct physical loss or damage.

3. This Green Standards Loss Payment provision:

   a. Does not include any increase in costs, loss or damage:

      (1) To clean up or remove "pollutants" from land, water or air, either inside or outside of a building;

      (2) To clean up, remove, restore or replace Covered Property because of the presence, growth, proliferation, spread or activity of "fungi", wet rot or dry rot;

      (3) To clean up, remove, restore or replace polluted land, water or air either inside or outside of a building; or

    **(4)** Attributable to any "green standards" you did not comply with before the loss, regardless of when such "green standards" became effective.

  **b.** Does not apply to:

    **(1)** Loss or damage caused by or resulting from fire which ensues from nuclear reaction or radiation, or radioactive contamination;

    **(2)** Limited Coverage for "Fungi", Wet Rot or Dry Rot Additional Coverage or the Pollutant Clean Up Or Removal Additional Coverage; or

    **(3)** "Stock".

In **Section I – Property**, Paragraph **H. Definitions**, the following definition is added:

"Green standards" means:

  **a.** The LEED<sup>R</sup> Green Building Rating System™ of the United States Green Building Council;

  **b.** Requirements of the Green Globes<sup>R</sup> Assessment And Rating System of the Green Building Initiative;

  **c.** Energy Star<sup>R</sup> qualified requirements; or

  **d.** Other site development, water savings, energy efficiency, materials or equipment selection and other environmental quality standards for the design and construction of property.

**C. Ordinary Payroll**

In **Section I – Property**, Paragraph **A. Coverage, 5. Additional Coverage, f. Business Income**, subparagraph **(b)** is deleted and replaced with the following:

**1.** We will only pay for:

  **a.** The loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage; and

  **b.** Ordinary payroll expenses for the number of days shown for Ordinary Payroll in the Schedule of this endorsement, following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**D. Removal Of Insurance-To-Value Provision**

In **Section I – Property**, Paragraph **E. Property Loss Conditions, 5. Loss Payment**, subparagraphs **d. (1) (a)** and **d. (1) (b)** are deleted and replaced with the following:

**1.** At replacement cost without deduction for depreciation, subject to the following:

  **a.** We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

    **(1)** The Limit of Insurance under **Section I – Property** that applies to the lost or damaged property;

    **(2)** The cost to replace, on the same premises, the lost or damaged property with other property:

      **(a)** Of comparable material and quality; and

      **(b)** Used for the same purpose; or

    **(3)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

**2.** If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**IV.    OTHER PROVISIONS**

   **A.  Billable Hours (Business Income)**

   In **Section I – Property**, **A. Coverage**, Paragraph **5. Additional Coverages, f. Business Income**, subparagraph **(c.)** is deleted and replaced with the following

   **1.**  Business Income means:

   **a.**  Revenue, which you would have earned, based upon:

   **(1)**  Billable hours;

   **(2)**  Fees for services; or

   **(3)**  Other sources,.

   **b.**  Minus:

   **(1)**  All expenses;

   **(2)**  Any revenue that can be subsequently recovered or made up; and

   **(3)**  Revenue you can continue to earn by continuing all or any part of your "operations" during the "period of restoration", regardless of whether you elect to continue all or part of such "operations",

   **c.**  Plus:

   **(1)**  Your continuing normal operating payroll expenses;

   **(2)**  Charges you incur which are the legal obligation of your tenant(s) which would otherwise be your obligations; and

   **(3)**  The cost you are required to pay to rent temporary premises when that portion of the premises described in the Declarations occupied by you is untenable, not to exceed the fair rental value of such untenable portion of the Building you occupy.

   **2.**  Business Income does not mean:

   **a.**  Bank interest or investment income;

   **b.**  Revenue from any contingent fee arrangement;

   **c.**  Expenses normally incurred for a client for:

   **(1)**  Client travel;

   **(2)**  Client development; or

   **(3)**  Client entertainment;

   **d.**  Consideration, other than money, that would have been earned; or

   **e.**  Revenue that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause Of Loss on customers or on other businesses.

**B. Business Income And Extra Expense Exclusions**

In **Section I – Property**, Paragraph **B. Exclusions, 5. Business Income and Extra Expense Exclusions**, paragraph **a.**, the following is added:

1. We will not pay for:

   Business Income Loss or Extra Expense caused by or resulting from direct physical loss or damage to property described in **Section I – Property**, Paragraph **A. Coverage, 2. Property Not Covered**.

**C. Business Income And Extra Expense Sublimit For Medical Imaging Operations**

In **Section I – Property**, Paragraph **C. Limits Of Insurance**, the following is added:

The most we will pay for:

1. The actual loss of Business Income you sustain due to the necessary suspension of your "medical imaging operations" caused by direct physical loss or damage to Covered Property at, or within 1,000 feet of, the premises shown in the Declarations caused by or resulting from a Covered Cause of Loss; and

2. Extra Expense you incur that you would not have incurred if there had been no such direct physical loss or damage,

is the Business Income And Extra Expense Sublimit For Medical Imaging Operations shown in the Schedule of this endorsement.

In **Section I – Property**, Paragraph **H. Property Definitions**, the following is added:

"Medical imaging operations" means the creation of visual representations of the interior of a human body for clinical analysis and medical intervention.

## EMPLOYMENT- RELATED PRACTICES EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability**:

1. This insurance does not apply to any damages, loss, cost or expense sustained at any time by any person, whether or not sustained in the course of employment by any insured, arising out of any employment-related act, omission, policy, practice or representation directed at such person, occurring in whole or in part at any time, including any:

   a. Arrest, detention or imprisonment;

   b. Breach of any express or implied covenant;

   c. Coercion, criticism, humiliation, prosecution or retaliation;

   d. Defamation or disparagement;

   e. Demotion, discipline, evaluation or reassignment;

   f. Discrimination, harassment or segregation;

   g. (1) Eviction; or

      (2) Invasion or other violation of any right of occupancy;

   h. Failure or refusal to advance, compensate, employ or promote;

   i. Invasion or other violation of any right of privacy or publicity;

   j. Termination of employment; or

   k. Other employment-related act, omission policy, practice, representation or relationship in connection with any insured at any time.

2. This insurance does not apply to any damages, loss, cost or expense sustained at any time by any spouse, child, parent, brother or sister of such person at whom any employment-related act, omission, policy, practice or representation is directed, as described in Paragraph **1.** above, as a consequence thereof.

3. Paragraphs **1.** and **2.** above:

   a. Apply regardless of the capacity in which the insured may be liable; and

   b. Also apply to any obligation to share any damages with or repay any person or organization that must pay any damages, loss, cost or expense because of any of the foregoing.

BOP-47643 (03/16)          Includes copyrighted material of Insurance Services Office, Inc.,          Page 1 of 1
                           with its permission, 2016.

## BUSINESSOWNERS LIABILITY ENHANCEMENTS FOR HEALTHCARE INDUSTRY

| Named Insured<br>**UNITED DENTAL CENTERS, LTD; LUCKY DOG LLC** | | | Endorsement Number<br>**BOP481301016** |
|---|---|---|---|
| Policy Symbol<br>**HLT** | Policy Number<br>**D52718892** | Policy Period<br>**04-13-2019  to 04-13-2020** | Effective Date of Endorsement<br>**04-13-2019** |
| Issued By (Name of Insurance Company)<br>**Pacific Employers Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### BUSINESSOWNERS COVERAGE FORM

#### TABLE OF CONTENTS

| | Page |
|---|---|
| Supplementary Payments – Bail Bonds And Bonds To Appeal Judgments – No Sublimit | 2 |
| Medical Expenses – Three Years To Report Expenses | 2 |
| Non-Owned Watercraft Under 55 Feet | 2 |
| Non-Owned Aircraft | 2 |
| Damage To Property – Exception For Equipment Loaned Or Rented To Insured | 2 |
| Who Is An Insured – Subsidiaries Or Newly Acquired Or Formed Organizations | 2 |
| Who Is An Insured – Employees And Volunteer Workers | 3 |
| Additional Insured – Lessor Of Leased Equipment | 3 |
| Additional Insured – Managers Or Lessors Of Premises | 4 |
| Additional Insured – Other Persons Or Organizations Pursuant To Contract Or Agreement | 4 |
| Damage To Premises Rented To You – $1,000,000 | 5 |
| Per Location General Aggregate Limit With Combined Total Aggregate Limit | 5 |
| Coverage Territory, Limited Worldwide | 6 |
| Unintentional Failure To Disclose Hazards | 7 |
| Other Insurance, Including Primary Provision | 7 |
| Waiver Of Subrogation Required By Contract | 8 |
| Stop Gap – Employers Liability Coverage (if you have "employees" in North Dakota, Ohio, Washington or Wyoming)<br>Bodily Injury By Accident $1,000,000<br>Bodily Injury By Disease<br>        Each Employee $1,000,000<br>        Aggregate        $1,000,000 | 8 |
| Employee Benefits Liability Coverage – Claims Made<br>Aggregate        $1,000,000<br>Each Employee $1,000,000<br>Deductible    $1,000 | 13 |

This endorsement modifies the coverages provided under the Businessowners Coverage Form.

**Employee Benefits Liability Coverage – Claims Made** is a claims-made coverage. Such coverage applies only to "claims" first made against the insured during the policy period.

Notwithstanding anything to the contrary, the provisions of the Businessowners Coverage Form apply, except as provided in this endorsement. The titles of the various paragraphs of this endorsement are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

**A. SUPPLEMENTARY PAYMENTS – BAIL BONDS AND BONDS TO APPEAL JUDGMENTS - NO SUBLIMIT**

In **Section II – Liability**, Paragraph **A. Coverages, 1. f. Coverage Extension – Supplementary Payments,** subparagraphs **(1)(b)** and (c) are replaced by the following:

**(b)** The cost of bail bonds, but only for bond amounts within the available limit of insurance. We do not have to furnish these bonds.

**(c)** The cost of bonds to appeal judgments or release attachments, but only for amounts within the available limit of insurance. We do not have to furnish these bonds.

**B. MEDICAL EXPENSES – THREE YEARS TO REPORT EXPENSES**

In **Section II – Liability**, Paragraph **A. Coverages, 2. Medical Expenses**, subparagraph **a.(b)** is replaced by the following:

**(b)** The expenses are incurred and reported to us within three years of the date of the accident; and

**C. NON-OWNED WATERCRAFT UNDER 55 FEET**

In **Section II – Liability**, Paragraph **B. Exclusions**, subparagraph **(2)** of Exclusion **1.g. Aircraft, Auto Or Watercraft** is replaced by the following:

This exclusion does not apply to:

**(2)** A watercraft you do not own that is:

    **(a)** Less than 55 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**D. NON-OWNED AIRCRAFT**

In **Section II – Liability**, Paragraph **B. Exclusions,** the following exception is added to Exclusion **1.g. Aircraft, Auto or Watercraft in Section II – Liability:**

This exclusion does not apply to an aircraft you do not own provided:

**1.** The pilot in command holds a currently effective certificate, issued by the duly constituted authority of the United States of America or Canada, designating that person as a commercial or airline transport pilot;

**2.** It is rented with a trained, paid crew; and

**3.** It does not transport persons or cargo for a charge.

**E. DAMAGE TO PROPERTY – EXCEPTION FOR EQUIPMENT LOANED OR RENTED TO THE INSURED**

In **Section II – Liability**, Paragraph **B. Exclusions,** the following exception is added to Exclusion **1.k. Damage To Property**:

Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to equipment rented or loaned to the insured, provided such equipment is not being used to perform any operations at a construction job site.

**F. WHO IS AN INSURED – SUBSIDIARIES OR NEWLY ACQUIRED OR FORMED ORGANIZATIONS**

In **Section II – Liability**, Paragraph **C. Who is an Insured** is amended to include the following:

If there is no other insurance available, each of the following is also a Named Insured:

**1.** A subsidiary organization of the first Named Insured shown in the Declarations of which, at the beginning of the policy period and at the time of loss, the first Named Insured controls, either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization; or

**2.** A subsidiary organization of the first Named Insured shown in the Declarations that the first Named Insured acquires or forms during the policy period, if at the time of loss the first Named Insured controls,

either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization.

**G. WHO IS AN INSURED – EMPLOYEES (INCLUDING CPR AND FIRST AID) AND VOLUNTEER WORKERS**

In **Section II – Liability, Paragraph C. Who is an Insured,** Paragraph **2.a.** is replaced by the following:

**2.** Each of the following is also an insured:

    **a.** Your "employees" but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

        **(1)** "Bodily injury" or "personal and advertising injury":

            **(a)** To you, to any of your directors, managers, members, "executive officers" or partners (whether or not an "employee") or to any co-"employee" while such injured person is either in the course of his or her employment or while performing duties related to the conduct of your business;

            **(b)** To the brother, child, parent, sister or spouse of such injured person as a consequence of any injury described in Paragraph **(a)** above; or

            **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of any injury described in Paragraph **(a)** or **(b)** above.

        With respect to "bodily injury" only, the limitations described in Paragraph **2.a.(1)** above do not apply to you or to your directors, managers, members, "executive officers", partners or supervisors as insureds.

        **(2)** "Property damage" to any property owned, occupied or used by you or by any of your directors, managers, members, "executive officers" or partners (whether or not an "employee") or by any of your "employees". This limitation does not apply to "property damage" to premises while rented to you or temporarily occupied by you with the permission of the owner.

    **b.** Your "volunteer workers", but only while acting within the scope of their activities for you and at your direction.

**H. ADDITIONAL INSUREDS**

In **Section II – Liability, Paragraph C. Who is an Insured,** the following is added:

**2.** Each of the following is also an insured:

**LESSOR OF LEASED EQUIPMENT**

    **e.** Any person or organization from whom you lease equipment, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization and only if you are required by a contract or agreement to provide them with such insurance as is afforded by this policy.

    However, the insurance afforded to such additional insured:

        **(1)** Only applies to the extent permitted by law; and

        **(2)** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

    With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**MANAGERS OR LESSORS OF PREMISES**

    **f.** Any person or organization from whom you lease premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and only if you are required by a contract or agreement to provide them with such insurance as is afforded by this policy.

However, the insurance afforded to such additional insured:

**(1)** Only applies to the extent permitted by law; and

**(2)** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

**(1)** Any "occurrence" that takes place after you cease to be a tenant in such premises.

**(2)** Structural alterations, new construction or demolition operations performed by or for such additional insureds.

**OTHER PERSONS OR ORGANIZATIONS PURSUANT TO CONTRACT OR AGREEMENT**

**g.** Any persons or organizations that you are required by a contract or agreement to provide with such insurance as is afforded by this policy. However, such a person or organization is an insured only:

**(1)** To the extent such contract or agreement requires the additional insured to be afforded status as an insured; and

**(2)** For activities that did not occur, in whole or in part, before the execution of the contract or agreement.

No person or organization is an insured under this provision:

**(1)** That is more specifically identified under any other provision of Paragraph **C. Who Is An Insured** (regardless of any limitation applicable thereto).

**(2)** With respect to any assumption of liability in a contract or agreement. This limitation does not apply to the liability for damages the additional insured would have in the absence of the contract or agreement.

However, the insurance afforded to such persons or organizations:

**(1)** Only applies to the extent permitted by law; and

**(2)** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

The following is added at the end of Paragraph **C. Who Is An Insured**:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

However, no person or organization is an insured with respect to the:

**a.** Ownership, maintenance or use of any assets; or

**b.** Conduct of any person or organization whose assets, business or organization;

any Named Insured acquires, either directly or indirectly, for any:

**(1)** "Bodily injury" or "property damage" that occurred; or

**(2)** "Personal and advertising injury" arising out of an offense first committed;

in whole or in part, before such acquisition is executed.

With respect to the insurance afforded to the persons or organizations described in Paragraphs **e.**, **f.**, and **g.** above, the following is added to Paragraph **D. Liability And Medical Expenses Limits Of Insurance**:

The most we will pay on behalf of such person or organization is the amount of insurance:

**(1)** Required by the contract or agreement; or

**(2)** Available under the applicable Limits Of Insurance shown in the Declarations;

whichever is less.

This shall not increase the applicable Limits Of Insurance shown in the Declarations.

**I.    DAMAGE TO PREMISES RENTED TO YOU – $1,000,000**

In **Section II – Liability**, Paragraph **D. Liability and Medical Expenses Limits of Insurance**, Paragraphs **3.** and **4.** are deleted and replaced with the following:

**3.** Subject to the **Liability And Medical Expenses Limits Of Insurance**, the most we will pay under Business Liability Coverage for damages because of "property damage" to any one premises while rented to you or while temporarily occupied by you with permission of the owner is $1,000,000.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses Limit.

The Limits of Insurance of Section II – Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**J.    PER LOCATION GENERAL AGGREGATE LIMIT WITH COMBINED TOTAL AGGREGATE LIMIT**

In **Section II - Liability**, Paragraph **D. Liability and Medical Expenses Limits of Insurance**, the following is added:

**1.** Subject to the Combined Total Aggregate Limit shown in the Declarations, for the sum of all damages that the insured becomes legally obligated to pay for all "bodily injury" and "property damage" caused by "occurrences" under Paragraph **A.1.** Business Liability, and for all medical expenses caused by accidents under Paragraph **A.2.** Medical Expenses, which can be attributed only to a single "location":

**a.** A separate Location General Aggregate Limit will apply to each "location", and that limit is equal to the Other than Products/Completed Operations Aggregate Limit shown in the Declarations.

**b.** The separate Location General Aggregate Limit is the most we will pay for the sum of all damages for "bodily injury" or "property damage" under Paragraph **A.1.** Business Liability, except in connection with "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Paragraph **A.2.** Medical Expenses, regardless of the number of:

**(1)** Insureds;

**(2)** Claims made or "suits" brought; or

**(3)** Persons or organizations making claims or bringing "suits".

    **c.**    Any payments made under Paragraph **A.1.** or under Paragraph **A.2.** Medical Expenses shall reduce the separate Location General Aggregate Limit for that "location". Such payments shall not reduce the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations nor shall they reduce the separate Location General Aggregate Limit for any other "location".

    **d.**    The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations, such limits will be subject to the applicable separate Location General Aggregate Limit.

**2.**    Subject to the Combined Total Aggregate Limit shown in the Declarations, for the sum of all damages that the Insured becomes legally obligated to pay for all "bodily injury" or "property damage" caused by occurrences under Paragraph **A.1.** Business Liability and for all medical expenses caused by accidents under Paragraph **A.2.**, which cannot be attributed only to operations at a single "location".

    **a.**    Any payments made under Paragraph **A.1.** Business Liability for damages or under Paragraph **A.2.** for medical expenses shall reduce the amount available under the Other Than Products/Completed Operations Aggregate Limit or the Products/Completed Operations Aggregate Limit, whichever is applicable; and

    **b.**    Such payments shall not reduce the separate Location General Aggregate Limit applicable to a single "location".

**3.**    Subject to the separate Location General Aggregate Limit and all other applicable limits, the Combined Total Aggregate Limit shown in the Declarations is the most we will pay for the combined sum of amounts described above, regardless of the number of "locations".

**4.**    Any payments we make for "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit regardless of the number of "locations", and not reduce the Other Than Products/Completed Operations Aggregate Limit nor the separate Location General Aggregate Limit applicable to a single "location."

**5.**    As used in this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**6.**    The provisions of Paragraph **D. Liability and Medical Expenses Limits Of Insurance** not otherwise modified by this endorsement shall continue to apply as stipulated.

**K. COVERAGE TERRITORY, LIMITED WORLDWIDE**

With respect to all coverages except **Stop Gap – Employer's Liability Coverage**, in **Section II - Liability**, Paragraph **F. Liability and Medical Expenses Definitions**, paragraph **4.** is deleted and replaced by the following:

**4.**    "Coverage territory" means all parts of the world.

However, "coverage territory" does not include any:

**a.**    "Bodily injury" or "property damage" that takes place or any offense committed outside of the United States of America (including its possessions and territories), Canada and Puerto Rico, unless the insured's responsibility to pay damages is determined by a "suit" on the merits that is brought in the United States of America (including its possessions and territories), Canada or Puerto Rico; or

**b.**    Injury or damage in connection with any "suit" brought outside the United States of America (including its possessions and territories), Canada and Puerto Rico.

**L. UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

In **Section III – Common Policy Conditions**, Paragraph **C. Concealment, Misrepresentation or Fraud** is amended to include the following additional paragraph:

Unintentional failure of an "employee" of the insured to disclose a hazard or other material information will not violate this condition, unless an "executive officer" (whether or not an "employee") of any insured knows about such hazard or other material information.

**M.   OTHER INSURANCE, INCLUDING PRIMARY PROVISION**

With respect to all coverages except **Employee Benefits Liability Coverage – Claims Made**, in **Section III – Common Policy Conditions**, Paragraph **H. Other Insurance**, subparagraphs **2.** and **3.** are replaced by the following:

**H.   Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this insurance, our obligations are limited as follows:

**1.   Primary Insurance**

This insurance is primary except when Paragraph **2** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **3** below.

**2.   Excess Insurance**

**a.**   This insurance is excess over:

**(1)**   Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)**   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)**   That is insurance that applies to "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(c)**   If the loss arises out of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **II.B. Exclusions, 1. Applicable to Business Liability Coverage**; or

**(2)**   Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

**b.**   When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**c.**   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)**   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**   The total of all deductible and self-insured amounts under all that other insurance.

**d.**   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

**3.   Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## N. WAIVER OF SUBROGATION REQUIRED BY CONTRACT

In **Section III – Common Policy Conditions**, Paragraph **K. Transfer of Rights of Recovery Against Others To Us**, subparagraph **2.** is replaced by the following:

**2.** Applicable to Businessowners Liability Coverage:

We will waive the rights of recovery we would otherwise have had against another person or organization, for loss to which this insurance applies, provided the insured has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.

To the extent that the insured's rights to recover all or part of any payment made under this Coverage Part have not been waived, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This paragraph does not apply to Medical Expenses Coverage.

## O. STOP GAP – EMPLOYER'S LIABILITY COVERAGE

If you have "employees" subject to the workers' compensation laws of the states of North Dakota, Ohio, Washington or Wyoming, then **Section II – Liability** is amended as follows.

The following is added to Paragraph **A. Coverages:**

**Coverage – Stop Gap – Employer's Liability**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated under either North Dakota, Ohio, Washington or Wyoming law, whichever is applicable, to pay as damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any accident and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Paragraph **D. Liability And Medical Expenses Limits Of Insurance**; and

        **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this coverage.

    With respect to "employees" located in the state of Wyoming, the tender of the Limits of Insurance before judgment or settlement does not relieve us of our duty to defend.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Coverage Extension - Supplementary Payments.**

    **b.** This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

        **(1)** The:

            **(a)** "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage territory";

            **(b)** "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of the injured "employee's" employment by you; and

            **(c)** "Employee", at the time of the injury, was covered under a workers' compensation policy and subject to a "workers' compensation law" of either North Dakota, Ohio, Washington or Wyoming, whichever is applicable.

**(2)** The:

**(a)** "Bodily injury by accident" is caused by an accident that occurs during the policy period; or

**(b)** "Bodily injury by disease" is caused by or aggravated by conditions of employment by you, and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury by disease" occurs during the policy period.

**c.** The damages we will pay, where recovery is permitted by law, include damages:

**(a)** For:

**(i)** Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

**(ii)** Care and loss of services resulting from the injury described in Paragraph c.(a)(I) above; and

**(iii)** Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child, parent, brother or sister of the injured "employee" as a consequence of the injury described in Paragraph c.(a)(i) above.

**(b)** With respect to "employees" located in North Dakota, Washington or Wyoming, because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as an employer.

**2. Exclusions Applicable To Stop Gap – Employer's Liability Coverage**

This insurance does not apply to:

**a. Intentional Injury**

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it is reasonable to believe that an injury is substantially certain to occur.

**b. Fines Or Penalties**

Any assessment, penalty or fine levied by any regulatory inspection agency or authority.

**c. Statutory Obligations**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**d. Contractual Liability**

Liability assumed by you under any contract or agreement.

**e. Violation Of Law**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any "employee" while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

**f. Termination, Coercion Or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

**g. Failure To Comply With Workers' Compensation Law**

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

**(1)** Deprived of common law defenses; or

**(2)** Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers' compensation law".

**h. Violation Of Age Laws Or Employment Of Minors**

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

**(1)** Knowingly employed by you in violation of any law as to age; or

**(2)** Under the age of 14 years, regardless of any such law.

**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

**(1)** The Federal Employer's Liability Act (45 USC Sections 51-60);

**(2)** The Nonappropriated Act (5 USC Sections 8171-8173);

**(3)** The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

**(4)** The Outer Continental Shelf Lands Act (43 USC Sections 1331-1356);

**(5)** The Defense Base Act (42 USC Sections 1651-1654);

**(6)** The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

**(7)** The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

**(8)** Any other workers' compensation, unemployment compensation or disability laws or any similar law; or

**(9)** Any subsequent amendments to the laws listed above.

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**3.** The **Coverage Extension – Supplementary Payments** provisions apply to **Stop Gap – Employer's Liability Coverage** as well as to **Business Liability Coverage**.

**4.** For the purposes of **Stop Gap – Employer's Liability Coverage** only, Paragraph **C. Who Is An Insured** is replaced by the following:

**5. Who Is An Insured**

If you are designated in the Declarations as:

**(a)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

However, no person or organization is an insured with respect to the:

**(1)** Ownership, maintenance or use of any assets; or

**(2)** Conduct of any person or organization whose assets, business or organization;

any Named Insured acquires, either directly or indirectly, for any "bodily injury by accident" or "bodily injury by disease", in whole or in part, before such acquisition is executed.

6. For the purposes of **Stop Gap – Employer's Liability Coverage** only, Paragraph **D. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

**D. Liability And Medical Expenses Limits Of Insurance**

1. The Limits Of Insurance shown below and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The "Bodily Injury By Accident" – Each Accident Limit of $1,000,000 is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more "employees" in any one accident.

3. The "Bodily Injury By Disease" – Aggregate Limit of $1,000,000 is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

4. Subject to Paragraph **D.3.** above, the "Bodily Injury By Disease" – Each "Employee" Limit of $1,000,000 is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of **Stop Gap – Employer's Liability Coverage** apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

7. For the purposes of **Stop Gap – Employer's Liability Coverage** only, Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** of the Liability And Medical Expenses General Conditions is replaced by the following:

**2. Duties In The Event Of Injury, Claim Or Suit**

**a.** You must see to it that we or our agent is notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

**(5)** Do nothing after an injury occurs that would interfere with our right to recover from others.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**8.** For the purposes of **Stop Gap – Employer's Liability Coverage** only, Paragraph **4.** of the **Liability And Medical Expenses Definitions** section is replaced by the following

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

**c.** All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in a. above, but who is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

**9.** For the purposes of **Stop Gap – Employer's Liability Coverage** only, the following are added to the **Liability And Medical Expenses Definitions** section:

**a.** "Workers compensation law" means the Workers' Compensation Law and any Occupational Disease Law of North Dakota, Ohio, Washington or Wyoming. This does not include provisions of any law providing nonoccupational disability benefits.

**b.** "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

**c.** "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

**10.** For the purposes of **Stop Gap – Employer's Liability Coverage** only, the definition of "bodily injury" does not apply.

**P. EMPLOYEE BENEFITS LIABILITY COVERAGE – CLAIMS MADE**

**Section II – Liability** is amended as follows:

**1.** The following is added to Paragraph **A. Coverages**:

**Coverage – Employee Benefits Liability – Claims Made**

**a.   Insuring Agreement**

**(1)** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(a)** The amount we will pay for damages is limited as described in Paragraph **4.** below; and

**(b)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Coverage Extension - Supplementary Payments**.

**(2)** This insurance applies to damages only if:

**(a)** The act, error or omission is negligently committed in the "administration" of your "employee benefit program";

**(b)** The act, error or omission did not take place before the "retroactive date" nor after the end of the policy period; and

**(c)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **a.(3)** below, during the policy period or an Extended Reporting Period we provide under Paragraph **6.** of this endorsement.

**(3)** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(a)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**(b)** When we make settlement in accordance with Paragraph **a.(1)** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the "claim".

**(4)** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**b.   Exclusions Applicable To Employee Benefits Liability Coverage – Claims Made**

This insurance does not apply to:

**(1) Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission committed by any insured, including the willful or reckless violation of any statute.

**(2) Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**(3) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**(4) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(5) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(a)** Failure of any investment to perform;

**(b)** Errors in providing information on past performance of investment vehicles; or

**(c)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(6) Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(7) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(8) Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(9) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(10) Employment-related Practices**

Damages arising out of wrongful termination of employment, discrimination or other employment-related practices.

**2.** For the purposes of **Employee Benefits Liability Coverage – Claims Made** only:

**a.** All references to Supplementary Payments are replaced by Supplementary Payments and **Employee Benefits Liability Coverage – Claims Made**.

**b.** Paragraphs f.(1)(b), f.(2) and f.(3) of **Coverage Extension – Supplementary Payments** do not apply.

**3.** For the purposes of **Employee Benefits Liability Coverage – Claims Made** only, Paragraph **C.2. Who Is An Insured** is replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefits program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this endorsement.

4. For the purposes of **Employee Benefits Liability Coverage** – **Claims Made** only, Paragraph **D. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

    **a. Limits Of Insurance**

    **(1)** The Limits of Insurance shown below and the rules below fix the most we will pay regardless of the number of:

        **(a)** Insureds;

        **(b)** "Claims" made or "suits" brought;

        **(c)** Persons or organizations making "claims" or bringing "suits";

        **(d)** Acts, errors or omissions; or

        **(e)** Benefits included in your "employee benefit program".

    **(2)** The Aggregate Limit of $1,000,000 is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

    **(3)** Subject to the Aggregate Limit, the Each Employee Limit of $1,000,000 is the most we will pay for all damages sustained by any one "employee" including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

        **(a)** An act, error or omission; or

        **(b)** A series of related acts, errors or omissions;

    negligently committed in the "administration" of your "employee benefits program".

    However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

    The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**b. Deductible**

    **(1)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount of $1,000 as applicable to Each Employee. The Limits of Insurance shall not be reduced by the amount of this deductible.

    **(2)** The deductible amount of $1,000 applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    **(3)** The terms of this insurance, including those with respect to:

        **(a)** Our right and duty to defend any "suits" seeking those damages; and

        **(b)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission or claim;

    apply irrespective of the application of the deductible amount.

    **(4)** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**5.** For the purposes of **Employee Benefits Liability Coverage – Claims Made** only, Paragraph **E.2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2. Duties In The Event Of An Act; Error Or Omission, Or Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

        **(1)** What the act, error or omission was and when it occurred; and

        **(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

    **b.** If a "claim" is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

        **(2) Notify us as soon as practicable.**

        You must also see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**6.** For the purposes of **Employee Benefits Liability Coverage – Claims Made** only, the following Extended Reporting provisions are added:

**Extended Reporting Period**

    **a.** You will have the right to purchase an Extended Reporting Period, as described below, if:

        **(1)** This **Employee Benefits Liability Coverage – Claims Made** is canceled or not renewed; or

        **(2)** We renew or replace this **Employee Benefits Liability Coverage – Claims Made** with insurance that:

            **(a)** Has a retroactive date later than that described in the definition of "retroactive date"; or

            **(b)** Does not apply to an act, error or omission on a claims-made basis.

    **b.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the "retroactive date". Once in effect, the Extended Reporting Period may not be canceled.

    **c.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

    You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**(1)** The "employee benefit programs" insured;

**(2)** Previous types and amounts of insurance;

**(3)** Limits of Insurance available under this endorsement for future payment of damages; and

**(4)** Other related factors.

The additional premium will not exceed 100% of the annual premium for **Employee Benefits Liability Coverage – Claims Made**.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period.

**d.** If the Extended Reporting Period is in effect, we will provide an Extended Reporting Period Aggregate Limit of Insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The Extended Reporting Period Aggregate Limit of Insurance will be equal to the dollar amounts shown in Paragraphs **4.a.(2)** and **4.a.(3)** above.

Paragraph **4.a.(2)** of Coverage – **Employee Benefits Liability – Claims Made** will be amended accordingly. The Each Employee Limit will then continue to apply as set forth in Paragraph **4.a.(3)** above.

**7.** For the purposes of **Employee Benefits Liability Coverage – Claims Made** only, the following definitions are added to Paragraph **F. Liability And Medical Expenses Definitions**:

**a.** "Administration" means:

**(1)** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**(2)** Handling records in connection with the "employee benefit program"; or

**(3)** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**b.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pretax dollars.

**c.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**d.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**(1)** Group life insurance, group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**(2)** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

(3) Unemployment insurance, social security benefits, workers' compensation and disability benefits;

(4) Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family and civil leave; tuition assistance plans; transportation and health club subsidies; and

(5) Any other similar benefits.

e.   "Retroactive date" means the first date of the policy period of continuous coverage of this insurance provided by us to the First Named Insured.

8.   For the purposes of **Coverage – Employee Benefits Liability – Claims Made** only, Paragraphs **F.5.** and **F.18. Liability And Medical Expenses Definitions** are replaced by the following:

5.   "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a.   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

9.   For the purposes of **Employee Benefits Liability Coverage – Claims Made** only, Paragraph **2.** of **Other Insurance in Section III - Common Policy Conditions** is replaced by the following:

2.   This **Employee Benefits Liability Coverage – Claims Made** is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of the policy to which this **Employee Benefits Liability Coverage – Claims Made** is attached and that applies to an act, error or omission on other than a claims-made basis, if the other insurance has a policy period which continues after the "retroactive date".

All other terms and conditions of the policy remain unchanged.



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

CHUBB

# U.S. FOREIGN ACCOUNT
# TAX COMPLIANCE ACT ("FATCA")

The U.S. Foreign Account Tax Compliance Act, commonly known as "FATCA", became the law in the U.S. in March of 2010 and becomes effective July 1, 2014. Pursuant to FATCA, brokers, producers, agents and/or clients may need to obtain withholding certificates from insurance companies. For information on how to obtain the applicable withholding certificate from Chubb U.S. insurance companies, please go to the following web site:

http://www2.chubb.com/us-en/u-s-foreign-account-tax-compliance-act-fatca.aspx

ALL-42490b (07/16)

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

ALL-21101 (11/06)                                                                                        Page 1 of 1

BUSINESSOWNERS
BP 05 98 07 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Paragraph **9.** under **F. Liability And Medical Expenses Definitions** is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

      © Insurance Services Office, Inc., 2012

## ASBESTOS EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### BUSINESSOWNERS COVERAGE FORM

**A.** The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability**:

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of any actual, alleged or threatened:

**1.** Contaminative, pathogenic, toxic or other hazardous properties of "asbestos";

**2.** Defect, deficiency, inadequacy or dangerous condition in "asbestos"; or

**3. a.** Request, demand, order or regulatory or statutory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "asbestos"; or

   **b.** Claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "asbestos".

**B.** The following definition is added to Paragraph **F. Liability And Medical Expenses Definitions**:

"Asbestos" means asbestos in any form, including its presence or use in any alloy, by-product, compound or other material or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission, 2016.

# LEAD EXCLUSION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### This endorsement modifies insurance provided under the following:

### Businessowners Coverage Form

The following supersedes and replaces any provisions of this policy to the contrary. This policy does not insure against loss or expense, including but not limited to the cost of defense for:

1. direct physical loss of or damage to Covered Property;
2. expense to remove debris of Covered Property;
3. any actual loss of Business Income you sustain due to the "suspension" of your "operations" during any "period of restoration";
4. any extra expense you incur during any "period of restoration";
5. damages for the devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;
6. any loss, cost or expense, including but not limited to fines or penalties, arising out of any governmental direction or request, or any private party or citizen action requiring, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize lead; or
7. any litigation or administrative procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence, or in any sequence with another cause of loss, out of actual, alleged or threatened existence, discharge, dispersal, release or escape of lead, whether or not such actual, alleged or threatened existence, discharge, release or escape is sudden, accidental or gradual in nature or expected or intended from the standpoint of any insured.

This exclusion applies even if lead has a function in, or is used by you in your business, "operations", premises, site or location.

This exclusion only applies if the insured structure(s) was built prior to 1980 and has a significant potential for lead loss exposure and has not undergone lead abatement.

This exclusion does not apply to loss or expense arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

1. At the premises, site or location which is or was at any time used by or for any insured or others for the handling, storage disposal, processing or treatment of "waste"; or
2. At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, cleanup, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of lead.

"Hostile fire" means a fire, which becomes uncontrollable or breaks out from where it was intended to be.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

Authorized Representative

CHUBB

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

**BUSINESSOWNERS**
**BP 06 43 04 06**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to **Section II – Liability** Paragraph **A. Coverages:**

If we initially defend an insured or pay for an insured's defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

    © ISO Properties, Inc., 2005       □

## SERVICE OF SUIT ENDORSEMENT – ILLINOIS

| Named Insured<br>UNITED DENTAL CENTERS, LTD; LUCKY DOG LLC | | | Endorsement Number<br>XS2X35C1111 |
|---|---|---|---|
| Policy Symbol<br>HLT | Policy Number<br>D52718892 | Policy Period<br>04-13-2019 TO 04-13-2020 | Effective Date of Endorsement<br>04-13-2019 |
| Issued By (Name of Insurance Company)<br>PACIFIC EMPLOYERS | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that in the event of the failure of the company hereon to pay any amount claimed to be due hereunder, the company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

It is further agreed that service of process in such suit may be made upon the Claims Manager, or his nominee, at 525 W. Monroe Street, Suite 400, Chicago, Illinois 60661, and that in any suit instituted against this policy, the company will abide by the final decision of such court or of any Appellate court in the event of an appeal.

The above-named Claims Manager is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, the company hereon designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or their successor or successors in office as their true and lawful attorney upon whom may be served any lawful process of any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary, hereunder arising out of his contract of insurance, and hereby designates the above named Claims Manager as the person to whom the said officer is authorized to mail such process or true copy thereof.

The address of the Illinois Director of Insurance is:
Department of Insurance
State of Illinois
320 West Washington Street
Springfield, Illinois 62767

If the Insured is resident in Canada, it is agreed that the foregoing provisions shall also apply as respects any province of Canada.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED

Authorized Agent

XS-2X35c (11/11)



# Privacy Liability Insurance Endorsement

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**THIS COVERAGE SECTION IS A CLAIMS MADE AND REPORTED COVERAGE SECTION.  EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS COVERAGE SECTION COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR EXTENDING REPORTING PERIOD, IF APPLICABLE. PLEASE READ THIS COVERAGE SECTION CAREFULLY.  THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES.  FURTHER NOTE THAT AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETENTION AMOUNT.**

It is agreed that solely with respect to coverage afforded by this Endorsement, the **Policy** is amended as follows:

In consideration of the payment of the premium, and subject to the Declarations and the terms and conditions of this coverage Endorsement, the **Insureds** and the **Insurer** agree that this Endorsement modifies the insurance provided under the following: BUSINESSOWNERS COVERAGE FORM (hereinafter, the **Policy**). The **Policy** is amended to add the following Insuring Agreement and its respective definitions, exclusions, and general terms and conditions as set forth herein, solely with respect Privacy Liability coverage.

I.    **INSURING AGREEMENT**

Privacy Liability

The **Insurer** will pay **Damages** and **Claims Expenses** excess of the applicable Retention by reason of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** pursuant to Section VIII, Notice, for any **Wrongful Acts** taking place after the **Retroactive Date** and prior to the end of the **Policy Period**.

II.    **DEFINITIONS**

When used in this Endorsement:

A.    **Bodily Injury** means injury to the body, sickness, or disease, and death. **Bodily Injury** also means mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting from injury to the body, sickness, disease or death of any person.

However, **Bodily Injury** does not mean mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock resulting from a **Wrongful Act** for which coverage is provided under this Endorsement.

B.    **Claim** means:

1. a written demand against any **Insured** for monetary or non-monetary damages;

2. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

3. an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief; or

4. a **Regulatory Proceeding**;

including, where applicable, any appeal therefrom.

C.    **Claims Expenses means:**

1.   reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by the **Insurer**, or by the **Insured** with the **Insurer's** prior written consent, in the investigation and defense of a covered **Claim**; and

2.   reasonable and necessary premiums for any appeal bond, attachment bond or similar bond, provided the **Insurer** shall have no obligation to apply for or furnish such bond.

**Claims Expenses** shall not include wages, salaries, fees or costs of directors, officers or employees of the **Insurer** or the **Insured**.

D.    **Damages** means compensatory damages and settlements which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against any **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this Endorsement applies. **Damages** shall not include:

1.   any amount for which the **Insured** is not financially liable or legally obligated to pay;

2.   taxes, fines, penalties, or sanctions imposed against the **Insured**; (not applicable to **Regulatory Proceeding**)

3.   matters uninsurable under the laws pursuant to which this Endorsement is construed;

4.   the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority, specific performance, or any agreement to provide such relief;

5.   loss of fees or profits by the **Insured**, return of fees, commissions or royalties by the **Insured**, or re-performance of services by the **Insured** or under the **Insured's** supervision;

6.   disgorgement of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled;

7.   liquidated damages pursuant to a contract, unless, even in the absence of such contract, the **Insured** would be liable for such damages as result of a **Wrongful Act**;

8.   penalties of any nature, however denominated, arising by contract; and

9.   any amounts other than those which compensate solely for a loss caused by a **Wrongful Act**.

10. any punitive or exemplary damages awarded against any **Insured** for such **Insured's** own **Wrongful Act**.

**Damages** includes punitive and exemplary damages to the extent such damages are awarded against an **Insured** on a vicarious liability basis.

E.    **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Insured**.

F.    **Extended Reporting Period** means the period(s) for the extension of coverage, if applicable, described in Section V, **Extended Reporting Periods**.

G.    **Insured** means:

1.   The **Named Insured**;

2.   **Subsidiaries** of the **Named Insured**, but only with respect to **Wrongful Acts** which occur while they are a **Subsidiary**;

3.   any past, present or future principal, partner, officer, director, trustee, employee, leased employee, or temporary employee of the **Named Insured** or a **Subsidiary**, but only with respect to the commission of a **Wrongful Act** committed within the scope of such person's duties performed on behalf of the **Named Insured** or such **Subsidiary**; and

4.　Independent contractors of the **Named Insured** or of a **Subsidiary** who are natural persons, but only with respect to the commission of a **Wrongful Act** within the scope of such person's duties performed on the behalf of the **Named Insured** or such **Subsidiary**.

H.　**Insurer** means the insurance company providing this insurance.

I.　**Internet** means the worldwide public network of computers which enables the transmission of electronic data and which includes intranets, extranets and virtual private networks.

J.　**Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

K.　**Mediation** means a non-binding process in which a neutral panel or individual assists the parties in reaching a settlement agreement. To be considered **Mediation** under this Endorsement, the process must be as set forth in the Commercial Mediation Rules of the American Arbitration Association, or such other process as the **Insurer** may, at its sole option, approve.

L.　**Named Insured** means the organization or natural person first specified in the **Policy Declarations**.

M.　**Personal Information** means:

1.　an individual's name, social security number, medical or healthcare data, other protected health information, drivers license number, state identification number, credit card number, debit card number, address, telephone number, account number, account histories, or passwords; and

2.　other nonpublic personal information as defined in **Privacy Regulations**;

in any format. **Personal Information** shall not include information that is lawfully made available to the general public for any reason, including but not limited to information from federal, state or local government records.

N.　**Personal Injury** means injury arising out of one or more of the following offenses:

1.　false arrest, detention or imprisonment;

2.　malicious prosecution;

3.　libel, slander, or other defamatory or disparaging material;

4.　publication or an utterance in violation of an individual's right to privacy; and

5.　wrongful entry or eviction, or other invasion of the right to private occupancy.

O.　**Policy** means, collectively, the Declarations, attached policy form and any endorsements.

P.　**Policy Period** means the period of time specified in the Policy Declarations.

Q.　**Privacy Policy** means the **Insured's** policy for managing, storing, destroying, use, disclosure, and access to **Personal Information**.

R.　**Privacy Regulations** means the following statutes and regulations associated with the care, custody, control or use of personally identifiable financial, medical or other sensitive information:

1.　Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) and Health Information Technology for Economic and Clinical Health Act;

2.　Gramm-Leach-Bliley Act of 1999;

3.　the California Security Breach Notification Act (CA SB 1386) and Massachusetts 201 CMR 17;

4.　Identity Theft Red Flags under the Fair and Accurate Credit Transactions Act of 2003;

5.　Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce, and

    6. other similar state or federal identity theft and privacy protection legislation of the United States of America, its territories or possessions, that requires commercial entities that collect **Personal Information** to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that **Personal Information** has potentially been compromised.

**S.** **Property Damage** means:

    1. physical injury to, or loss or destruction of, tangible property, including the loss of use thereof; and

    2. loss of use of tangible property which has not been physically injured, lost, damaged or destroyed.

However, **Property Damage** does not mean physical injury to, loss or destruction of, or loss of use of intangible property, including data.

**T.** **Regulatory Proceeding** means a request for information, demand, suit, civil investigation or civil proceeding by or on behalf of a government agency, commenced by a service of a complaint or similar pleading alleging the violation of **Privacy Regulations** as a result of the **Insured's Wrongful Act**, and which may reasonably be expected to give rise to a covered **Claim** under this Endorsement.

**U.** **Retroactive Date** means the date specified in the **Policy** Declarations.

**V.** **Subsidiary** means any entity that is not formed as a partnership or joint venture of which the **Named Insured** owns or has the right to vote more than 50% of the outstanding voting securities representing the present right to vote for election of directors, or the managers or members of the board of managers or equivalent executives of a limited liability company, on or before the inception date of the Endorsement , either directly or indirectly, in any combination, by one or more other **Subsidiaries**.

**W.** **Trade Secret** means information, including a formula, pattern, compilation, program, device, method, technique or process, that derives independent economic value, actual or potential, from not being generally known to or readily ascertainable by other persons who can obtain value from its disclosure or use, so long as reasonable efforts have been made to maintain its secrecy.

**X.** **Website** means the software, content and other materials accessible via the **Internet** at a designated Uniform Resource Locator address.

**Y.** **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, breach of duty, or **Personal Injury** offense actually or allegedly committed or attempted by any **Insured**, in their capacity as such, resulting in:

    a. the failure by the **Insured** or by an independent contractor for which the **Insured** is legally responsible to properly handle, manage, store, destroy or otherwise control:

        i. **Personal Information**; or

        ii. third party corporate information in any format provided to the **Insured** and specifically identified as confidential and protected under a nondisclosure agreement or similar contract with the **Named Insured** or **Subsidiary**; or

    b. an unintentional violation of the **Insured's** privacy policy that results in the violation of any **Privacy Regulation**.

**Z.** **Wrongful Employment Practices** means any actual or alleged:

    1. wrongful dismissal or discharge or termination of employment, whether actual or constructive;

    2. employment-related misrepresentation;

3. violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;

4. sexual harassment or other unlawful workplace harassment;

5. wrongful deprivation of a career opportunity or failure to employ or promote;

6. wrongful discipline of employees;

7. retaliation against employees for the exercise of any legally protected right or for engaging in any legally protected activity;

8. negligent evaluation of employees;

9. failure to adopt adequate workplace or employment policies and procedures;

10. employment-related libel, slander, or defamation;

11. employment-related invasion of privacy, except with respect to that part of any **Claim** arising out of the loss of **Personal Information** which is otherwise covered under this Endorsement;

12. employment-related wrongful infliction of emotional distress, except with respect to that part of any **Claim** arising out of the loss of **Personal Information** which is otherwise covered under this Endorsement; and

13. any actual or alleged discrimination, sexual harassment, or violation of a natural person's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

## III.    EXCLUSIONS

The **Insurer** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim**:

A. alleging, based upon, arising out of or attributable to any dishonest, fraudulent, criminal, or malicious act, error or omission, or any intentional or knowing violation of the law by an **Insured**.

B. alleging, based upon, arising out of or attributable to any **Bodily Injury** or **Property Damage**.

C. for breach of any express, implied, actual or constructive contract, warranty, guarantee, or promise, including any actual or alleged liability assumed by the **Insured**, unless such liability would have attached to the **Insured** even in the absence of such contract, warranty, guarantee, or promise.

D. alleging, based upon, arising out of or attributable to any:

1. illegal discrimination of any kind;

2. humiliation, harassment or misconduct based upon, arising out of or related to any such discrimination;

3. **Wrongful Employment Practices**.

E. alleging, based upon, arising out of or attributable to any price fixing, restraint of trade, monopolization, unfair trade practices or other violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world. However, with respect to a **Wrongful Act** expressly covered under this Endorsement, this exclusion shall not apply to a **Regulatory Proceeding** for that portion of **Damages** or **Claims Expenses** allocated to numbered paragraph 5 of **Privacy Regulations**.

F.     alleging, based upon, arising out of or attributable to any violation of the Employee Retirement Income Security Act of 1974, any rules or regulations promulgated thereunder, amendments thereto, or any similar federal, state or common law.

G.     alleging, based upon, arising out of or attributable to the gaining in fact of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled.

H.     alleging, based upon, arising out of or attributable to any fees, expenses, or costs paid to or charged by the **Insured**.

I.     alleging, based upon, arising out of or attributable to a **Wrongful Act** actually or allegedly committed prior to the date of this Endorsement.

J.     alleging, based upon, arising out of, or attributable to:

    1.   any prior or pending litigation, **Claims**, demands, arbitration, administrative or regulatory proceeding or investigation which was filed or commenced against an **Insured**, and of which an **Insured** had notice, prior to the date of this Endorsement, or alleging or derived from the same or substantially the same fact, circumstance or situation underlying or alleged therein; or

    2.   any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged therein would constitute **Interrelated Wrongful Acts**.

K.     alleging, based upon, arising out of, or attributable to:

    1.   any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy before the effective date of this Endorsement; or

    2.   any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**.

L.     alleging, based upon, arising out of or attributable to any electrical or mechanical failures or interruption, including but not limited to any electrical disturbance, surge, spike, brownout or blackout, and outages to gas, water, telephone, cable, satellite, telecommunications or other infrastructure.

M.     alleging, based upon, arising out of or attributable to any failure, interruption, or outage to **Internet** access service provided by the **Internet** service provider that hosts the **Insured's Website**.

N.     alleging, based upon, arising out of or attributable to fire, smoke, explosion, lightning, wind, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other physical event, however caused.

O.     alleging, based upon, arising out of or attributable to war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war is declared or not), strike, lock-out, riot, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power.

P.     alleging, based upon, arising out of or attributable to false, deceptive or unfair business practices, violation of consumer protection laws, or false or deceptive advertising. However, with respect to a **Wrongful Act** expressly covered under this Endorsement, this exclusion shall not apply to a **Regulatory Proceeding** for that portion of **Damages** or **Claims Expenses** allocated to numbered paragraph 5 of **Privacy Regulations**.

Q.     alleging, based upon, arising out of or attributable to any validity, invalidity, infringement, violation or misappropriation of any patent or **Trade Secret** by or on behalf of the **Insured**.

R.     alleging, based upon, arising out of or attributable to any validity, invalidity, infringement, violation or misappropriation of any copyright, service mark, trade name, trademark or other intellectual property of any third party.

S.  alleging, based upon, arising out of or attributable to any unsolicited electronic dissemination of faxes, e-mails or other communications by or on behalf of the **Insured** to multiple actual or prospective customers of the **Insured** or any other third party, including but not limited to actions brought under the Telephone Consumer Protection Act, any federal or state anti-spam statutes, and/or any other federal or state statute, law or regulation relating to a person's or entity's right of seclusion.

T.  alleging, based upon, arising out of or attributable to the collection of **Personal Information** by the **Insured** or the failure to provide adequate notice that such information is being collected.

U.  alleging, based upon, arising out of or attributable to the **Insured's** intentional failure to disclose the loss of **Personal Information** in violation of any law or regulation.

V.  alleging, based upon, arising out of or attributable to sections 605 and 616 of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., or any other similar federal or statutory provisions.

W.  alleging, based upon, arising out of or attributable to the rendering of or the failure to render professional services by any **Insured** to others.

## IV.  ESTATES, LEGAL REPRESENTATIVES AND SPOUSES

The estates, heirs, legal representatives, assigns, spouses, civil union partners and **Domestic Partners** of **Insureds** shall be considered **Insureds** under this Endorsement, but coverage is afforded to such estates, heirs, legal representatives, assigns, spouses, civil union partners and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse, civil union partner or **Domestic Partner**, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured** to the spouse, civil union partner or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse, civil union partner or **Domestic Partner**. All of the terms and conditions of this Endorsement, including, without limitation, the Retention shown in the **Policy** Declarations applicable to **Damages** or **Claims Expenses** incurred by **Insureds**, shall also apply to **Damages** or **Claims Expenses** incurred by such estates, heirs, legal representatives, assigns, spouses, civil union partners and **Domestic Partners**.

## V.  EXTENDED REPORTING PERIODS

If the **Insurer** terminates or does not renew this **Policy**, or if the **Named Insured** terminates or does not renew this **Policy**, the **Named Insured** shall have the right, upon payment of any additional premium described below, to an Automatic **Extended Reporting Period** and to continuation of the coverage granted by this Endorsement for at least one Optional **Extended Reporting Period** as follows:

### A. Automatic **Extended Reporting Period**

The **Named Insured** shall have continued coverage granted by this Coverage Section for a period of 60 days following the effective date of such termination or nonrenewal, but only for **Claims** first made during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal. This Automatic **Extended Reporting Period** shall immediately expire upon the purchase of replacement coverage by the **Named Insured**.

B. Optional **Extended Reporting Period**

1.  The **Named Insured** shall have the right, upon payment of the additional premium set forth below, to 'an Optional **Extended Reporting Period**, for the period set forth below following the effective date of such termination or nonrenewal, but only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

    The premium due for the **Extended Reporting Period** shall be:

    100% of the annual premium for a 12-month **Extended Reporting Period**;

    160% of the annual premium for a 24-month **Extended Reporting Period**; and

    190% of the annual premium for a 36-month **Extended Reporting Period**.

2.  This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Insurer**, and the **Insurer** receives payment of the additional premium, within 60 days following the effective date of termination or nonrenewal.

3.  The 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic **Extended Reporting Period**.

C.  The **Insurer** shall give the **Named Insured** notice of the premium due for the Optional **Extended Reporting Period** as soon as practicable following the date the **Named Insured** gives such notice of such election, and such premium shall be paid by the **Named Insured** to the **Insurer** within 10 days following the date of such notice by the **Insurer** of the premium due.  The Optional **Extended Reporting Period** is not cancelable and the entire premium for the Optional **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

D.  The Automatic and Optional **Extended Reporting Periods** shall be part of and not in addition to the Limit of Liability for the immediately preceding **Policy Period**.  The Automatic and Optional **Extended Reporting Periods** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period** and the Automatic and Optional **Extended Reporting Period**, combined.

E.  A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period**.

VI.    LIMITS OF LIABILITY

Regardless of the number of Insuring Agreements purchased under this Endorsement, **Insureds** against whom **Claims** are brought, **Claims** made or persons or entities making **Claims**:

A.    Limit of Liability

1.  the Each **Claim** Limit of Liability stated in the **Policy** Declarations is the **Insurer's** maximum liability under the Privacy Liability Insuring Agreement for the sum of all **Damages** and all **Claims Expenses** because of each **Claim**, including each **Claim** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

2.  the Aggregate Limit of Liability as stated in the **Policy** Declarations is the **Insurer's** maximum liability under the Privacy Liability Insuring Agreement for the sum of all **Damages** and all **Claims Expenses** because of all **Claims** combined in the aggregate, including all **Claims** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

3.  All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

    4.   **Claims Expenses** shall be part of and not in addition to the applicable Aggregate Limits of Liability stated in the **Policy** Declarations, and shall reduce such Aggregate Limits of Liability. If the applicable Limit of Liability is exhausted by payment of **Damages** or **Claims Expenses**, the obligations of the **Insurer** under this Endorsement shall be completely fulfilled and extinguished. The **Insurer** is entitled to pay **Damages** and **Claims Expenses**, as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

**B.**     Maximum **Policy** Aggregate Limit of Liability

    The Maximum **Policy** Aggregate Limit of Liability stated in the **Policy** Declarations is the **Insurer's** maximum liability for the sum of all **Damages** and all **Claims Expenses** because of all **Claims** under this Endorsement.

**C.**     All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Damages** and **Claims Expenses** resulting from a single **Claim** shall be deemed, respectively, a single **Damage or Claims Expense**.

**D.**     **Damages** and **Claims Expenses** shall be part of and not in addition to the applicable Limit(s) of Liability shown in the **Policy** Declarations, and shall reduce such Limit(s) of Liability. If the Limit(s) of Liability are exhausted by payment of **Damages** and **Claims Expenses**, the obligations of the **Insurer** under this Endorsement shall be completely fulfilled and extinguished.

## VII.   RETENTION

**A.**     The liability of the **Insurer** shall apply only to that part of **Damages** and **Claims Expenses** which are in excess of the applicable Retention amount shown in the **Policy** Declarations. Such Retention shall be borne uninsured by the **Named Insured** and at the risk of all **Insureds**.

**B.**     A single Retention amount shall apply to **Damages** and **Claims Expenses** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

## VIII.   NOTICE

**A.**     The **Insured** shall, as a condition precedent to their rights under this Endorsement , give to the **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than 30 days after the later of the end of the **Policy Period**, the **Automatic Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period**.

**B.**     If, during the **Policy Period**, the **Insured** becomes aware of any specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this Endorsement , and if the **Insureds** give written notice to the **Insurer** during the **Policy Period**, the Automatic **Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period** of:

    1.  the identity of the potential claimants;

    2.  a description of the anticipated **Wrongful Act** allegations;

    3.  the identity of the **Insureds** allegedly involved;

    4.  the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

    5.  the consequences which have resulted or may result; and

    6.  the nature of the potential monetary damages;

    then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

**C.**     All notices under any provision of this Endorsement shall be in writing and given by prepaid express courier or certified mail properly addressed to the appropriate party. Notice to the

**Insureds** may be given to the **Named Insured** at the address shown in the **Policy** Declarations. Notice to the **Insurer** of any **Claim** or **Wrongful Act** shall be given to the **Insurer** at the address set forth in the **Policy** Declarations. All other notices to the **Insurer** under this Endorsement shall be given to the **Insurer** at the address set forth in the **Policy** Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee, or one day following the date such notice is sent, whichever is earlier.

D.    No notice that may be given during the **Policy Period** under section VIII, Notice, at subsection B may be given during the **Extended Reporting Periods**, if elected.

IX.    DEFENSE AND SETTLEMENT

A.    Except as provided in Section IX, subsection B below, the **Insurer** shall have the right and duty to defend any covered **Claim** brought against the **Insured** even if such **Claim** is groundless, false or fraudulent. The **Insured** shall not:

1.    admit or assume liability without the prior written consent of the **Insurer**;

2.    settle or negotiate to settle any **Claim** unless such settlement fully resolves such **Claim** within the applicable Retention; or

3.    incur any **Claims Expenses** without the prior written consent of the **Insurer**; and the **Insurer** shall have the right to appoint counsel and to make such investigation and defense of a covered **Claim** as it deems necessary.

B.    The **Insurer** shall have the right, but not the duty, to defend any **Regulatory Proceeding**. For such **Claims** the **Insured** shall select defense counsel from the **Insurer's** list of approved law firms, and the **Insurer** reserves the right to associate in the defense of such **Claims**.

C.    The **Insurer** shall not settle any **Claim** without the written consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement or a compromise recommended by the **Insurer** and acceptable to the claimant, then the **Insurer's** Limit of Liability under this Endorsement with respect to such **Claim** shall be reduced to the amount of **Damages** for which the **Claim** could have been settled plus all **Claims Expenses** incurred up to the time the **Insurer** made its recommendation to the **Named Insured**, which amount shall not exceed that portion of any applicable Aggregate Limit of Liability that remains unexhausted by payment of **Damages** or **Claims Expenses** or by any combination thereof.

D.    The **Insurer** shall not be obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle any **Claim** after any applicable Limit of Liability specified in the **Policy** Declarations has been exhausted by payment of **Damages** or **Claims Expenses**, or by any combination thereof, or after the **Insurer** has deposited the remainder of any unexhausted applicable Limit of Liability into a court of competent jurisdiction. In either such case, the **Insurer** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **Claim** by tendering control of such **Claim** to the **Insured**.

E.    The **Insured** shall cooperate with the **Insurer**, and provide to the **Insurer** all information and assistance which the **Insurer** reasonably requests including but not limited to attending hearings, depositions and trials and assistance in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting the defense of any **Claim** covered by this Endorsement . The **Insured** shall do nothing that may prejudice the **Insurer's** position. The **Insureds** shall immediately forward to the **Insurer**, at the address indicated in the **Policy** Declarations, every demand, notice, summons, or other process or pleading received by the **Insured** or its representatives.

X.    OTHER INSURANCE

If any **Damages** or **Claims Expenses** are insurable under other insurance, the **Insurer** shall not be liable under this Policy for a greater proportion of such **Damages** or **Claims Expenses** than the applicable limit of liability stated in the Declarations bears to the total applicable limits of liability of all valid and collectible insurance insuring such **Damages** or **Claims Expenses**.

XI.  MATERIAL CHANGES IN CONDITIONS

A.  Acquisition or Creation of Another Organization

If, during the **Policy Period**, the **Named Insured**:

1.  acquires voting securities in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

2.  acquires any organization by merger into or consolidation with the **Named Insured**;

then, subject to the terms and conditions of this Endorsement, such organization shall be covered under this Endorsement but only with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Insurer** agrees to provide coverage by endorsement for **Wrongful Acts** taking place prior to such acquisition or creation.

If the total assets of such acquired organization, as reflected in the then most recent consolidated financial statements of the organization, exceeds 10% of the total assets of the **Named Insured** and the **Subsidiaries** as reflected in the then most recent consolidated financial statements of the **Named Insured**, the **Named Insured**, as a condition precedent to coverage with respect to such **Insureds**, shall, no later than 60 days after the effective date of such acquisition or creation:

1.  give written notice of such acquisition or creation to the **Insurer**;

2.  pay any additional premium required by the **Insurer**; and

3.  agree to any additional terms and conditions of this Endorsement as required by the **Insurer**.

B.  Acquisition of the **Named Insured**

If, during the **Policy Period**, any of the following events occurs:

1.  the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

2.  the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of the directors of the **Named Insured**;

then coverage under this Endorsement will continue in full force and effect until termination of this Endorsement, but only with respect to **Claims** for **Wrongful Acts** taking place before such event. Coverage under this Endorsement will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event.  This Endorsement may not be cancelled after the effective time of the event, and the entire premium for this Endorsement **shall** be deemed earned as of such time.

C.  Termination of a **Subsidiary**

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to such organization and its employees shall continue until termination of this Endorsement. Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary**.

XII.  REPRESENTATIONS

A.  The **Insureds** represent and acknowledge that they:

1.  reasonably maintain and update the **Insured's** computer system, including the reasonable use, maintenance, upgrading and updating of its network security;

2.  use industry acceptable third party antivirus, firewall, intrusion detection or other solutions to monitor network attacks, computer viruses, Trojan horses, bots, malicious code, software, spyware and malware activity;

3.  use industry acceptable encryption technology;

4.  properly apply necessary software patches;

5. maintain the performance of software so that such software:
   a. is not subject to expiration, cancellation, or withdrawal;
   b. is not released or used during its developmental state; or
   c. has passed all test runs and has proven successful in applicable daily operations;
6. comply with any state or federal **Privacy Regulations** and self-regulatory requirements around minimum data security standards;

and that the above activities are a necessary condition precedent to coverage for any **Claim** hereunder. The statements and information contained in A1 – A6 above, including all information provided concerning network security policies and procedures, information management policies and procedures, and business continuity plans and policies, are true and accurate and:

1. are the basis of this Endorsement and are to be considered as incorporated into and constituting a part of this Endorsement; and

2. shall be deemed material to the acceptance of this risk or the hazard assumed by the **Insurer** under this Endorsement.

B. It is understood and agreed that:

1. this Endorsement is issued in reliance upon the truth and accuracy of such representations;

2. the **Insureds** have and will provide accurate information with regard to loss control audits and network security assessments as required by the **Insurer**; and

3. if such representations or such information are not true, accurate and complete, this policy shall be cancellable by the **Insurer**.

XIII.    **TERRITORY AND VALUATION**

A. Coverage provided under this Endorsement shall extend to **Wrongful Acts** and **Claims** taking place, brought or maintained in, and subject to the laws of, the United States of America, its territories or possessions.

B. All premiums, limits, retentions, **Damages** or **Claims Expenses**, and any other amounts under this Endorsement are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of loss under this Endorsement is stated in a currency other than United States of America dollars, payment under this Endorsement shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal*.

XIV.    **SUBROGATION**

In the event of any payment under this Endorsement, the **Insurer** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

XV. **ACTION AGAINST THE INSURER AND BANKRUPTCY**

Except as provided in Section XIX, Alternative Dispute Resolution, no action shall lie against the **Insurer**. No person or organization shall have any right under this Endorsement to join the **Insurer** as a party to any action against any **Insured** to determine the liability of the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or its legal representatives. Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this Endorsement.

XVI.    **AUTHORIZATION CLAUSE**

By acceptance of this Endorsement, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving of notice of **Claim**, the giving or receiving of notice of termination or nonrenewal, the payment of premiums, the receiving of any premiums that may become due under this Endorsement, the agreement to and acceptance of endorsements, consenting to any settlement, exercising the right to the **Extended Reporting Period**, and the giving or receiving of any other notice provided for in this Endorsement, and all **Insureds** agree that the **Named Insured** shall so act on their behalf.

XVII.   ALTERATION, ASSIGNMENT AND HEADINGS

A.   Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or a change in any part of this Endorsement nor prevent the **Insurer** from asserting any right under the terms of this Endorsement.

B.   No change in, modification of, or assignment of interest under this Endorsement shall be effective except when made by a written endorsement which is signed by an authorized representative of the **Insurer**.

C.   The titles and headings to the various parts, sections, and subsections of this Endorsement are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, or subsections.

XVIII.   ALTERNATIVE DISPUTE RESOLUTION

The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this Endorsement or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process set forth in this Section.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding **Mediation** administered by any **Mediation** facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by **Mediation** in accordance with the then-prevailing commercial **Mediation** rules of the **Mediation** facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either **Mediation** or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of **Mediation**, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until at least 60 days after the date the **Mediation** shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in the **Policy** Declarations as the principal address of the **Named Insured**. The **Named Insured** shall act on behalf of each and every **Insured** in connection with any ADR process under this Section.

XIX.   INTERPRETATION

The terms and conditions of this Endorsement shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this Endorsement is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions, without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer** and without reference to the reasonable expectations of either the **Insureds** or the **Insurer**.

All other terms and conditions of the **Policy** remain unchanged.

_____
Authorized Representative

IL U 003 01 15

# ILLINOIS UNINSURED MOTORISTS COVERAGE AND UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION

| Policy Number:<br>D52718892 | Policy Effective Date:<br>2019-04-13 |
|---|---|
| Company:<br>PacificEmployers | Producer:<br>LAMBENT RISK MANAGEMENT SERVICES INC |
| Applicant/Named Insured:<br>UNITED DENTAL CENTERS, LTD; LUCKY DOG LLC | |

Illinois law permits you to make certain decisions regarding Uninsured Motorists Coverage and Underinsured Motorists Coverage. This document describes these coverages and the options available.

You should read this document carefully and contact us or your agent if you have any questions regarding Uninsured Motorists Coverage and Underinsured Motorists Coverage and your options with respect to these coverages.

This document includes general descriptions of coverage. However, no coverage is provided by this document. You should read your policy and review your Declarations page(s) and/or Schedule(s) for complete information on the coverages you are provided.

Please indicate your choice from **A.** and **B.** by initialing next to the appropriate item(s) and signing below.

**A. Bodily Injury Uninsured And Underinsured Motorists Coverages**

**Bodily Injury Uninsured Motorists Coverage** provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an automobile accident. Also included are damages due to bodily injury that result from an automobile accident with a hit-and-run vehicle whose owner or operator cannot be identified.

**Bodily Injury Underinsured Motorists Coverage** provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury caused by an automobile accident.

Every automobile liability policy must include Bodily Injury Uninsured Motorists Coverage at limits equal to your limits for Bodily Injury Liability Coverage or Combined Single Limit for Liability Coverage except as described below.

If your Bodily Injury Liability Coverage limits exceed $25,000 for each person/$50,000 for each accident or a Combined Single Limit of $50,000 for each accident, you may select limits that are lower than your Bodily Injury Liability Coverage limits or Combined Single Limit for Liability Coverage for your Bodily Injury Uninsured Motorists Coverage BUT you may not select Bodily Injury Uninsured Motorists Coverage limits less than $25,000 for each person/$50,000 for each accident or a Combined Single Limit of $50,000 for each accident.

Underinsured Motorists Coverage will be provided to you ONLY IF your Bodily Injury Uninsured Motorists Coverage limits are greater than $25,000 for each person/$50,000 for each accident or a Combined Single Limit of $50,000 for each accident. When provided, your Bodily Injury Underinsured Motorists Coverage limits will be equal to your Uninsured Motorists Coverage limits.

Please indicate your choice by initialing next to the appropriate item(s) if you are selecting Uninsured Motorists Coverage at limits less than the Bodily Injury Liability limits of your policy.

| (Initials) | | | | |
|---|---|---|---|---|
| _____ | **I reject Bodily Injury Uninsured Motorists Coverage at limits equal to my Bodily Injury Liability Coverage (split limits) or Combined Single Limit for Liability Coverage and select the following lower limits.** | | | |
| **(Choose one):** | | | | |
| **(Initials)** | **Split Limits** | **OR** | **(Initials)** | **Combined Single Limit** |
| _____ | $   25,000/50,000* | | _____ | $   50,000* |
| _____ | 50,000/100,000 | | _____ | 100,000 |
| _____ | 100,000/300,000 | | _____ | 250,000 |
| _____ | 250,000/500,000 | | _____ | 300,000 |
| _____ | 500,000/1,000,000 | | _____ | 350,000 |
| _____ | $ _____ (Other) | | _____ | 500,000 |
| | | | _____ | 1,000,000 |
| | | | _____ | $ _____ (Other) |

**\*   IF YOU CHOOSE THIS LIMIT, BODILY INJURY UNDERINSURED MOTORISTS COVERAGE WILL NOT BE PROVIDED.**

**B. Notice Of Availability Of Property Damage Uninsured Motorists Coverage**

**Property Damage Uninsured Motorists Coverage** provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of injury to or destruction of a covered auto caused by an automobile accident. However, Property Damage Uninsured Motorists Coverage is available only for autos for which you have not purchased Collision Coverage.

Please indicate your choice by initialing next to the appropriate item(s) below.

| (Initials) | |
|---|---|
| _____ | **I select Property Damage Uninsured Motorists Coverage at a limit of $15,000 for the following vehicle(s).** |
| | **(Specify Year/Make/Model):** |
| | _____ |
| | _____ |
| | _____ |
| | _____ |
| | **Premium:   $** |
| _____ | **I reject Property Damage Uninsured Motorists Coverage.** |

_____          _____

**Signature Of Applicant/Named Insured**                    **Date**

**BUSINESSOWNERS**
**BP 01 35 02 08**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INDIANA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

A. **Section II – Liability** is amended as follows:

1. The following is added to Paragraph **E.2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** Liability And Medical Expenses General Condition:

   e. Notice given by or on behalf of the insured to any of our authorized agents in Indiana, with particulars sufficient to identify the insured, shall be considered to be notice to us.

B. **Section III – Common Policy Conditions** is amended as follows:

1. Paragraph **A.2. Cancellation** is replaced by the following:

   2. **Cancellation Of Policies In Effect**

      a. **90 Days Or Less**

         If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

         (1) 10 days before the effective date of cancellation if we cancel for non-payment of premium;

         (2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

         (3) 30 days before the effective date of cancellation if we cancel for any other reason.

      b. **More Than 90 Days**

         If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

         (1) 10 days before the effective date of cancellation if we cancel for non-payment of premium;

         (2) 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

         (3) 45 days before the effective date of cancellation if:

            (a) There has been a substantial change in the scale of risk covered by this policy;

            (b) Reinsurance of the risk associated with this policy has been cancelled; or

            (c) You have failed to comply with reasonable safety recommendations.

2. Paragraph **C. Concealment, Misrepresentation Or Fraud** is replaced by the following:

   C. **Concealment, Misrepresentation Or Fraud**

      We will not pay for any loss or damage in any case of:

      1. Concealment or misrepresentation of a material fact; or

      2. Fraud

      committed by an insured at any time and relating to a claim under this policy.

3. Paragraph **K.1. Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

1. Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. Our right to recover damages from another may be enforced even if the person or organization to or for whom we make payment has not been fully compensated for damages.

The person or organization to or for whom we make payment must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

• You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

4. The following paragraph is added and supersedes any provision to the contrary.

**M. Nonrenewal**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

a. The expiration date of this policy, if the policy is written for a term of one year or less; or

b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2007 BP 01 35 02 08   □

**BUSINESSOWNERS**
**BP 10 71 02 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES – POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following paragraph is added to the Businessowners Coverage Form:

**PROVISIONS RELATING TO POLLUTANTS**

In this Policy, any exclusion, limitation, or other provision relating to pollutants ("pollutants"), or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the irritant or contaminant has any function in your business, operations, premises, site or location.

BUSINESSOWNERS
BP 14 45 12 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES –
# WORKERS' COMPENSATION EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to Paragraph **B.1.d. Workers' Compensation And Similar Laws** Exclusion:

> This exclusion also applies to any obligation of the insured under the Indiana Workers' Compensation statutes arising out of the failure of the insured to exact from a contractor (or subcontractor if the insured is a contractor) a certificate from the workers' compensation board showing that the contractor (or subcontractor) has complied with the applicable workers' compensation insurance requirements.

    © Insurance Services Office, Inc., 2010       ☐

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured<br>UNITED DENTAL CENTERS, LTD; LUCKY DOG LLC | | | Endorsement Number<br>BOP466410815 |
|---|---|---|---|
| Policy Symbol<br>HLT | Policy Number<br>D52718892 | Policy Period<br>04-13-2019 **TO** 04-13-2020 | Effective Date of Endorsement<br>04-13-2019 |
| Issued By (Name of Insurance Company)<br>PACIFICEMPLOYERS | | | |

### Amendatory Endorsement - Indiana

IF THERE IS ANY CONFLICT BETWEEN THE **POLICY**, OTHER ENDORSEMENTS TO THE **POLICY** AND THIS ENDORSEMENT, THE TERMS PROVIDING THE BROADEST COVERAGE INSURABLE UNDER APPLICABLE LAW SHALL PREVAIL.

This endorsement modifies insurance provided under the MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE SECTION, MISCELLANEOUS PROFESSIONAL LIABILITY – SOCIAL SERVICE ORGANIZATION COVERAGE SECTION, the PRIVACY LIABILITY INSURANCE ENDORSEMENT and the PRIVACY LIABILITY AND DATA BREACH FUND ENDORSEMENT.

1.  With regard to the coverage forms and accompanying endorsements that contain a Cancellation provision, the following Condition is added:

    *   NONRENEWAL

        If the **Insurer** elects not to renew this **Policy**, it will mail written notice of nonrenewal by certified mail to the **Named Insured**, and by first-class mail to the agent or broker of record, at the last mailing addresses known to the **Insurer**. Notice of nonrenewal will be mailed at least 45 days before the end of the **Policy Period**. Proof of mailing will be sufficient proof of notice.

        The **Insurer** is not required to send notice of nonrenewal if:

        1.  the **Insured** is transferred from the **Insurer** to an affiliate of the **Insurer** for future coverage as a result of a merger, and acquisition, or a company restructuring;

        2.  the transfer results in the same or broader coverage; and

        3.  the **Insured** approves of the transfer.

2.  With regard to the coverage forms and accompanying endorsements, the first sentence of the final paragraph of the "Alternative Dispute Resolution" is deleted and replaced by the following:

    Either ADR process may be commenced in the state indicated in the **Policy** Declarations as the principal address of the **Named Insured.**

3.  With regard to the Miscellaneous Professional Liability – Social Service Organization Coverage Section, Paragraph G. of Section VI. CONDITIONS, is hereby deleted in its entirety.

All other terms and conditions of this **Policy** remain unchanged.

_____

Authorized Representative

BOP-BOP-46641 (08/15)                    © 2015                    Page 1 of 1
BOP EO

EXHIBIT 2

**CHUBB**

One Progress Point Parkway
O'Fallon, MO 63368
O: (309) 429-3493
F: (800) 664-5358
E: Craig.Reeves@Chubb.com

Mailing Address
P.O. Box 910
O'Fallon, MO 63366

October 16, 2020

Plews Shadley Racher & Braun LLP
Attention: Joanne Sommers
c/o United Dental Centers, Ltd; Lucky Dog LLC
1346 North Delaware Street
Indianapolis, IN 46202

Re:  Insured:           United Dental Centers, Ltd; Lucky Dog LLC
     Policy Number:     D52718892
     Claim Number:      KY20K2754378
     Date of Loss:      September 9, 2020
     Cause of Loss:     COVID-19/Coronavirus
     Loss Location:     1332 119th St, Whiting, IN 46394
                        5254 Hohman Ave, Hammond, IN 46320
                        5655 Harrison St, Merrillville, IN 46410-2071
                        3540 E 118th St, Chicago, IL 60617
                        18511 Torrence Ave, Lansing, IL 60438-2851

     Date Reported:     September 11, 2020
     Writing Company:   Pacific Employers Insurance Company

Dear Joanne Sommers:

Thank you for your communication regarding the governmental orders impacting our insured's business and the related income loss. Pacific Employers Insurance Company ("Chubb") has completed its factual investigation given the information provided and offers the following comments with respect to coverage for this loss.

**The Loss**

On September 11, 2020, we received report of your claims for income loss resulting from the COVID-19/Coronavirus. We discussed the loss on October 15th, 2020 via email with Joanne Sommers. In fact, we received the questionnaire responses from you advising that due to the government mandated closure our insured had to close their business. They currently employ 2 people and offered dental practice services. Due to the closure, our insured and employees are unable to operate business as usual.

We have reviewed the facts of the loss as presented and the orders of civil authority impacting your business. This included a review of the Orders issued by Governor Eric Holcomb of Indiana and J.B. Pritzker of Illinois in place at the time of this letter. Based upon this review, Chubb has determined the Orders issued by governmental officials impacting your premises were issued to

curtail the spread of the COVID-19 virus. There is no information supporting any direct physical loss or damage has occurred that caused such orders to be issued.

## The Policy

Pacific Employers Insurance Company ("Chubb") issued Policy No. D52718892 to United Dental Centers, Ltd; Lucky Dog LLC, with the effective dates of coverage April 13, 2020 to April 13, 2021. Coverage is written on **BP0003 0713 BUSINESSOWNERS COVERAGE FORM**. The reported loss location has Business Income and Extra Expense Coverage limits of Actual Loss Sustained. Coverage is subject to the term and conditions of the policy. The policy wording is cited below in order of reference.

## Analysis of Policy Provisions Relevant to Claim

## BUSINESSOWNERS COVERAGE FORM BP 00 03 07 13

### SECTION I – PROPERTY

A. **Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

...

5. **Additional Coverages**

f. **Business Income**

(1) **Business Income**

(a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

i. **Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property. .

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section **I** – Property.

...

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   **j. Virus Or Bacteria**

   **(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

As indicated above, we have not received any information which suggests that there was or is any direct physical loss of or damage to Covered Property at your described premises. Accordingly, the terms of the quoted Business Income insuring agreements have not been met, and the coverage does not apply.

Additionally, as it relates to the policy's Additional Coverage for Civil Authority, in order for this provision to apply, there must be an action by a civil authority that prohibits access to your premises. Here, access to your premises was not prohibited. In fact, we understand that your premises were, at all relevant times, accessible. Accordingly, because access to your premises was not prohibited, the terms of the quoted Civil Authority insuring agreements have not been met, and the coverage does not apply.

Even if access to your premises was prohibited, which it was not, this policy provision also requires that any prohibition of access must be the result of a dangerous physical condition as a result of

damage, by a covered cause of loss, to property away from, but within one mile of, your premises. Chubb has concluded that no civil authority order impacting your operations was actually issued due to a dangerous physical condition resulting from damage to property away from, but within one mile of your premises. Rather, it is our understanding that governmental authorities prohibited dental offices from providing, non-urgent procedures as a precaution to prevent the spread of the COVID-19 virus. Accordingly, the terms of this coverage grant for Civil Authority have not been met and coverage therefore does not apply.

Lastly, the above cited policy exclusion applies to loss or damage caused directly or indirectly from any virus that induces or is capable of inducing physical distress, illness or disease. Novel Coronavirus (SARs-CoV-2) is a virus that meets the criteria of this additional exclusion therefore also precluding coverage for your loss.

Based on the above cited policy wording and analysis, Chubb must deny coverage under your policy of insurance.

Without waiver of the declination of coverage set forth in this letter, the Policy also contains the following exclusion:

**B. Exclusions**

    **2.** We will not pay for loss or damage caused by or resulting from any of the following:

        **b. Consequential Losses**

            Delay, loss of use or loss of market.

Chubb reserves the right to rely and/or assert the foregoing exclusion in connection with this claim.

This letter only addresses those provisions that appear pertinent at this time in light of the facts currently known to us. If there is any additional information that may affect our position or analysis, please forward such information.

Chubb reserves all rights with regard to the above referenced provisions as well as all other rights, remedies and defenses under the Policy, at law and in equity. Nothing contained in this letter, and no action on our part or the part of independent adjusters or experts retained on our behalf in investigating and adjusting your claim, should be construed as an admission of coverage or as a waiver of any right, remedy or defense that may be available to Chubb.

If you have any questions or disagree with any aspect of the aforementioned, please do not hesitate to contact the undersigned immediately.

Sincerely,

*Craig Reeves*

Craig Reeves
Senior Claims Adjuster

Pacific Employers Insurance Company
(309) 429-3493 Phone
(800) 664-5358 Fax
Craig.Reeves@Chubb.com


Cc:    Lambent Risk Management Services Inc
       33 N Lasalle St Ste 1150
       Chicago IL 60602